JH

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

F I L E D

APR 2 3 2007
APR 23, 2007
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

RAYMOND AND KATHLEEN DEMITH,           )
on behalf of themselves and all others  )
similarly situated,                     )
                                        )
          Plaintiffs,                   )
                                        )
     vs.                                )     07CV2211
                                        )     JUDGE DARRAH
                                        :     MAGISTRATE JUDGE NOLAN
Nestle Purina Petcare Company, Nestle S.A., )
Nestle Holdings, Inc., Nestle USA Inc.,     )
PetSmart, Inc., Wilbur-Ellis Company,       )
ChemNutra Inc., ChemNutra LLC, Xuzhou       )     **Jury Trial Demand**
Anying Biologic Technology Development       )
Co. Ltd., Binzhou Futian Biology Technology  )
Co. Ltd., "Does 1-1,000"                    )
                                            )
          Defendants.                       )

## CLASS ACTION COMPLAINT

Plaintiffs, by their counsel, individually and on behalf of all others similarly situated, file

this Class Action Complaint against Defendants and allege upon information and belief as

follows:

### I.       INTRODUCTION

1.       This is a class action lawsuit brought on behalf of Plaintiffs and all others

similarly situated who purchased pet food and pet food products manufactured by Nestle Purina[1],

supplied by, among others, ChemNutra[2] and Wilbur-Ellis Company, using ingredients provided

---

[1] Throughout the Complaint, Defendants Nestle Purina Petcare Company, Nestle S.A., Nestle Holdings, Inc., and Nestle USA, Inc. are collectively referred to as "Nestle Purina" unless otherwise noted.

[2] Throughout the Complaint, Defendants ChemNutra, Inc. and ChemNutra LLC are collectively referred to as "ChemNutra".

Dockets.Justia.com

by, among others, Xuzhou[3] and Binzhou[4] that caused injury, severe illness, and/or death to Plaintiffs' household pets.

2.      Defendants collectively designed, manufactured, imported, marketed, advertised, sold, warranted, and upon information and belief, intentionally contaminated their pet food products. In conjunction with each sale, Defendants marketed, advertised and warranted that the Products were fit for the ordinary purpose for which such goods were used – consumption by household pets – and were free from defects. Defendants produce the pet food products intending that consumers will purchase the pet food products, regardless of brand or label name, place of purchase, or the location where pets actually consume them. The pet food products were intended to be placed in the stream of commerce and distributed and offered for sale and sold to Plaintiffs and purchasers in Illinois and the United States and fed to their pets.

3.      Plaintiffs bring this action, pursuant to Rule 23 of the Federal Rules of Civil Procedure, on their own behalf and as representatives of a nationwide class consisting of all persons in the United States who purchased, or incurred damages, by using pet food produced, manufactured, imported, sold, and/or distributed by Defendants that was or will be recalled by the Defendants as well as pet food manufactured, imported, sold, distributed, and/or contaminated by Defendants that contains harmful substances and causes injury or death but escapes recall for any reason. The pet food products referenced in this paragraph will hereafter be referred to as the "Products."

4.      Plaintiffs also bring this action on their own behalf and as representatives of an Illinois subclass consisting of all persons in the State of Illinois who purchased, or incurred

---

[3] Throughout the Complaint, Defendant Xuzhou Anying Biologic Technology Development Co. Ltd. is referred to as "Xuzhou".

[4] Throughout the Complaint, Defendant Binzhou Futian Biology Technology Co. Ltd. is referred to as "Binzhou".

damages, by using pet food produced, manufactured, imported, sold, distributed, and/or contaminated by Defendants that was or will be recalled by the Defendants as well as pet food manufactured, imported, sold, distributed, and/or contaminated by Defendants that contains harmful substances and causes injury or death but escapes recall for any reason.

5. As a result of the defective Products, Plaintiffs and members of the Classes have suffered damages in that they have incurred substantial veterinary bills, death of pets, and purchased and/or own pet food and pet food products that they would not otherwise have bought had they known such products were defective.

6. Defendant Nestle Purina had admitted that the Products are not only defective but potentially toxic.

7. The U.S. Food and Drug Administration ("FDA") announced on April 19, 2007 that it is investigating whether or not imported ingredients used in the Products were intentionally spiked with melamine to boost their apparent protein content.

8. Intradistrict Assignment: Assignment to the Eastern Division is proper pursuant to Local Rule 5.1 and because a substantial portion of the events and omissions giving rise to this lawsuit occurred in this district and division.

## II.  **PARTIES**

9. Plaintiffs are residents of Bolingbrook, Illinois. Plaintiffs purchased Nestle Purina's defective "Alpo Brand Prime Cuts in Gravy" at a local PetSmart retail store and fed it to their dog, Goldie. A short time later, Goldie became seriously ill with renal failure and required repeat visits to a veterinarian, overnight hospitalization, treatment, and medication. Plaintiffs bring this action, pursuant to Rule 23 of the Federal Rules of Civil Procedure, on their own behalf and as representatives of a nationwide class and Illinois subclass of persons consisting of

3

all persons in the United States and the State of Illinois, respectively, who purchased and/or incurred damages (including medical and other expenses) by using the Products produced, manufactured, distributed, and/or sold by the Defendants and later recalled as defined above.

10.     Defendant Nestle Purina Pet Care Company is a Missouri Company headquartered at Checkerboard Square, St. Louis, Missouri 63165. It is a division of Nestle USA, Inc. and is a fully-owned subsidiary of Nestle S.A. Nestle Purina has a distribution center located in DeKalb, Illinois.

11.     Defendant Nestle S.A. describes itself as the world's largest food company. It is headquartered in Switzerland at Avenue Nestle 55, 1800 Vevey, Switzerland.

12.     Defendant Nestle Holdings, Inc. is a Delaware Corporation headquartered at 383 Main Avenue, Norwalk, Connecticut 06851. It is a fully-owned subsidiary of Nestle S.A.

13.     Defendant Nestle USA, Inc. is a Delaware Corporation headquartered in California. Its headquarter address is 800 North Brand Boulevard, Glendale, California 91203. It is a subsidiary of Nestle Holdings, Inc. and a fully-owned subsidiary of Nestle S.A.

14.     Defendant PetSmart, Inc. is a Delaware Corporation headquartered in Phoenix, Arizona. Its headquarter address is 19601 N. 27th Avenue, Phoenix, AZ 85027.

15.     Defendant Wilbur-Ellis Company is a Delaware Corporation headquartered in San Francisco, California. Its headquarter address is 345 California Street, 27th Floor, San Francisco, CA 94104.

16.     Defendant ChemNutra, Inc. is a Delaware Corporation headquartered in Las Vegas, Nevada. Its headquarter address is 810 S. Durango Drive, Suite 102, Las Vegas, NV 89145.

4

17. Defendant ChemNutra LLC is a Chinese company with its principal executive offices located at Hangzhou, hz, Zhejiang, China 310030.

18. Defendant Xuzhou Anying Biologic Technology Development Co. Ltd. ("Xuzhou") is a Chinese company. It's headquarter address is Hancheng South, Pei County, Jiangsu, 221600, China.

19. Defendant Binzhou Futian Biology Technology Company, Ltd. ("Binzhou") is a Chinese company. It's headquarter address is No. 11 Yuanqian Street, Wudi County, Shangdong Province, China.

20. Defendants "Does 1-1,000" are individuals who, upon information and belief, intentionally spiked melamine and/or other foreign substances into wheat gluten and rice protein concentrate to boost the apparent protein content of the ingredients. Their exact identities are unknown at this time. When their identities are ascertained, Plaintiffs will move for leave to amend the Complaint accordingly.

### III. JURISDICTION AND VENUE

21. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332 and subsection (d), and the Class Action Fairness Act of 2005, Pub. L., 109-2 (Feb. 18, 2005); and over supplemental state law claims pursuant to 28 U.S.C. § 1367.

22. Venue is proper in this Court and judicial district pursuant to 28 U.S.C. § 1391 and/or Pub. L. 109-2 because a substantial part of the events or omissions giving rise to the claim occurred in this judicial district. In this judicial district, Plaintiffs purchased the recalled pet food products made, imported, sold, and contaminated by Defendants, and their household pet ate and consumed the Products. Many thousands, if not millions, of other consumers – including other members of the Classes – purchased the Products in this judicial district from retailers that

5

Defendants, their agents, affiliates, or others controlled or were in privity with. In turn, Defendant PetSmart, Inc. and other retailers sold the Products to the general public, including Plaintiffs, and members of the Classes. The Products were purchased for consumption by the pets of Plaintiffs and the other members of the Classes. Defendants made or caused these products to be offered for sale and sold to the public, including Plaintiffs.

## IV.   FACTS

23.     The large scale and nationwide pet food contamination problem related to this action first surfaced in mid-February, 2007, with reports regarding Menu Foods Inc. – another leading manufacturer of pet food products in the United States. At or around February 20, 2007, almost a month before it issued its first recall related to its pet food products, Menu Foods began receiving widespread inquiries and complaints from pet owners reporting that Menu Foods pet food products had made their pets sick. Other pet food companies and retailers, including Nestle, also began receiving complaints and inquiries at or about this time.

24.     By February 27, 2007, in response to these numerous complaints and inquiries, Menu Foods started testing its product on 40-50 cats and dogs as part of its quarterly feeding trials. On March 2, the first of nine animals in Menu Foods feeding trial died of acute renal failure.

25.     By March 6, 2007, Menu Foods had determined that many of their pet food Products were indeed contaminated and they also had determined the likely source of the contamination. Menu Foods determined that the contamination problem stemmed from a tainted wheat gluten supply that they had received from a new foreign supplier. The wheat gluten supply contained aminopterin and/or melamine, two substances which are foreign to pet food,

6

which would not be expected by a reasonable person to be present in pet food, and which may be toxic when consumed.

26.     On March 6, 2007, Menu Foods notified the U.S. Food and Drug Administration ("FDA") and took its first action concerning the possible contamination by switching its supplier of wheat gluten.

27.     On March 16, 2007, Menu Foods announced a recall of several of its "wet" pet food Products. The recall included approximately 42 brands of "cuts and gravy" style dog food and 51 brands of "cuts and gravy" style cat food, all produced at Menu Foods' facilities in Emporia, Kansas and Pennsauken, New Jersey between December 3, 2006 and March 6, 2007. Menu Foods' press release noted that the recall was being initiated due to tainted ingredients found in shipments from their new supplier.

28.     Also on March 16, 2007, in association with the Menu Foods recall, Nestle initiated its own recall of its 5.3 ounce Mighty Dog brand pouch products that were produced by Menu Foods between December 3, 2006 and March 14, 2007. In its press release dated March 16, 2007, Nestle emphasized that "[i]mportantly, no Mighty Dog canned products, or any other Purina products are affected by Menu's recall."

29.     Plaintiffs relied on this information and other similar information disseminated by Nestle in continuing to feed their dog Nestle Alpo Products after Nestle's March 16th recall.

30.     Soon after the March 16th recalls, the listing of recalled products in relation to the Menu Foods recall initiated by other companies, including Nestle, jumped dramatically. By March 19, 2007, the list reached over 90 dog and cat food products and included many highly popular brands such as Best Choice, Eukanuba, Nutro, and Iams.

7

31.     On March 23, 2007, ABC News reported what was widely known in the pet food industry already – that the source of the pet food contamination problem began with tainted wheat gluten produced by a foreign supplier. Noting the far reaching effects that this may have, the report stated that the discovery "raises questions about the safety of pet and other food products in the United States."

32.     Also on March 23, 2007, Nestle issued another press release in which it stated in pertinent part, "We want to take this opportunity to reassure you that Mighty Dog pouch products are the ONLY Purina brand products affected by Menu Foods' recall. Nestle Purina stands behind the high quality of our pet foods, and all Purina brand cat food products and all other Purina brand dog food products... can continue to be fed to your pets with complete confidence."

33.     Yet despite these reassurances, a week later on March 30, 2007, Nestle issued another press release notifying the public that it was recalling its "Alpo Brand Prime Cuts in Gravy" Products after realizing that these Alpo Products contained tainted wheat gluten. The tainted wheat gluten was supplied to Nestle by the same company that also supplied Menu Foods. Given this new information, clearly, the statements included in Nestle's March 16th and 23rd press release were patently false and misleading. Nestle had no reasonable basis upon which to make these statements given the previous publicly reported findings and given all the information made available to them.

34. On April 19th, 2007, ABC News reported that the U.S. Food and Drug Administration ("FDA") was investigating whether "imported ingredients used in recalled pet food... have been intentionally spiked with an industrial chemical to boost their apparent protein content."

8

35.     Defendant Nestle Purina holds itself out to the public as a manufacturer of safe, nutritious, and high-quality dog and cat food. According to its website, Nestle Purina is "passionately committed to making pets' lives better. As the pace of change in pet care accelerates, our challenge is to lead with fresh, innovative approaches to making the lives of dogs and cats better."

36.     Upon information and belief, Nestle failed to adequately investigate the cause of the Menu Foods recall and how it may relate to their Products. Nestle knew why Menu Foods products were being recalled, i.e., because they contained tainted wheat gluten, as that information was made available to them sometime between March 6 and March 16, 2007. Those in the industry knew of the potential problems posed by wheat gluten supplied by foreign suppliers at that time and soon thereafter. Indeed, as mentioned above, ABC news reported that information nationwide on March 23. Despite these instances, as evidenced by their March 16th and March 23rd press releases, Nestle continued to brazenly assure the public that their Products, aside from their Mighty Dog products, were safe. Yet in a week's time they would recall another line of their Products, their "Alpo Brand Prime Cuts in Gravy" Products.

37.     Defendants knew – or should have known- about the potential problems with their Products and notified the public long before when they actually did. Indeed, Defendants had received numerous complaints and inquiries from around the country concerning the safety of their Products and associated problems people were experiencing with their pets well before the first Nestle Purina recall.

38.     Defendants, directly, or through their agents, ostensible agents and/or co-conspirators, by selling the Products as pet food, implicitly and explicitly represented that the Products were fit for consumption by pets, and would not result in the death and/or serious

9

illness of the pets that consume the purportedly safe food. Indeed, as evidenced by the aforementioned press releases, Defendants directly and explicitly represented through overt and unambiguous statements that the Products were fit for consumption by pets, and would not result in the death and serious illness of the pets that consume the purported food.

39. In addition to the aforementioned press releases, Defendants have also made representations, including on product labeling and otherwise in print materials and in other marketing and promotional materials, concerning the quality of their products, including explicit and implicit representations that the Products were suitable for consumption by pets. Defendants ultimately make billions of dollars in revenue a year from companies who sell the Products at retail level. Accordingly, Defendants keep themselves apprised of the advertising, promotions, marketing and claims that are made on behalf of the Products. On information and belief, Defendants coordinate with the companies who brand the product at the retail level, concerning the claims made about the quality of Defendants' product, including the Products.

40. Plaintiffs purchased Nestle's "Alpo Brand Prime Cuts in Gravy" Product at a local PetSmart retail store and fed it to their dog, Goldie, never suspecting that it may be defective. A short time later, Goldie became seriously ill due to her consumption of Nestle's defective Product and required overnight hospitalization, repeat visits to a veterinarian, and medication. Aside from the emotional trauma associated with the sudden illness of their pet, Plaintiffs have also incurred economic damages similar to those of the Class members. Accordingly, Plaintiffs seek relief herein for themselves and the Class.

## V. CLASS ACTION ALLEGATIONS

41. Plaintiffs bring this action on their own behalf and as a Class action pursuant to Rule 23(b) (2) of the Federal Rules of Civil Procedure on behalf of the following proposed class:

10

"All persons in the United States who purchased, or incurred damages by using, pet food produced, manufactured, sold, or imported by Defendants that was or will be recalled by the Defendants. This definition includes pet food that causes death or illness but escapes recall for any reason."

Upon completion of discovery with respect to the scope of the class, Plaintiffs reserve the right

to amend the class definition. Excluded from the Class are Defendants, their parents,

subsidiaries and affiliates, directors and officers, and members of their immediate families. Also

excluded from the Class are the Court, the Court's spouse, all persons within the third degree of

relationship to the Court and its spouse, and the spouses of all such persons.[5]

42.     Plaintiffs also bring this action on behalf of themselves and the following Illinois

Subclass defined as:

"All persons in the State of Illinois who purchased, or incurred damages by using, pet food produced, manufactured, sold, or imported by Defendants that was or will be recalled by the Defendants. This definition includes pet food that causes death or illness but escapes recall for any reason"

43.     Numerosity: The members of the Nationwide Class and Illinois Subclass are so

numerous and geographically diverse that joinder of all of them is impracticable. While the

exact number and identities of members of the Classes are unknown to Plaintiff at this time and

can only be ascertained through appropriate discovery, Plaintiffs believe and therefore aver that

there are many thousands if not millions of Class members throughout the United States and

many thousands of Illinois Subclass members.

44.     Commonality: There are questions of fact and law common to members of the

Class that predominate over any questions affecting any individual members including, *inter*

*alia*, the following:

---

[5] See Canon 3.C (3) (a) of the Code of Conduct for United States Judges.

(a)     Whether Defendants sold pet food and pet food products that were recalled or subject to a recall.

(b)     Whether Defendants advertised, represented, or held themselves out as producing or manufacturing a pet food product that was safe for pets of the class members.

(c)     Whether Defendants expressly warranted these products.

(d)     Whether Defendants purported to disclaim any express warranty.

(e)     Whether Defendants purported to disclaim any implied warranty.

(f)     Whether any limitation on warranty fails to meet its essential purpose.

(g)     Whether Defendants intended that the Products be purchased by Plaintiffs, Class members, or others.

(h)     Whether Defendants intended or foresaw that Plaintiff, class members, or others would feed the Products to their pets.

(i)     Whether Defendants recalled the pet food products.

(j)     Whether Defendants were negligent in manufacturing or processing the Products.

(k)     Whether Defendants intentionally spiked or contaminated the Products or their ingredients with melamine or other foreign substances in an effort to boost the apparent protein content of the ingredients or for any other reason.

(l)     Whether Defendants' negligence proximately caused loss or injury to damages.

(m)     Whether Class members suffered direct losses or damages.

(n)     Whether Class members suffered indirect losses or damages.

12

     (o)    Whether Defendants' acts or practices violated the Illinois Consumer Fraud and Deceptive Business Practices Act (CFDBPA).

45.    Typicality: Plaintiffs' claims are typical of the claims of the other members of the Classes in that all such claims arise out of Defendants' conduct in manufacturing, producing and entering into the stream of commerce defective pet food and pet food products, Defendants' conduct surrounding the recall of its product, and Plaintiffs' and Class Members' purchase and use of Defendants' products. Plaintiffs and the other members of the Classes seek identical remedies under identical legal theories, and there is no antagonism or material factual variation between Plaintiffs' claims and those of the Classes.

46.    Adequacy: Plaintiffs will fairly and adequately protect the interests of the Classes. Plaintiffs' claims are coextensive with, and not antagonistic to, the claims of the other members of the Classes. Plaintiffs are willing and able to vigorously prosecute this action on behalf of the Classes, and Plaintiffs have retained competent counsel experienced in litigation of this nature.

47.    Plaintiffs bring this action under Rule 23(b) (3) because common questions of law and fact (identified in paragraph 25 above) predominate over questions of law and fact affecting individual members of the Classes. Indeed, the predominant issue in this action is whether Defendants' pet food and pet food products are defective and have caused damages to Plaintiffs and the members of the Classes. In addition, the expense of litigating each Class member's claim individually would be so cost prohibitive as to deny Class members a viable remedy. Certification under Rule 23(b)(3) is appropriate because a class action is superior to the other available methods for the fair and efficient adjudication of this action, and Plaintiffs envision no unusual difficulty in the management of this action as a class action.

48.     The undersigned counsel for Plaintiffs and the Classes request that the Court appoint them to serve as class counsel first on an interim basis and then on a permanent basis. Undersigned counsel will fairly and adequately represent the interests of the class, have identified or investigated the potential claims of the Classes, are experienced in handling class actions, other complex litigation, and consumer claims of the type asserted in the action, know the applicable law, will commit sufficient resources to represent the Classes, and are best able to represent the Classes.

49.     Plaintiffs request this Court to certify these Classes in accordance with Rule 23 and the Class Action Fairness Act of 2005.

## VI.     CAUSES OF ACTION

### FIRST CAUSE OF ACTION

#### Breach of Implied Warranty

50.     Plaintiffs hereby adopt and incorporate by reference paragraphs 1-49 as if more fully set forth herein.

51.     Defendants manufactured, marketed, sold, imported and distributed the Products.

52.     At the time that Defendants manufactured, marketed, sold, imported, and distributed the Products, Defendants knew of the purpose for which the Products were intended and impliedly warranted that the Products were of merchantable quality and safe and fit for such use.

53.     Plaintiffs reasonably relied upon the skill, superior knowledge and judgment of the Defendants as to whether the Products were of merchantable quality and safe and fit for their intended use.

14

54. Due to Defendants' wrongful conduct as alleged herein, Plaintiffs could not have known about the risks and side effects associated with the Products until after ingestion by Plaintiffs' pets.

55. Contrary to such implied warranty, the Products were not of merchantable quality and were not safe or fit for their intended use.

56. As a direct and proximate result of Defendants' breach of implied warranty, Plaintiffs suffered damages as alleged herein.

WHEREFORE, Plaintiffs, on behalf of themselves and all others similarly situated, pray for relief and judgment against Defendants as follows:

   (a) For an order certifying the Classes under the appropriate provisions of Rule 23, as well as any other appropriate subclasses, and appointing Plaintiffs and their legal counsel to represent the Classes;

   (b) Awarding actual and consequential damages;

   (c) Granting injunctive relief;

   (d) For pre- and post-judgment interest to the Classes, as allowed by law;

   (e) For reasonable attorneys' fees and costs to counsel for the Classes if and when pecuniary and non-pecuniary benefits are obtained on behalf of the Classes; and

   (f) Granting such other and further relief as is just and proper.

## SECOND CAUSE OF ACTION

### Breach of Express Warranty

57. Plaintiffs hereby adopt and incorporate by reference paragraphs 1-56 as if more fully set forth herein.

15

58.     Defendants expressly warranted that the Products were safe for consumption by pets.

59.     The Products did not conform to these express representations because the Products are not safe and cause serious side effects in pets, including death.

60.     As a direct and proximate result of the breach of said warranties, and as the direct and legal result of the defective condition of the Products as manufactured and/or supplied by Defendants, and other wrongdoing of Defendants described herein, Plaintiffs were caused to suffer damages.

WHEREFORE, Plaintiffs, on behalf of themselves and all others similarly situated, pray for relief and judgment against Defendants as follows:

(a)     For an order certifying the Classes under the appropriate provisions of Rule 23, as well as any other appropriate subclasses, and appointing Plaintiffs and their legal counsel to represent the Classes;

(b)     Awarding actual and consequential damages;

(c)     Granting injunctive relief;

(d)     For pre- and post-judgment interest to the Classes, as allowed by law;

(e)     For reasonable attorneys' fees and costs to counsel for the Classes if and when pecuniary and non-pecuniary benefits are obtained on behalf of the Classes; and

(f)     Granting such other and further relief as is just and proper.

### THIRD CAUSE OF ACTION

### Negligence

16

61.     Plaintiffs hereby adopt and incorporate by reference paragraphs 1-60 as if more fully set forth herein.

62.     Defendants owed Plaintiffs a duty to only offer safe, non-contaminated products for consumption by household pets.

63.     Through their failure to exercise due care, Defendants breached this duty by producing, processing, manufacturing, importing, and offering for sale the Products in a defective condition that was unhealthy to the Plaintiffs' pets.

64.     Additionally, Defendants breached their duty of care to Plaintiffs by failing to use sufficient quality control, perform adequate testing, proper manufacturing, production, or processing, and failing to take sufficient measures to prevent the Products from being offered for sale, sold, or fed to pets.

65.     Defendants knew or, in the exercise of reasonable care should have known, that the Products presented an unacceptable risk to the pets of the Plaintiff, and would result in damage that was foreseeable and reasonably avoidable.

66.     As a direct and proximate result of Defendants' above-referenced negligence, Plaintiffs have suffered loss and damages.

WHEREFORE, Plaintiffs, on behalf of themselves and all others similarly situated, pray for relief and judgment against Defendants as follows:

> (a)     For an order certifying the Classes under the appropriate provisions of Rule 23, as well as any other appropriate subclasses, and appointing Plaintiffs and their legal counsel to represent the Classes;
>
> (b)     Awarding actual and consequential damages;
>
> (c)     Granting injunctive relief;

17

(d)     For pre- and post-judgment interest to the Class, as allowed by law;

(e)     For reasonable attorneys' fees and costs to counsel for the Class if and
        when pecuniary and non-pecuniary benefits are obtained on behalf of the
        Class; and

(f)     Granting such other and further relief as is just and proper.

## FOURTH CAUSE OF ACTION

### Strict Product Liability

67.     Plaintiffs hereby adopt and incorporate by reference paragraphs 1-66 as if more
fully set forth herein.

68.     Defendants are producers, manufacturers, importers, retailers and/or distributors
of the Products.

69.     The Products produced, manufactured, imported, sold and/or distributed by
Defendants were defective in design or formulation in that, when the Products left the hands of
the Defendants, the foreseeable risks exceeded the benefits associated with the design or
formulation.

70.     Defendants' Products were expected to and did reach the Plaintiffs without
substantial change in condition.

71.     Alternatively, the Products manufactured and/or supplied by Defendants were
defective in design or formulation, in that, when they left the hands of the Defendants, they were
unreasonably dangerous, more dangerous than an ordinary consumer would expect, and more
dangerous than other pet food products without concomitant accurate information and warnings
accompanying the product for the Plaintiffs to rely upon.

18

72.     The Products produced, manufactured and/or distributed by Defendants were defective due to inadequate warning and/or inadequate testing and study, and inadequate reporting regarding the results of same.

73.     The Products produced, manufactured and/or distributed by Defendants were defective due to inadequate post-marketing warning or instruction because, after Defendants knew or should have known of the risk of injury from the Products, Defendants failed to immediately provide adequate warnings to the Plaintiff and the public.

74.     As the direct and legal result of the defective condition of the Products as produced, manufactured and/or distributed by Defendants, and of the negligence, carelessness, other wrongdoing and actions of Defendants described herein, Plaintiffs suffered damages.

WHEREFORE, Plaintiffs, on behalf of themselves and all others similarly situated, pray for relief and judgment against Defendants as follows:

      (a)    For an order certifying the Classes under the appropriate provisions of Rule 23, as well as any appropriate subclasses, and appointing Plaintiffs and their legal counsel to represent the Classes;

      (b)    Awarding actual and consequential damages;

      (c)    Granting injunctive relief;

      (d)    For pre- and post-judgment interest to the Classes, as allowed by law;

      (e)    For reasonable attorneys' fees and costs to counsel for the Classes if and when pecuniary and non-pecuniary benefits are obtained on behalf of the Classes; and

      (f)    Granting such other and further relief as is just and proper.

19

## FIFTH CAUSE OF ACTION

### Unjust Enrichment

75.     Plaintiffs hereby adopt and incorporate by reference paragraphs 1-74 as if more fully set forth herein.

76.     As a direct, proximate, and foreseeable result of Defendants' acts and otherwise wrongful conduct, Plaintiffs suffered damages. Defendants profited and benefited from the sale of the Products, even as the Products caused Plaintiffs to incur damages.

77.     Defendants have voluntarily accepted and retained these profits and benefits, derived from consumers, including Plaintiffs, with full knowledge and awareness that, as a result of Defendants' unconscionable wrongdoing, consumers, including Plaintiffs, were not receiving products of the quality, nature, fitness, or value that had been represented by Defendants or that reasonable consumers expected. Plaintiffs purchased pet food that they expected would be safe and healthy for their pets and instead have now to endure the illness or death of their pets.

78.     By virtue of the conscious wrongdoing alleged in this Complaint, Defendants have been unjustly enriched at the expense of the Plaintiffs who are entitled to, and hereby seek, the disgorgement and restitution of Defendants' wrongful profits, revenue, and benefits, to the extent, and in the amount, deemed appropriate by the Court; and such other relief as the Court deems just and proper to remedy Defendants' unjust enrichment.

WHEREFORE, Plaintiffs, on behalf of themselves and all others similarly situated, pray for relief and judgment against Defendants as follows:

> (a)     For an order certifying the Classes under the appropriate provisions of Rule 23, as well as any other appropriate subclasses, and appointing Plaintiffs and their legal counsel to represent the Classes;

    (b)    Awarding reimbursement, restitution and disgorgement from Defendants of the benefits conferred by Plaintiffs and the Classes;

    (c)    For pre- and post-judgment interest to the Classes, as allowed by law;

    (d)    For reasonable attorneys' fees and costs to counsel for the Classes if and when pecuniary benefits are obtained on behalf of the Classes; and

    (e)    Granting such other and further relief as is just and proper.

## SIXTH CLAIM FOR RELIEF

### Intentional Infliction of Emotional Distress

79.    Plaintiffs repeat and incorporate herein by reference paragraphs 1-78 as if more fully set forth herein.

80.    Upon information and belief, Defendants "Does 1-1,000" acted intentionally in spiking the Products with melamine or other foreign substances in an effort to boost the Products' apparent protein content.

81.    The conduct of Defendants "Does 1-1,000" was extreme and outrageous.

82.    The conduct of Defendants "Does 1-1,000" was the cause of severe emotional distress suffered by Plaintiffs, Class members, and their families, who suffered through the death or painful illness of their beloved pets.

## SEVENTH CLAIM RELIEF

### Unfair, Unlawful and Deceptive Business Practices under the Illinois Consumer Fraud and Deceptive Business Practices Act (815 ILCS 505)

83.    Plaintiffs repeat and incorporate herein by reference paragraphs 1-82 as if more fully set forth herein.

84.    Defendant has engaged in unfair, unlawful and/or fraudulent business practices as set forth above.

85. By engaging in the acts and practices described herein, Defendant has committed one or more unfair business practices within the meaning of the Illinois Consumer Fraud and Deceptive Business Practices Act.

86. Defendant's above-described deceptive and misleading acts and practices have deceived and/or are likely to deceive Plaintiffs and other Illinois Subclass members. Plaintiffs were, in fact, deceived as to the terms and conditions of services provided by Defendant. Plaintiffs and Illinois Subclass members have suffered harm as a result of Defendant's misrepresentations and/or omissions.

87. Plaintiffs and the Illinois Subclass have suffered injury in fact and have lost money or property as a result of such unfair and unlawful business practices. Such injuries and losses include, but are not limited to, the purchase price of the Products, veterinary fees, and damage to their property in the form of their pets. Neither the Plaintiffs nor any reasonable Illinois Subclass member would have purchased or used Defendants' Products had they first known of Defendant's unlawful acts and practices.

88. On information and belief, there is a strong likelihood that not all of Defendants' harmful products have yet been subject to recall and Defendants are now engaging in and will continue to engage in the above-described manufacture, distribution, and sale, and that likelihood represents a credible threat of immediate future harm.

89. Plaintiffs and the Illinois Subclass seek restitution, disgorgement, injunctive relief and all other relief from Defendant allowed under the ICFA. Plaintiffs and the Illinois Subclass also seek attorneys' fees pursuant to the ICFA, as well as such other and further relief as the Court deems just and proper.

22

## JURY DEMAND

Plaintiffs and the Class demand a jury trial on all issues triable by a jury.

DATED:  April 23, 2007

THE LAW OFFICES OF STEVEN E.
  SCHWARZ, ESQ.
STEVEN E. SCHWARZ

STEVEN E. SCHWARZ

2461 W. Foster Ave., #1W
Chicago, IL 60625
Telephone:  773/837-6134

Attorney for Plaintiffs and the Class