# EXHIBIT B

Dockets.Justia.com

BEFORE THE JUDICIAL PANEL ON

MULTIDISTRICT LITIGATION

| | |
|---|---|
| In re: | MDL Docket No. 1850 |
| PET FOOD PRODUCTS LIABILITY LITIGATION | |

**PLAINTIFF SHIRLEY SEXTON'S MEMORANDUM OF LAW IN RESPONSE TO PLAINTIFF TROIANO AND WASHINGTON PLAINTIFFS' MOTIONS FOR TRANSFER AND COORDINATION OR CONSOLIDATION UNDER 28 U.S.C. § 1407**

Mark J. Tamblyn
**WEXLER TORISEVA WALLACE LLP**
1610 Arden Way, Suite 290
Sacramento, California 95815
Telephone: (916) 568-1100
Facsimile: (916) 568-7890

Stuart C. Talley
**KERSHAW, CUTTER & RATINOFF, LLP**
980 9th Street, 19th Floor
Sacramento, California 95814
Telephone: (916) 448-9800
Facsimile: (916) 669-4499

Attorneys for Plaintiff/Movant *Shirley Sexton*

[Additional Counsel Listed on Signature Page]

1

## I.    PRELIMINARY STATEMENT

Pursuant to Rule 7.2 of the Rules of Procedure of the Judicial Panel on Multidistrict Litigation (hereinafter "the Panel"), Plaintiff Shirley Sexton respectfully submits the following response to the motions of Plaintiff Christina Troiano ("Plaintiff Troiano") and Plaintiffs Tom Whaley, Stacey Heller, Toinette Robinson, David Rapp, Cecily and Terrence Mitchell, Suzanne E. Johnson, Craig R. Klemann, Audrey Kornelius, Barbara Smith, Michele Suggett and Don James ("Washington Plaintiffs").

Since Movant *Sexton's* motion was filed, over fifty (50) additional actions have been brought in at least ten different district courts around the nation.  Out of these actions, over twenty (20), close to half of all the additional cases filed in this litigation, were filed in the District of New Jersey.

Furthermore, since Movant filed its motion to centralize actions in the Central District of California, several plaintiffs have demonstrated unequivocal support for transferring and consolidating these actions in the District of New Jersey.  No party has opposed centralization. As a result, this response solely addresses the issue of the proper transferee forum which Movant now submits is the District of New Jersey.

In addition to the dramatic increase of cases filed in this litigation, there have been numerous factual developments since Movant *Sexton* filed its initial motion with the Panel.  The recall by Menu Foods Income Fund has greatly expanded and now includes close to fifty

different brands of cat food[1] and over fifty different brands of dog food.[2]  Several other pet food

manufacturers have also voluntarily added its pet food and pet treat products to the nationwide

recall list, including Hill's Pet Nutrition,[3] Del Monte Pet Products[4] and Sunshine Mills.[5]

Moreover, the Food and Drug Administration (FDA) has traced the contaminated wheat gluten

thought to be responsible for the  illness and deaths of potentially thousands of pets to suppliers

in China and has since blocked imports from those suppliers.[6]  As a result, recent cases have

named these companies as defendants in this litigation.[7]

## II.   **ARGUMENT**

The Panel has found that litigation has a strong nexus to a particular district court where,

for example, the majority of related federal court actions are pending, where defendants'

headquarters reside, and where relevant witnesses and documents will likely be found.  Such a

nexus makes that district court an appropriate transferee forum.  *See, e.g., In re Pfizer Inc. Sec.,*

*Derivative & "ERISA" Litig.*, 374 F. Supp. 2d 1348, 1350 (J.P.M.L. 2005).  Whether a district is

---

[1] Menufoods.com, *Recalled Cat Product Information*, April 17, 2007, *at*
http://www.menufoods.com/recall/product_cat.html (last visited April 18, 2007).
[2] Menufoods.com, *Recalled Dog Product Information*, April 17, 2007, *at*
http://www.menufoods.com/recall/product_dog.html (last visited April 18, 2007).
[3] Hillspet.com, *News Updates*, *at* http://www.hillspet.com/zSkin_2/HillsPressRelease.jsp (last viewed April 18, 2007).
[4] Delmonte.com, *Del Monte Products Voluntarily Withdraws Specific Product Codes of Pet Treats and Wet Dog Food Products in the United States*, April 6, 2007, *at* http://www.delmonte.com/petfoodrecall.html (last viewed April 18, 2007).
[5] Sunshinemills.com, *Sunshine Mills, Inc. Issues Voluntary Nationwide Recall of Certain Branded and Private Label Branded Dog Biscuits*, April 5, 2007, *at* http://www.sunshinemills.com/press_release.html (last viewed April 18, 2007).
[6] *See, e.g.*, MSNBC.com, *China Probing Wheat Gluten Tied to Pet Deaths*, April 6, 2007, *at* http://www.msnbc.msn.com/id/17980629/ (last viewed April 18, 2007).
[7] *See, e.g., Luke DeBarthy v. Menu Foods Income Fund, Menu Foods, Inc., Menu Foods Holdings, Inc., Menu Foods Midwest Corporation, Xuzhou Anying Biologic Technology Development Company Ltd. and Suzhou Textile Import and Export Company*, Case No. 1:07-cv-01739-NLH-AMD, filed on April 10, 2007 in the United States District Court for the District of New Jersey.

3

---

Plaintiff Shirley Sexton's Memorandum of Law in Response to Plaintiff Troiano and Washington Plaintiffs' Motions
for Transfer and Coordination or Consolidation under 28 U.S.C. § 1407

convenient to witnesses and parties and easily accessible are also significant considerations in choosing a transferee forum. *See, e.g., In re Southwestern Bell Tel. Co. Maternity Benefits Litig.*, 400 F. Supp. 1400, 1401 (J.P.M.L. 1975). Lastly, the Panel decides where to centralize or consolidate cases by examining the capacity of a district court to manage multidistrict litigation, *see, e.g., In re Bextra & Celebrex Prods. Liab. Litig.*, 391 F. Supp. 2d 1377, 1379 (J.P.M.L. 2005), and has considered whether a governmental investigation related to the litigation has taken place in a particular district. *See, e.g., In re Foundry Resins Antitrust Litig.*, 342 F. Supp. 2d 1346, 1347 (J.P.M.L. 2004). The District of New Jersey amply satisfies each of these factors.

### A. The Vast Majority of Actions Were Filed in the District of New Jersey

More cases are pending in the District of New Jersey than any other district court in the nation. The district in which the majority of actions were filed is a significant factor in deciding upon the appropriate transferee forum. *See, e.g., In re Temporomandibular Joint (TMJ) Implants Prods. Liab. Litig.*, 844 F. Supp. 1553, 1554 (J.P.M.L. 1994) (holding that, in part, because over 100 of the 173 actions were filed in the District of Minnesota, the District of Minnesota was the most appropriate transferee forum); *In re Air Crash Disaster Near Coolidge, Arizona, on May 6, 1971*, 362 F. Supp. 572, 573 (J.P.M.L. 1973) (indicating that a particular district court was the appropriate transferee forum partly because the vast majority of the cases were pending in that district); *In re Baldwin-United Corp. Litig.*, 581 F. Supp. 739, 741 (J.P.M.L. 1984) (indicating that one of the factors for centralizing in a particular district was that "plaintiffs in 23 of the 40 actions . . . brought their actions in the [district].").

4

Out of the sixty (60) actions pending, twenty-eight (28) of these reside in the District of New Jersey. In fact, there are no more than six (6) cases filed in any other district court involved in this litigation.

### B. Relevant Witnesses and Documents Are Located in the District of New Jersey

The location of a defendant's principal place of business and relevant witnesses and documents are critical factors for determining where to centralize multidistrict litigation. *See, e.g., In re Stand 'n Seal Prods. Liab. Litig.*, 469 F. Supp. 2d 1351, 1352 (J.P.M.L. 2007) (concluding that in a nationwide class action the Northern District of Georgia was the most appropriate transferee forum because, in part, "two of the five corporate defendants have their principal places of business in that district, and thus witnesses and documents relevant to plaintiffs' claims are likely to be located there."); *In re Albertson's, Inc., Employment Practices Litig.*, 1998 U.S. Dist. LEXIS 6377, at *3 (J.P.M.L. May 4, 1998) (centralizing in the district where defendant's main offices were located, "and thus substantial discovery of witnesses and documents is likely to occur there."). In fact, the Panel has held that a district court "possesses a *clear nexus* to the litigation *because* [defendant] has its headquarters in that district." *In re Charter Commc'ns, Inc., Sec. Litig.*, 254 F. Supp. 2d 1379, 1381 (J.P.M.L. 2003) (emphasis added).

Menu Foods, Inc. is a defendant named in nearly every complaint filed in this litigation. The company is incorporated under the laws of New Jersey and maintains its principal executive offices in Pennsauken, New Jersey. Menu Foods, Inc. is of particular significance to this litigation it operates one of two facilities in the nation where the contaminated pet food at issue

5

was manufactured. This facility is also located in New Jersey. As a result, documents and witnesses relating to this manufacturing facility will undoubtedly reside and be found in New Jersey, making New Jersey a critical locus for discovery. It follows that centralizing these actions in the District of New Jersey will introduce efficiencies to the discovery process and streamline the management of these numerous cases.

By contrast, locating these actions in the Southern District of Florida or the Western District of Washington would hinder the administration of this litigation. Not a single defendant named in any of the sixty cases is located in any of these other proposed forums. Additionally, as mentioned earlier, even a relatively small percentage of the named plaintiffs reside in each of these other proposed districts. Consequently, because few, if any, documents and witnesses relevant to these cases will be available in those districts, the Southern District of Florida and the Western District of Washington have little nexus to this litigation.

### C. The District of New Jersey is the Most Convenient Forum for Parties and Witnesses

Whether a particular district is a convenient forum for parties and witnesses is a significant factor in determining the most appropriate transferee forum. 28 U.S.C. § 1407 ("Transfers for such proceedings will be for the convenience of parties and witnesses and will promote the just and efficient conduct of such actions."). The convenience of a particular district is often evaluated in terms of the potential forum's geographic proximity to parties and witnesses involved in the litigation. *See, e.g., In re New Motor Vehicles Canadian Exp. Antitrust Litig.*, 269 F. Supp. 2d 1372, 1373 (J.P.M.L. 2003) (holding that the District of Maine would serve the convenience of parties and witnesses because of its proximity to Canada, the country from which

6

automobiles were prevented from being exported); *In re Publ'n Paper Antitrust Litig.*, 346 F.

Supp. 2d 1370, 1372 (J.P.M.L. 2004) (indicating that the District of Connecticut best served the

convenience of defendants and witnesses located in the eastern United States); *In re Elec.*

*Carbon Prods. Antitrust Litig.*, 259 F. Supp. 2d 1374, 1376 (J.P.M.L. 2003) (stating that the

proximity of district courts to witnesses and parties are relevant to the convenience of a forum).

Menu Foods Income Fund is a Canadian company, with its principal executive offices

located in Ontario, Canada. As the parent company to every Menu Foods affiliate named in the

underlying cases, Menu Foods Income Fund is a critical defendant in this litigation. Among

other subsidiaries, it is the parent company to two of the pet food manufacturers implicated in the

distribution of contaminated pet food, including Menu Foods, Inc. Together, Menu Foods

Income Fund's location in Canada and Menu Foods, Inc.'s presence in New Jersey easily make

the District of New Jersey the most geographically proximate forum in this litigation.

Furthermore, the District of New Jersey is also the most convenient forum to the two

primary defendants in this litigation. Every case filed names either or both Menu Foods Income

Fund or Menu Foods, Inc. as defendants. The Southern District of Florida and the Western

District of Washington are both more geographically remote from both New Jersey and Canada.

### D. The Food and Drug Administration is Conducting Investigations in New Jersey

The ongoing investigation by the Food and Drug Administration (FDA) of the New

Jersey pet food factory operated by Menu Foods, Inc.[8] also weighs in favor of centralizing these

---

[8] *See, e.g.*, Donna St. George and Annie Gowen, *Anger Grows over Tainted Pet Food*, WASH. POST, March 24, 2007, at A1.

cases in the District of New Jersey. The Panel has held that the locus of government investigations concerning the underlying litigation is a factor in deciding an appropriate transferee forum. *See, e.g., In re Foundry Resins Antitrust Litig.*, 342 F. Supp. 2d 1346, 1347 (J.P.M.L. 2004) ("The presence of the government investigation . . . in the Southern District of Ohio also tilts toward centralization in the Southern District of Ohio."); *In re Tri-State Crematory Litig.*, 206 F. Supp. 2d 1376, 1378 (J.P.M.L. 2002) (holding that a district court was the appropriate transferee forum because the criminal investigation was ongoing in that district); *In re Air Crash Disaster at Washington, D.C. on January 13, 1982*, 533 F. Supp. 1350, 1351 (J.P.M.L. 1982) ("The District . . . is the most preferable transferee district. . . . federal investigations . . . have taken and will continue to take place there.").

The FDA has investigated the New Jersey pet food manufacturing plant because it is one of two manufacturing plants in the nation that received the contaminated wheat gluten suspected to have caused mass illnesses and deaths among pets.[9] The New Jersey plant is also one of two plants responsible for producing over 100 different brands of dog and cat food that eventually recalled by Menu Foods Income Fund.

The FDA's investigatory work in New Jersey is a significant factor in favor of centralizing all actions in the District of New Jersey. To Movant *Sexton's* knowledge, neither the FDA, nor any other governmental agency, have conducted any investigations concerning the current pet food recall in the Western District of Washington or the Southern District of Florida.

---

[9] MSNBC.com, *Owners Watching Pets Closely after Food Recall*, March 21, 2007, *at* http://www.msnbc.msn.com/id/17650075/ (last viewed April 17, 2007).

---

### E. The District of New Jersey Has the Capacity and Experience Necessary for Managing These Proceedings

The District of New Jersey has the capacity for managing this litigation and is experienced in managing complex multidistrict litigation. These are important factors for designating the transferee forum. *See, e.g., In re Janus Mut. Funds Inv. Litig.*, 310 F. Supp. 2d 1359, 1361 (J.P.M.L. 2004) (centralizing cases in the District of Maryland because it was a "transferee district with the capacity and experience to steer [the] litigation on a prudent course"); *In re Cmty. Bank of N. Va. Mortgage Lending Practices Litig.*, 368 F. Supp. 2d 1354, 1355 (J.P.M.L. 2005) (holding that an appropriate transferee forum was, in part, one with the capacity to handle the litigation).

Judicial statistics also support transfer to the District of New Jersey. For instance, the District of New Jersey has terminated a greater number of MDL cases than the other proposed forums and has done so in nearly the same time period. The District of New Jersey has handled and terminated a total of thirty MDLs between 1972 and September 30, 2006. Judicial Panel on Multidistrict Litigation, *Multidistrict Litigation Terminated Through September 30, 2006.* By comparison, the Southern District of Florida has processed twenty-four MDLs between 1971 and September 30, 2006 and the Western District of Washington has processed only seventeen between 1976 and September 30, 2006 – a little over half as many as the District of New Jersey. *Id.*

The District of New Jersey also has a well-managed docket with judges who have handled their caseloads extremely expeditiously. The District of New Jersey typically has fewer filings than both the Southern District of Florida and the Western District of Washington.

9

Administrative Office of the U.S. Courts, *Library – Publication and Reports, Statistical Reports: Federal Court Management Statistics, 2006 District Courts*, *available at* http://www.uscourts.gov/cgi-bin/cmsd2006.pl. As a result, the median time period between filing and disposition in the District of New Jersey is 8.2 months, while the median time period from filing to disposition in the Western District of Washington, for example, is 9.1 months. *Id.*

Finally, the Honorable Noel L. Hillman, to whom the vast majority of New Jersey cases have been assigned, is a well-respected jurist with a demonstrated e ability to preside over complex cases. Judge Hillman is also not currently handling any MDL proceedings in the District of New Jersey. Judicial Panel on Multidistrict Litigation, *Distribution of Pending MDL Dockets (as of March 12, 2007)*, at 5, *available at* http://www.jpml.uscourts.gov/Pending_MDLs/PendingMDL-March-07.pdf.

### F. The District of New Jersey is Easily Accessible

Another factor the Panel considers in determining the most appropriate transferee forum is whether a district court is located in an accessible metropolitan area. The Panel has previously found the District of New Jersey to meet this criteria. *See, e.g.*, *In re Comp. of Managerial, Prof'l and Technical Employees Antitrust Litig.*, 206 F. Supp. 2d 1374, 1375-76 (J.P.M.L. 2002) (centralizing in the District of New Jersey and recognizing the District of New Jersey as an "accessible, urban district[]"); *In re Long-Distance Tel. Serv. Fed. Excise Tax Refund Litig.*, 469 F. Supp. 2d 1348, 1350 (J.P.M.L. 2006) (centralizing in the District of Columbia because the district was both easily accessible and supported by the "most geographically distant parties – plaintiffs in the Central District of California action").

10

There are four major international airports situated around the District of New Jersey –

Newark Liberty International Airport, in New Jersey, both John F. Kennedy International Airport

and LaGuardia International Airport, in New York, and Philadelphia International Airport, in

Philadelphia, Pennsylvania. Each of these airports are geographically close to the District of

New Jersey, Camden Division, where twenty-seven of the sixty cases in this litigation have been

filed. In fact, Camden and Philadelphia are only five miles apart.

The proximity of the District of New Jersey to these several major airports will also be

most conducive to several named defendants that are located in China, specifically ChemNutra

LLC and Xuzhou Anying Biologic Technology Development Company Ltd. As the FDA has

traced the contaminated wheat gluten to these Chinese companies,[10] it is imperative these

defendants have easy access to the district in which these cases are centralized.

### III.    CONCLUSION

For the foregoing reasons, Plaintiff *Sexton* respectfully requests that the Panel centralize

and transfer these actions to the District of New Jersey.

Dated: April 19, 2007          **WEXLER TORISEVA WALLACE LLP**

By: _____
              MARK J. TAMBLYN

                 1610 Arden Way, Suite 290
                 Sacramento, California 95815
                 Telephone: (916) 568-1100
                 Facsimile: (916) 568-7890

---

[10] CBSNews.com, *FDA Blocks Wheat Gluten from China*, April 2, 2007, *at*
http://www.cbsnews.com/stories/2007/04/02/health/main2638477.shtml (last viewed April 18, 2007).

---

Kenneth A Wexler
**WEXLER TORISEVA WALLACE LLP**
One North LaSalle Street, Suite 290
Chicago, Illinois 60602
Telephone: (312) 346-2222
Facsimile:  (312) 346-0022

Stuart C. Talley
**KERSHAW, CUTTER & RATINOFF, LLP**
980 9th Street, 19th Floor
Sacramento, California 95814
Telephone: (916) 448-9800
Facsimile: (916) 669-4499

Attorneys for *Plaintiff/Movant, Shirley Sexton*

Plaintiff Shirley Sexton's Memorandum of Law in Response to Plaintiff Troiano and Washington Plaintiffs' Motions
for Transfer and Coordination or Consolidation under 28 U.S.C. § 1407