# EXHIBIT A

Dockets.Justia.com



JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

MAR 30 2007

FILED
CLERK'S OFFICE

# BEFORE THE JUDICIAL PANEL

# ON MULTIDISTRICT LITIGATION

In re:                                    MDL No. _____

PET FOOD PRODUCT LIABILITY
LITIGATION

## PLAINTIFF SHIRLEY SEXTON'S MOTION FOR TRANSFER AND
## COORDINATION OR CONSOLIDATION UNDER 28 U.S.C. § 1407

Mark J. Tamblyn
**WEXLER TORISEVA WALLACE LLP**
1610 Arden Way, Suite 290
Sacramento, CA  95815
Telephone:  (916) 568-1100
Facsimile:  (916) 568-7890

Stuart C. Talley
**KERSHAW, CUTTER & RATINOFF, LLP**
980 9th Street, 19th Floor
Sacramento, California  95814
Telephone: (916) 448-9800
Facsimile:  (916) 669-4499

Attorneys for Individual and Representative
Plaintiff, *Shirley Sexton*

**OFFICIAL FILE COPY**

JUDICIAL PANEL ON MULTIDISTRICT

2007 MAR 29  A 10:45

RECEIVED
CLERK'S OFFICE

IMAGED APR  2 2007

Plaintiff in the action listed below, by her attorneys, moves the Panel pursuant to 28 U.S.C. § 1407 to transfer the pending cases identified in the schedule filed concurrently herewith to the United States District Court for the Central District of California, and to consolidate them for pretrial purposes before the Honorable George H. King.

As set forth below and in the accompanying Memorandum, Movant believes the actions listed on the accompanying Schedule of Actions satisfy the requirements for consolidation and coordination because they concern common questions of fact and law and consolidation or coordination will serve the interests of efficiency and convenience.

In support of this Motion, Movant states as follows:

1.      Movant is the plaintiff in the following case:

***Shirley Sexton v. Menu Foods Income Fund, Inc.***
United State District Court for the Central District of California
Case No. 07-cv-01958-GHK (AJWx).

2.      The *Sexton Action* is a class action brought on behalf of all United States' residents who purchased contaminated pet food from Menu Foods Income Fund, Menu Foods Inc., and Menu Foods Midwest Corporation (collectively referred to as "Menu Foods").

3.      Specifically, the *Sexton Action* alleges that Menu Foods sold contaminated pet food to the general public that could cause severe injuries and death to pets that consumed the food.

4.      The *Sexton Action* seeks damages on behalf of all individuals who purchased the defendant's contaminated pet food.

5.      The factual allegations in the related actions contain identical allegations concerning the defendant's sale of contaminated pet food to the public. (See Complaints attached hereto as Exhibits A (*Sexton*), B (*Holt*) C (*Sims*), D (*Majerczyk*), E (*Whaley*), and F (*Workman*). The cases are all similar with respect to the legal theories supporting

2

their claims.  All of the plaintiffs assert claims for compensatory damages, claims under state unfair and deceptive acts statutes, as well as common law claims, arising out of the defendant's conduct.  Moreover each of the related actions is a class action and seeks relief on behalf of the same class of persons:  all persons who purchased the contaminated pet food sold by the defendant.  In each case, the district court will be asked to determine the following factual and legal issues raised against defendants:

    a)  Whether Defendants intentionally, recklessly or negligently authorized injurious pet food to enter the market;

    b)  Whether Defendants failed to properly test their "cuts and gravy" style dog and cat food before market entry of such foods;

    c)  Whether Defendants intentionally, recklessly or negligently delayed in instituting a recall of its "cuts and gravy" style dog and cat food;

    d)  Whether Defendants' recall is adaquate and properly notifies potentially affected consumers;

    e)  Whether Defendants' conduct constituted unlawful, unfair, or fradulent business practices under state consumer protections statutes;

    f)  Whether Defendants have been unjustly enriched as a result of their conduct;

    g)  Whether Plaintiff and members of the Class have sustained damages as a result of Defendants' conduct, and, if so, what is there appropriate measure of damages; and

    h)  Whether Plaintiff and members of the Class are entitled to punitive damages, and, if so, in what amount.

    6.    Discovery conducted in each of the actions proposed for consolidation will be substantially similar, and will involve the same or similar documents and witnesses, since each case arises from virtually identical operative facts relating to Menu Food's conduct.

7.    Absent transfer of all of these cases to a single forum for coordinated and consolidated pretrial proceedings, there is a substantial risk of inconsistent and conflicting pretrial rulings on discovery and other key issues, such as class certification.

8.    There has been no discovery in any of the actions and no initial disclosures have been made.  Since all actions are in the beginning stage of litigation, no prejudice or inconvenience will result from transfer, coordination, and/or consolidation.

9.    Efficiency in the administration of justice will be served by consolidation, because one judge rather than three judges can supervise all pretrial proceedings and render rulings that are consistent for all plaintiffs on common issues.

10.    For the reasons stated in this Motion and the Memorandum of Law submitted herewith, Movant respectfully request that all cases listed in the attached schedule be transferred to the United States District Court for the Central District of California to be consolidated for pretrial purposes before the Honorable George H. King.

Dated:  3-26-07            **KERSHAW, CUTTER & RATINOFF, LLP**

By:
        STUART C. TALLEY
        980 9th Street, 19th Floor
        Sacramento, California 95814
        Telephone: (916) 448-9800
        Facsimile: (916) 669-4499

Mark J. Tamblyn
**WEXLER TORISEVA WALLACE LLP**
1610 Arden Way, Suite 290
Sacramento, CA  95815
Telephone:  (916) 568-1100
Facsimile:  (916) 568-7890

Kenneth A. Wexler
**WEXLER TORISEVA WALLACE LLP**
One North LaSalle St., Suite 2000
Chicago, Illinois  60602
Telephone:  (312) 346-2222
Facsimile:  (312) 346-0022

Attorneys for *Plaintiff/Petitioner, Shirley Sexton*

4

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

MAR 3 0 2007

FILED
CLERK'S OFFICE

## BEFORE THE JUDICIAL PANEL

## ON MULTIDISTRICT LITIGATION

| | |
|---|---|
| In re: | MDL No. _____ |
| PET FOOD PRODUCT LIABILITY LITIGATION | |

## MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR TRANSFER AND COORDINATION OR CONSOLIDATION UNDER 28 U.S.C. § 1407

Mark J. Tamblyn
**WEXLER TORISEVA WALLACE LLP**
1610 Arden Way, Suite 290
Sacramento, CA 95815
Telephone: (916) 568-1100
Facsimile: (916) 568-7890

Stuart C. Talley
**KERSHAW, CUTTER & RATINOFF, LLP**
980 9th Street, 19th Floor
Sacramento, California 95814
Telephone: (916) 448-9800
Facsimile: (916) 669-4499

Attorneys for Individual and Representative
Plaintiff, *Shirley Sexton*

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

2007 MAR 29 A 10: 45

RECEIVED
CLERK'S OFFICE

Movant, Shirley Sexton, on behalf of herself and all others similarly situated, ("Movant") seeks transfer and coordination or consolidation under 28 U.S.C. § 1407 of all related "PET FOOD PRODUCT LIABILITY LITIGATION" filed in the federal courts. Plaintiff seeks to have all cases identified in the accompanying schedule transferred to the United States District Court for the Central District of California.

## I.    INTRODUCTION

There are currently six federal actions of which Movant is aware ("the pending cases"), that seek relief for individuals who purchased contaminated pet food from the defendants, Menu Foods Income Fund, Inc., Menu Foods Midwest Corporation, and Menu Foods, Inc. (collectively referred to as "Menu Foods"). The federal courts have original diversity jurisdiction over these state and common law based actions pursuant to The Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d).

Specifically, the pending cases allege that Menu Foods sold contaminated pet food to the general public and that individuals whose pets consumed the food suffered severe injuries and, in some cases, death. All of the pending cases seek to certify a class of United States' residents who purchased the contaminated pet food and seek to compensate them for all damages incurred as a result of the defendant's conduct.

None of the six pending cases is advanced and no discovery has been conducted. The actions are currently pending in the District Courts of New Jersey, Tennessee, Arkansas, Illinois, Washington and the Central District of California. Each arises from identical conduct involving the same defendant, and from common questions of law and fact. Prompt coordination and judicial action under the federal court's broad powers should be invoked to promote the efficient prosecution of the pending actions.

///

MEMO OF LAW IN SUPPORT OF MOTION FOR TRANSFER AND
COORDINATION OR CONSOLIDATION

## II.    ARGUMENT

### A.    Transfer To One District For Coordinated Or Consolidated Pretrial Proceedings Will Promote The Goals Of Ensuring The Just And Efficient Conduct Of The Actions, And Avoiding Inconsistent Or Conflicting Substantive And Procedural Determinations.

The purpose of 28 U.S.C. § 1407 is to provide centralized management, under a single court's supervision, of pretrial proceedings of litigation arising in various districts to ensure the just, efficient and consistent conduct and adjudication of such actions. *In re New York City Mun. Sec. Litig.*, 572 F.2d 49, 50 (2d Cir. 1978).

The transfer of actions to a single forum under § 1407 is appropriate where, as here, it will prevent duplication of discovery, and, most importantly in the instant case, it will eliminate the possibility of overlapping or inconsistent pleading and class action determinations by courts of coordinate jurisdiction. *In re Litig. Arising from Termination of Retirement Plan for Employees of Fireman's Fund Ins. Co.*, 422 F. Supp. 287, 290 (J.P.M.L. 1976); *In re LTV Corp. Sec. Litig.*, 470 F. Supp. 859, 862 (J.P.M.L. 1979); *In re Exterior Siding and Aluminum Coil Litig.*, 538 F. Supp. 45, 47 (D.C. Minn. 1982); *In re "Agent Orange" Prod. Liability Litig.*, 597 F. Supp. 740, 752 (E.D.N.Y. 1984), *affirmed*, 818 F.2d 145 (2d Cir. 1987), *cert. denied*, 484 U.S. 1004 (1988), *on remand*, 689 F.Supp. 1250 (E.D.N.Y. 1988).

As noted above, such transfer and coordination is particularly appropriate at this time because formal discovery is in its infancy in each of the actions. Thus, coordination and transfer will effectuate an obvious savings of time and resources. The litmus test of transferability and coordination under § 1407 is the presence of common questions of fact. *In re Fed. Election Campaign Act Litig.*, 511 F. Supp. 821, 823 (J.P.M.L. 1979). Each of the pending actions is a class action arising directly and explicitly from Menu Food's sale of contaminated pet food to the general public. Proof in the pending actions will plainly involve identical factual issues.

Furthermore, since each of the pending cases is brought as a class action, consistent and efficient rulings on class certification issues are critical. *See, e.g., In Re: Piper Aircraft Distribution Sys. Antitrust Litig.*, 405 F.Supp. 1402, 1403-04 (J.P.M.L. 1970); *In Re: Baldwin-United Corporation Litig.*, 581 F.Supp. 739 (J.P.M.L. 1984); *In Corporation Litig.*, 581 F.Supp. 739 (J.P.M.L. 1984).

**B.      The Convenience of the Parties Will Be Served By Transfer to the Central District of California.**

Transfer will serve the convenience of the parties by drawing the lawsuits to one central location.  Lawsuits have now been filed in New Jersey, Washington, Tennessee, Arkansas, Illinois and the Central District of California.  Movant respectfully submits that the Central District of California, would be a particularly suitable forum for the just and prompt handling of pretrial proceedings as it offers a convenient location, a skilled and experienced trial judge, an efficiently managed and speedy docket, and a strong interest in the resolution of these claims.

Further, as the situs of one of the nation's busiest airports, the Central District of California, located in downtown Los Angeles, would be easily accessible to all parties, counsel and other participants in the pretrial process.  More importantly, however, California as the most populous state in the country, is clearly home to the largest number of Class Members.

Finally, the Honorable George H. King to whom Movant's case is assigned, has substantial experience with class actions and complex commercial litigation developed during 12 years in the federal judiciary.  Judge King's depth of experience and reputation for efficiently handling complex cases makes him an exceptional candidate to manage these complex cases.

Additionally, Judge King is currently handling no other MDL matters and his courthouse is home to only 9 MLD's overall.  As such, his court will likely be able to dedicate the time and resources to effectively manage these cases.

4

**C.    The Need For Transfer and Coordination in the Class Action Context.**

Of central concern to Plaintiff is the potential for disruption, confusion and prejudice created by the pendency of at least five actions seeking class-wide relief in five different districts.  The Panel has consistently held that when the risk of overlapping or inconsistent class determinations exists, transfer of actions to a single district for coordinated or consolidated pretrial proceedings is necessary in order to eliminate the possibility of inconsistent pretrial rulings, especially concerning class issues. *In re Bristol Bay, Salmon Fishery Antitrust Litig.*, 424 F.Supp. 504, 506 (J.P.M.L. 1976); *In re Litig. Arising from Termination of Retirement Plan for Employees of Fireman's Fund Ins. Co.*, 422 F. Supp. at 290 (J.P.M.L. 1976); *In re Nat'l Airlines, Inc., etc.*, 399 F.Supp. 1405, 1407 (J.P.M.L. 1975); *In re Roadway Express, Inc. Employment Practices Litig.*, 384 F.Supp. 612, 613 (J.P.M.L. 1974).  This is true even when only two actions are involved. *In re First Nat'l Bank, etc.*, 451 F.Supp. 995, 997 (J.P.M.L. 1978).

**III.    CONCLUSION**

For the foregoing reasons, and for those stated in the accompanying Motion, Plaintiff respectfully requests that the three pending "PET FOOD PRODUCT LIABILITY LITIGATION" actions be transferred and coordinated and/or consolidated in the District of Massachusetts under 28 U.S.C. § 1407, and that all related individual or class actions be transferred thereto as "tag along actions."

Dated:  __3 - 26 - 07__          **KERSHAW, CUTTER & RATINOFF, LLP**

By: _____
STUART C. TALLEY
980 9th Street, 19th Floor
Sacramento, California 95814
Telephone: (916) 448-9800
Facsimile: (916) 669-4499

Mark J. Tamblyn
**WEXLER TORISEVA WALLACE LLP**
1610 Arden Way, Suite 290
Sacramento, CA  95815
Telephone:  (916) 568-1100
Facsimile:  (916) 568-7890

5

Kenneth A. Wexler
**WEXLER TORISEVA WALLACE LLP**
One North LaSalle St., Suite 2000
Chicago, Illinois  60602
Telephone:  (312) 346-2222
Facsimile:  (312) 346-0022

Attorneys for *Plaintiff/Petitioner, Shirley Sexton*

MEMO OF LAW IN SUPPORT OF MOTION FOR TRANSFER AND
COORDINATION OR CONSOLIDATION

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

MAR 30 2007

FILED
CLERK'S OFFICE

## BEFORE THE JUDICIAL PANEL ON

## MULTIDISTRICT LITIGATION

| | |
|---|---|
| In re:<br><br>PET FOOD PRODUCT LIABILITY<br>LITIGATION | MDL No. _____ |

## <u>REVISED RULE 7.2(a)(ii) SCHEDULE OF ACTIONS</u>

Mark J. Tamblyn
**WEXLER TORISEVA WALLACE LLP**
1610 Arden Way, Suite 290
Sacramento, CA 95815
Telephone: (916) 568-1100
Facsimile: (916) 568-7890

Stuart C. Talley
**KERSHAW, CUTTER & RATINOFF, LLP**
980 9th Street, 19th Floor
Sacramento, California 95814
Telephone: (916) 448-9800
Facsimile: (916) 669-4499

Attorneys for Individual and Representative
Plaintiff, *Shirley Sexton*

RECEIVED
CLERK'S OFFICE
2007 MAR 29 A 10: 45
JUDICIAL PANEL ON
MULTIDISTRICT

## UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

*Shirley Sexton v. Menu Foods Income Fund, Menu Foods, Inc., a New Jersey Corporation, and Menu Foods Midwest Corporation, a Delaware corporation*
Case No. 07-cv-01958-GHK (AJWx); The Honorable George H. King

## UNITED STATES DISTRICT COURT EASTERN DISTRICT OF TENNESSEE

*LizaJean Holt v. Menu Foods, Inc.*
Case No. 07-CV-00094-TWP; The Honorable Thomas W. Phillips

## UNITED STATES DISTRICT COURT WESTERN DISTRICT OF ARKANSAS

*Charles Ray Sims and Pamela Sims v. Menu Foods Income Fund, Menu Foods Midwest Corporation, Menu Foods South Dakota Inc., Menu Foods, Inc., Menu Foods Holdings, Inc.*
Case No. 07-CV-05053-JLH; The Honorable Jim Larry Hendren

## UNITED STATES DISTRICT COURT NORTHERN DISTRICT OF ILLINOIS

*Dawn Majerczyk v. Menu Foods, Inc., a New Jersey Corporation*
Case No. 07-CV-01543; The Honorable Wayne R. Anderson

## UNITED STATES DISTRICT COURT WESTERN DISTRICT OF WASHINGTON

*Tom Whaley v. Menu Foods, Inc., a foreign corporation, The Iams Company, a foreign corporation, Dog Food Producers Numbers 1-50 and Cat Food Producers 1-40*
Case No. 07-CV-00411-RSM; The Honorable Richardo S. Martinez

## UNITED STATES DISTRICT COURT DISTRICT OF NEW JERSEY

*Jared Workman, and Mark and Mona Cohen v. Menu Foods Limited, Menu Foods, Inc., and Menu Foods Midwest Corporation*
Case No. 07-CV-01338-NLH; The Honorable Noel L. Hillman

Dated: 3-27-07

**KERSHAW, CUTTER & RATINOFF, LLP**

By: _____
STUART C. TALLEY
980 9th Street, 19th Floor
Sacramento, California 95814
Telephone: (916) 448-9800
Facsimile: (916) 669-4499

Mark J. Tamblyn
**WEXLER TORISEVA WALLACE LLP**
1610 Arden Way, Suite 290
Sacramento, CA 95815
Telephone: (916) 568-1100
Facsimile: (916) 568-7890

Kenneth A. Wexler
**WEXLER TORISEVA WALLACE LLP**
One North LaSalle St., Suite 2000
Chicago, Illinois 60602
Telephone: (312) 346-2222
Facsimile: (312) 346-0022

Attorneys for *Plaintiff/Petitioner, Shirley Sexton*

REVISED RULE 7.2(A)(II) SCHEDULE OF ACTIONS

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

MAR 30 2007

FILED
CLERK'S OFFICE

# BEFORE THE JUDICIAL PANEL ON

## MULTIDISTRICT LITIGATION

| | |
|---|---|
| In re: | MDL Docket No. |
| PET FOOD PRODUCT LIABILITY LITIGATION | |

## REVISED CERTIFICATE OF SERVICE

Mark J. Tamblyn
**WEXLER TORISEVA WALLACE LLP**
1610 Arden Way, Suite 290
Sacramento, CA 95815
Telephone: (916) 568-1100
Facsimile: (916) 568-7890

Stuart C. Talley
**KERSHAW, CUTTER & RATINOFF, LLP**
980 9th Street, 19th Floor
Sacramento, California 95814
Telephone: (916) 448-9800
Facsimile: (916) 669-4499

Attorneys for Individual and Representative
Plaintiff, *Shirley Sexton*

RECEIVED
CLERK'S OFFICE
2007 MAR 29 A 10: 45
JUDICIAL PANEL ON

-1-

I, Lisa C. Anderson, employed by Kershaw, Cutter & Ratinoff, LLP, do hereby state under penalty of perjury that:

1.    On March 26, 2007, I caused to be served the following papers:

**PLAINTIFF SHIRLEY SEXTON'S MOTION FOR TRANSFER AND COORDINATION OR CONSOLIDATION UNDER 28 U.S.C. § 1407;**

**MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR TRANSFER AND COORDINATION OR CONSOLIDATION UNDER 28 U.S.C. § 1407;**

**RULE 7.2(a)(ii) SCHEDULE OF ACTIONS.**

2.    On March 26, 2007, I caused those papers to be served by Federal Express upon:

> Michael J. Beck
> Clerk of the Panel
> One Columbus Circle, NE
> Thurgood Marshall Federal
> Judicial Building
> Room G-255, North Lobby
> Washington, D.C.  20002-8004

3.    On March 26, 2007, I caused those papers to be served via First Class Mail upon:

**<u>SEE ATTACHED SERVICE LIST</u>**

Executed on March 26, 2007, at Sacramento, California.

Lisa C. Anderson

-2-

Certificate of Service

## SERVICE LIST

Shirley Sexton v. Menu Foods, Inc., et al.
United States District Court, Central District of California
Civil Action No. 07-cv-01958-GHK


Clerk of the Court
**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
312 N. Spring St., #G-8
Los Angeles, CA  90012-4793


Mark J. Tamblyn                        **Counsel for Plaintiff**
**WEXLER TORISEVA WALLACE LLP**   **Shirley Sexton**
1610 Arden Way, Suite 290
Sacramento, CA  95815
Telephone:  (916) 568-1100
Facsimile:  (916) 568-7890


Kenneth A. Wexler                      **Counsel for Plaintiff**
**WEXLER TORISEVA WALLACE LLP**   **Shirley Sexton**
One North LaSalle St., Suite 2000
Chicago, Illinois  60602
Telephone:  (312) 346-2222
Facsimile:  (312) 346-0022


**MENU FOODS INCOME FUND**        **Defendant**
8 Falconer Dr.
Streetsville, Ontario
Canada
L5N 1B1


**MENU FOODS, INC.**              **Defendant**
9130 Griffith Morgan Lane
Pennsauken, NJ  08110


**MENU MIDWEST CORPORATION**      **Defendant**
P.O. Box 1046
1400 East Logan Ave.
Emporia, KS  66801


-3-

Certificate of Service



## SERVICE LIST, Cont.

LizaJean Holt v. Menu Foods, Inc.:
United States District Court Eastern District of Tennessee (Knoxville Division)
Civil Action No. 07-cv-00094-TWP

Clerk of the Court
**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF TENNESSEE**
**(KNOXVILLE DIVISION)**
800 Market St., Suite 130
Knoxville, TN 37902

A. James Andrews                          **Counsel for Plaintiff**
905 Locust St.                            **LizaJean Holt**
Knoxville, TN 37902
Telephone: (865) 660-3993
Facsimile: (865) 523-4623

Perry A. Craft                            **Counsel for Plaintiff**
**CRAFT & SHEPPARD, PLC**                 **LizaJean Holt**
The Shiloh Building
214 Centerview Dr., Suite 223
Brentwood, TN 37027
Telephone: (615) 309-1707
Facsimile: (615) 309-1717

Nicole Bass                               **Counsel for Plaintiff**
905 Locust St.                            **LizaJean Holt**
Knoxville, TN 37902
Telephone: (865) 310-6804

**MENU FOODS, INC.**                      **Defendant**
9130 Griffith Morgan Lane
Pennsauken, NJ 08110

Certificate of Service



## SERVICE LIST, Cont.

Charles Ray Sims, et al. v. Menu Foods, Inc., et al.
United States District Court, Western District of Arkansas (Fayetteville Division)
Civil Action No. 07-cv-05053-JLH

Clerk of the Court
**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF ARKANSAS**
**(FAYETTEVILLE DIVISION)**
John Paul Hammerschmidt Federal Bldg., Rm. 559
35 East Mountain
Fayetteville, AR  72701-5354

Jason M. Hatfield                         **Counsel for Plaintiffs**
**LUNDY & DAVIS, LLP**                    **Charles Ray Sims and Pamela Sims**
300 N. College Ave., Suite 309
Fayetteville, AR  72701
Telephone: (479) 527-3921
Facsimile:  (479) 587-9196

**MENU FOODS INCOME FUND**               **Defendant**
8 Falconer Dr.
Streetsville, Ontario
Canada
L5N 1B1

**MENU FOODS MIDWEST**                   **Defendant**
**CORPORATION**
C/O The Corporation Trust Company
Corporation Trust Center
1209 Orange Street
Wilmington, DE  19801

**MENU FOODS SOUTH DAKOTA INC.**  **Defendant**
C/O The Corporation Trust Company
Corporation Trust Center
1209 Orange Street
Wilmington, DE  19801

**MENU FOODS, INC.**                     **Defendant**
C/O Corporation Trust Company
820 Bear Tavern Rd.
West Trenton, NJ  08628

**MENU FOODS HOLDINGS, INC.**            **Defendant**
C/O The Corporation Trust Company
Corporation Trust Center
1209 Orange Street
Wilmington, DE  19801

-5-

Certificate of Service



## SERVICE LIST, Cont.

Dawn Majerczyk v. Menu Foods, Inc.:
United States District Court, Northern District Of Illinois (Eastern Division)
Civil Action No. 07-cv-01543-WRA

Clerk of the Court
**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**(EASTERN DIVISION)**
Everett McKinley Dirksen Building, 20th Floor
219 South Dearborn St.
Chicago, IL  60604

John Blim                                    **Counsel for Plaintiff**
Jay Edelson                                  **Dawn Majerczyk**
Myles McGuire (Of Counsel)
**BLIM & EDELSON, LLC**
53 West Jackson Blvd., Suite 1642
Chicago, IL  60604
Telephone: (312) 913-9400
Facsimile: (312) 913-9401

**MENU FOODS, INC.**                         **Defendant**
9130 Griffith Morgan Lane
Pennsauken, NJ  08110

-6-

Certificate of Service

## SERVICE LIST, Cont.

<u>Tom Whaley v. Menu Foods, et al.</u>;
United States District Court, Western District of Washington (Seattle)
Civil Action No. 07-cv-00411-RSM

Clerk of the Court
**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WASHINGTON**
700 Stewart St.
Seattle, WA 98101

Michael David Myers                    **Counsel for Plaintiff**
**MYERS & COMPANY, PLLC**               **Tom Whaley**
1809 Seventh Ave., Suite 700
Seattle, WA 98101
Telephone: (206) 398-1188
Facsimile: (206) 400-1112

**MENU FOODS**                          **Defendant**
9130 Griffith Morgan Lane
Pennsauken, NJ 08110

**THE IAMS COMPANY**                    **Defendant**
C/O CT Corporation System
818 West Seventh St
Los Angeles, CA 90017

Certificate of Service

## SERVICE LIST, Cont.

Workman, et al. v. Menu Foods, Inc., et al.;
United States District Court, District of New Jersey
Civil Action No. 07-cv-01338-NLH

Clerk of the Court
**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**
4th & Cooper Streets, Room 1050
Camden, NJ 08101

Donna Siegel Moffa                              **Counsel for Plaintiff**
Lisa J. Rodriguez                               **Jared Workman, Mark and Mona**
**TRUJILLO, RODRIGUEZ &**                       **Cohen**
**RICHARDS, LLC**
8 Kings Highway West
Haddonfield, NJ 08033
Telephone: (856) 795-9002
Facsimile: (856) 795-9887

Sherrie R. Savett                               **Counsel for Plaintiff**
Michael T. Fantini                              **Jared Workman, Mark and Mona**
Russell D. Paul                                 **Cohen**
**BERGER & MONTEGUE, PC**
1622 Locust St.
Philadelphia, PA 19103
Telephone: (215) 875-3000

Robert A. Rovner                                **Counsel for Plaintiff**
Jeffrey I. Zimmerman                            **Jared Workman, Mark and Mona**
**ROVNER, ALLEN, ROVNER,**                      **Cohen**
**ZIMMERMAN & NASH**
175 Bustleton Pike
Feasterville, PA 19053-6456
Telephone: (215) 698-1800

**MENU FOODS LIMITED**                          **Defendant**
8 Falconer Dr.
Streetsville, Ontario
Canada
L5N 1B1

**MENU FOODS, INC.**                            **Defendant**
9130 Griffith Morgan Lane
Pennsauken, NJ 08110

**MENU FOODS MIDWEST**                          **Defendant**
**CORPORATION**
P.O. Box 1046
1400 East Logan Ave.
Emporia, KS 66801

-8-

Certificate of Service

# Exhibit A

1   **WEXLER TORISEVA WALLACE LLP**
    MARK J. TAMBLYN (State Bar No. 179272)
2   Email: mjt@wtwlaw.us
    1610 Arden Way, Suite 290
3   Sacramento, California  95815
    Telephone: (916) 568-1100
4   Facsimile: (916) 568-7890

5   **KERSHAW, CUTTER, & RATINOFF, LLP**
    STUART C. TALLEY (State Bar No. 180374)
6   E-mail: stalley@kcrlegal.com
    980 9ᵗʰ Street, 19ᵗʰ Floor
7   Sacramento, California  95814
    Telephone: (916) 448-9800
8   Facsimile: (916) 669-4499

9   [Additional Counsel Listed on Signature Page]

10  Attorneys for *Plaintiff*

11

12              IN THE UNITED STATES DISTRICT COURT

13              CENTRAL DISTRICT OF CALIFORNIA

14                                          CV07 - 01 95 8G-HK (ANLx)

15  SHIRLEY SEXTON, on behalf of        Case No.
    herself and all others similarly
16  situated,

                                        **CLASS ACTION COMPLAINT**
17              Plaintiff,

18        v.

19  MENU FOODS INCOME FUND,
    MENU FOODS, INC., a New
20  Jersey corporation, and MENU
    FOODS MIDWEST
21  CORPORATION, a Delaware             **JURY TRIAL DEMANDED**
    corporation,
22
                Defendants.
23

24  - - - - - - - - - - - - - - - - - -

25

26

27

28

                        -1-

1       Plaintiff Shirley Sexton ("Plaintiff"), individually and on behalf of all others

2   similarly situated, alleges by and through her attorneys, upon information and

3   belief, as follows:

4                          **NATURE OF THE ACTION**

5       1.    Plaintiff brings this class action on behalf of herself and a class of

6   consumers and entities who purchased brands of pet food manufactured by

7   Defendants that caused pets to suffer severe illness or death.  Pet owners, believing

8   Defendants' products to be safe for pet consumption, incurred substantial expenses

9   relating to the purchase of the pet food and to the veterinary monitoring and

10  treatment that became necessary after their pets consumed Defendants' pet food.

11  Such expenses were even more extreme for those pet owners whose pets became

12  terminally ill after consuming Defendants' pet food products.  Such costs arose and

13  were exacerbated by the undue amount of time taken by Defendants to announce

14  the dangers associated with its dog and cat foods.  Although Defendants knew that

15  pet illnesses and deaths could be related to their pet foods, Defendants waited for

16  nearly a month before telling the public and the Food and Drug Administration

17  (FDA) that it was recalling its products.  Defendants' lethal products, and the

18  companies' excessive delay in warning consumers and regulatory agencies as to its

19  dangers, resulted in significant financial loss to thousands of pet owners.

20                          **JURISDICTION AND VENUE**

21      2. The Court has original jurisdiction over this class action pursuant to 28

22  U.S.C. § 1332(d)(2).

23      3. Venue in this judicial district is proper pursuant to 28 U.S.C. § 1391(a)(1)

24  because Plaintiff resides in this judicial district.  Venue is also proper pursuant to

25  28 U.S.C. § 1391(a)(2) because a substantial part of the events or omissions giving

26  rise to the claim occurred in this judicial district.

27      4. The members of the putative Class have suffered aggregate damages

28  exceeding $5,000,000, exclusive of interest and costs.

**PARTIES**

5. Plaintiff Shirley Sexton is a resident of Los Angeles County, California.

6. Defendant Menu Foods Income Fund is a Canadian company with its principal executive offices located at 8 Falconer Drive, Streetsville, Ontario, Canada L5N 1B1.

7. Defendant Menu Foods, Inc. is a New Jersey corporation with its principal executive offices located at 9130 Griffith Morgan Lane, Pennsauken, New Jersey 08110.

8. Defendant Menu Foods Midwest Corporation is a Delaware corporation with its principal executive offices located at P.O. Box 1046, 1400 East Logan Avenue, Emporia, Kansas 66801. Menu Foods Midwest Corporation is a wholly-owned subsidiary of Menu Foods, Inc.

9. Unless otherwise stated, Defendants Menu Foods Income Fund, Menu Foods, Inc., and Menu Foods Midwest Corporation are collectively referenced as "Defendants."

10. At all times herein mentioned, Defendants were the agents, principals, employees, servants, partners, joint venturers, and representatives of each other. In doing the acts hereinafter alleged, they each were acting within the scope and course of their authority as such agents, principals, employees, servants, partners, joint venturers, and representatives, and were acting with the permission and consent of the other Defendant.

**FACTUAL ALLEGATIONS**

11. Defendants manufacture and sell pet food internationally and are the biggest supplier of pet food in North America.

12. Defendants sell pet food under nearly 100 different brand names, some of which are the most popular brands of dog and cat food in the industry – e.g., Iams, Eukanuba, Science Diet, among others.

13. Defendants sell their brands internationally and in some of the largest

-3-
CLASS ACTION COMPLAINT

03/26/2007   13:43   916     7890
03/26/2007 13:43 FAX  916 568 890        WEXLER TORISEVA WALLA        ☒005/017

1   major retail chains in the United States, such as Wal-Mart, Safeway, Kroger,

2   PetSmart and Meijer.

3        14.   On March 16, 2007, Defendants, in conjunction with the Food and Drug

4   Administration (FDA), announced a massive immediate recall of approximately 60

5   million containers of "cuts and gravy" pet food (pet food consisting of pieces of

6   meat in gravy) throughout the United States based on widespread reports of pet

7   illness and death, mostly related to kidney failure.  The recall covers all "cuts and

8   gravy" we pet food produced and distributed by Defendants, including over ninety

9   different brands of dog and cat food.  Some of the brands recalled include, Iams,

10  Eukanuba, Best Choice, Paws, and Nutro Max.  Defendants' recall is the largest pet

11  food recall in United States history.

12       15.   However, Defendants waited an excessive period of time before deciding

13  to recall its harmful and lethal products.  Defendants first started receiving

14  complaints of pet illnesses and deaths as early as late-February, almost a full month

15  before deciding to recall its products.  *See, e.g.*, CBSNews.com, *Pet Food Co.*

16  *Knew of Problem Last Month*, March 20, 2007, *at*

17  http://www.cbsnews.com/stories/2007/03/20/national/main2587087.shtml (last

18  viewed March 22, 2007).  Rather than announcing its products could be harmful to

19  pets as soon as it learned of pet illnesses and deaths, Defendants decided to conduct

20  its own testing.  Defendants conducted tests involving over 50 animals to observe

21  reactions to its pet foods.  Approximately one in six of the animals tested died.  Yet,

22  Defendants again waited until as many as seven test subjects died after eating its pet

23  food before finally submitting its findings to the FDA and deciding that a recall and

24  announcement to the public would be necessary.

25       16.   Due in no small part to this unnecessary and protracted delay, as of

26  March 21, 2007 there have been at least seventy-two reported pet deaths from

27  kidney failure nationwide and additional deaths continue to be reported by the hour.

28  One source indicated that 1,715 dogs and cats were either sick or dead as a result of

-4-

1 the recalled food products. *See* http://www.petconnection.com/blog/ (last viewed
2 March 22, 2007).

3    17. Pet owners purchased Defendants' products believing them to be safe for
4 pet consumption and beneficial to their pets. However, the "cuts and gravy" style
5 pet food that pet owners across the nation have fed their pets has proved to be toxic,
6 causing renal failure in cats and dogs as well as physical disorders such as
7 dehydration, diarrhea, loss of appetite, increased thirst, lethargy, and vomiting.

8    18. Pet owners have incurred substantial expenses relating both to the
9 purchase of Defendants' pet food and from the medical costs associated with
10 monitoring and treating pets who have consumed, or were thought to have
11 consumed, Defendants' contaminated food products. Indeed, several pet owners
12 have accrued veterinary bills that have climbed into the several thousands of
13 dollars. Furthermore, for those pet owners whose pets became terminally ill, they
14 were forced to incur additional costs relating to their pets death, such as euthanizing
15 and, for some, burying or cremating their pet.

16    19. Currently, Defendants still have not identified the cause of the food
17 toxicity. However, aminopterin, a substance found in rat poisons, was recently
18 discovered in the recalled foods.

19    20. In addition, pet owners who have become increasingly concerned about
20 their pet's health after learning of the recall have received little to no relief from
21 Defendants. Defendants have failed to manage the high volume of incoming
22 complaints. Since instituting the recall, pet owners have been largely unable to
23 reach Defendants' customer service representatives, often encountering busy
24 signals or voicemail messages. *See, e.g.*, Thejournalnews.com, *Pet Owners
25 Growling over Food Recall*, March 20, 2007, *at*
26 http://www.thejournalnews.com/apps/pbcs.dll/article?AID=/20070320/BUSINESS
27 01/703200345/1066 (last viewed March 22, 2007). To be sure, Defendants have
28 been criticized for not being cooperative with customers, for not getting helpful

03/26/2007  13:43      916      7890
03/26/2007 13:43 FAX  916 568  890      WEXLER TORISEVA WALLACE      Ø007/017

1   information out to the public sooner and for failing to "get control of the crisis . . .

2   employ[ing] a bunker mentality in times of trouble." Joseph R. Perone, *The Star-*

3   *Ledger*, *Menu Foods Fails Test in Crisis Management*, March 21, 2007, *available*

4   *at* http://www.nj.com/starledger/stories/index.ssf?/base/business-

5   6/117445554784980.xml&coll=1 (last viewed March 23, 2007).

6        21.  Since the recall, Defendants have received scores of complaints and

7   questions from consumers who have purchased its contaminated pet food products

8   and from those whose pets have become ill or died after consuming those products.

9        22.  The complaints found throughout the Internet and in many of the news

10  stories mentioned above each contain the same common theme of consumers who

11  unwittingly purchased Defendants' food products and who were forced to take their

12  pets to veterinarians for medical treatment after their pets became extremely, and

13  sometimes terminally ill.

14       23.  Plaintiff Shirley Sexton regularly purchased *Special Kitty* brand wet pet

15  food from Wal-Mart Stores, Inc. before the recall was announced.

16       24.  Four cats lived in Ms. Sexton's household.  Two of Ms. Sexton's three

17  cats, Red and Kelso, ate the *Special Kitty* pet food every day.  Spike, a cat

18  belonging to Ms. Sexton's daughter, also ate *Special Kitty* pet food on a daily basis.

19       25.  On or March 16 and March 17, 2007, Shirley noticed that both Red and

20  Kelso were ill.  She took Red and her two other cats in to the veterinarian.  Two of

21  the three cats, including Kelso, were initially found to be healthy.  However, the

22  veterinarian discovered Red had kidney failure and decided to keep Red overnight.

23  On March 20, 2007, the veterinarian determined that Red's condition had

24  significantly worsened and Ms. Sexton, in order to spare her pet from suffering any

25  further, made the decision to have Red euthanized that same day.

26       26.  After her experience with Red, Ms. Sexton also brought her daughter's

27  cat, Spike, to the veterinarian for testing.  The veterinarian determined that Spike –

28  who also ate Wal-Mart's *Special Kitty* brand food – was suffering from kidney

1    failure.  As of the date of this complaint, Spike remains in the veterinary hospital.

2        27.  To date, Ms. Sexton has incurred at least $1,100 in veterinary bills.

3                        **CLASS ACTION ALLEGATIONS**

4        28.  Plaintiff brings this action as a class action pursuant to Federal Rule of

5    Civil Procedure 23(a) and 23(b) on behalf of herself and all others similarly situated

6    as members of the following class (the "Class"): All persons and entities that

7    purchased "cuts and gravy" style dog or cat food manufactured, distributed,

8    marketed and/or sold by Defendants.

9        29.  Subject to additional information obtained through further investigation

10   and discovery, the Class definition may be expanded or narrowed by amendment or

11   amended complaint.  Specifically excluded from the proposed Class are business

12   entities for purposes of Plaintiff's claim for relief under the California Consumers

13   Legal Remedies Act, Civil Code § 1750, *et seq*.  Also specifically excluded are

14   Defendants, their officers, directors, agents, trustees, parents, children,

15   corporations, trusts, representatives, employees, principals, servants, partners, joint

16   venturers, or entities controlled by Defendants, and their heirs, successors, assigns,

17   or other persons or entities related to or affiliated with Defendants and/or their

18   officers and/or directors, or any of them; the Judge assigned to this action, and any

19   member of the Judge's immediate family.

20       30.  **Numerosity**.  The members of the Class are so numerous that their

21   individual joinder is impracticable.  Plaintiff is informed and believes, and on that

22   basis alleges, that the proposed class contains tens of thousands of members.  The

23   precise number of Class members is unknown to Plaintiff.  The true number of

24   Class members are known by Defendants, however, and thus, may be notified of

25   the pendency of this action by first class mail, electronic mail, and by published

26   notice.

27       31.  **Existence and Predominance of Common Questions of Law and**

28   **Fact**.  Common questions of law and fact exist as to all members of the Class and

1    predominate over any questions affecting only individual Class members.  These

2    common legal and factual questions include, but are not limited to, the following:

3          a.    Whether Defendants intentionally, recklessly or negligently authorized

4              injurious pet food to enter the market;

5          b.    Whether Defendants failed to properly test their "cuts and gravy" style

6              dog and cat food before market entry of such food;

7          c.    Whether Defendants intentionally, recklessly or negligently delayed in

8              instituting a recall of its "cuts and gravy" style dog and cat food;

9          d.    Whether Defendants' recall is adequate and properly notifies

10              potentially affected consumers;

11          e.    Whether Defendants' conduct constituted unlawful, unfair, or

12              fraudulent business practices in violation of Cal. Bus. & Prof. Code

13              §§ 17200, et seq., as alleged herein;

14          f.    Whether Defendants have been unjustly enriched as a result of their

15              conduct, as alleged herein;

16          g.    Whether Plaintiff and members of the Class have sustained damages as

17              a result of Defendants' conduct, and, if so, what is the appropriate

18              measure of damages; and

19          h.    Whether Plaintiff and members of the Class are entitled to punitive

20              damages, and, if so, in what amount.

21        32.  **Typicality**.  Plaintiff's claims are typical of the claims of the members

22    of the Class in that Plaintiff and each member of the Class purchased "cuts and

23    gravy" style dog or cat food manufactured, distributed, marketed and/or sold by

24    Defendants.

25        33.  **Adequacy of Representation**.  Plaintiff will fairly and adequately

26    protect the interests of the members of the Class.  Plaintiff has retained counsel

27    experienced in complex consumer class action litigation, and Plaintiff intends to

28    prosecute this action vigorously.  Plaintiff has no adverse or antagonistic interests

1    to those of the Class.

2        34. **Superiority**. A class action is superior to all other available means for

3    the fair and efficient adjudication of this controversy. The damages or other

4    financial detriment suffered by individual Class members is relatively small

5    compared to the burden and expense that would be entailed by individual litigation

6    of their claims against the Defendants. It would thus be virtually impossible for

7    Class, on an individual basis, to obtain effective redress for the wrongs done to

8    them. Furthermore, even if Class members could afford such individualized

9    litigation, the court system could not. Individualized litigation would create the

10   danger of inconsistent or contradictory judgments arising from the same set of facts.

11   Individualized litigation would also increase the delay and expense to all parties

12   and the court system from the issues raised by this action. By contrast, the class

13   action device provides the benefits of adjudication of these issues in a single

14   proceeding, economies of scale, and comprehensive supervision by a single court,

15   and presents no unusual management difficulties under the circumstances here.

16       35. In the alternative, the Class may be certified because:

17       a.   the prosecution of separate actions by individual Class members

18            would create a risk of inconsistent or varying adjudication with respect

19            to individual Class members that would establish incompatible

20            standards of conduct for the Defendants;

21       b.  the prosecution of separate actions by individual Class members would

22            create a risk of adjudications with respect to them that would, as a

23            practical matter, be dispositive of the interests of other Class members

24            not parties to the adjudications, or substantially impair or impede their

25            ability to protect their interests; and/or

26       c.  Defendants have acted or refused to act on grounds generally

27            applicable to the Class thereby making appropriate final and injunctive

28            relief with respect to the members of the Class as a whole.

CLASS ACTION COMPLAINT

1    36.  Adequate notice can be given to Class members directly using

2    information maintained in Defendants' records, or through publication notice.

3    37.  Defendants benefited from the sale of its "cuts and gravy" style dog and

4    cat food to Plaintiff and the Class.  The benefit to Defendants can be identified from

5    the sale of such pet food to Plaintiff and the Class and that such monies can be

6    restored to Plaintiff and the Class.  Such monies are the property of the Plaintiff and

7    the Class.  All or a portion of this benefit retained by Defendants is money in which

8    Plaintiff and the Class have an ownership interest.  Plaintiff and the Class were

9    injured and lost money as a result of Defendants' unfair, unlawful and fraudulent

10   business practices described herein.

11

12

### FIRST CLAIM FOR RELIEF
**[Violation of Consumers Legal Remedies Act, Cal. Civ. Code § 1750, *et seq.*]**

13   38.  Plaintiff hereby incorporates by reference each of the preceding

14   allegations as though fully set forth herein.  Plaintiff asserts this claim against each

15   and every Defendant on behalf of herself and the Class.

16   39.  Defendants are each a "person" as defined by Cal. Civ. Code § 1761(c).

17   40.  Plaintiff and the proposed Class members are "consumers" within the

18   meaning of Cal. Civ. Code § 1761(d).

19   41.  Plaintiff's purchase of dog and cat food manufactured, distributed,

20   marketed and sold by Defendants constitute "transactions" within the meaning of

21   Civil Code section 1761(e) and 1770.

22   42.  Defendants' conduct violated and continues to violate the CLRA in at

23   least the following respects:

24   a.    In violation of Section 1770(a)(1) of the CLRA, Defendants

25         misrepresented the source, sponsorship, approval or certification of

26         goods or services; and

27

28

-10-

03/26/2007   13:44      916      7890
03/26/2007 13:45 FAX  916 568  890       WEXLER TORISEVA WALLACE          ☒012/017

b.    In violation of Section 1770(a)(5) of the CLRA, Defendants
represented that its goods or services sponsorship, approval,
characteristics, uses or benefits which they do not have.

43.  Defendants engaged in these unfair or deceptive acts and practices with the intent that they result, and which did result, in the sale of dog and cat food to Plaintiff and the Class.

44.  In engaging in unfair or deceptive conduct in violation of the CLRA, Defendants actively concealed and intentionally failed to disclose material facts about the characteristics of their dog and cat food, and further represented that such food was suitable for pet consumption.

45.  As a result of Defendants' acts and practices as alleged in this Complaint, Plaintiff seeks an Order enjoining Defendants from continuing to engage in unlawful, unfair or fraudulent business practices, and any other act prohibited by law.  Plaintiff has contemporaneous with this filing provided notice to Defendants, and will amend to add claims for damages under the CLRA if Defendants do not take appropriate corrective action.

### SECOND CLAIM FOR RELIEF
#### [Negligence]

46.  Plaintiff hereby incorporates by reference each of the preceding allegations as though fully set forth herein.  Plaintiff asserts this claim against each and every Defendant on behalf of herself and the Class.

47.  Defendants owed a duty to Plaintiff and the Class to provide pet food safe and suitable for pet consumption.

48.  Through their failure to exercise due care, Defendants were negligent in manufacturing, distributing, marketing and selling pet food to Plaintiff and the Class.

49.  Defendants failed to implement adequate quality control and adequate testing of its pet food that they introduced into the stream of commerce for sale to Plaintiff and the Class and for consumption by their pets.

-11-
CLASS ACTION COMPLAINT

50.  Defendants knew, or should have known, that their pet food, as described above, presents an unreasonable and unacceptable risk of injury or death to pets, and would result in foreseeable and avoidable damage.

51.  The losses and damages described herein were foreseeable and avoidable.

52.  Defendants' negligence proximately caused the losses and damages to Plaintiff and the Class.

### THIRD CLAIM FOR RELIEF
**[Violation of the California Unfair Competition Law, Business & Professions Code §§ 17200, *et seq.*]**

53.  Plaintiff hereby incorporates by reference each of the preceding allegations as though fully set forth herein.  Plaintiff asserts this claim against each and every Defendant on behalf of herself and the Class.

54.  Defendants' acts and practices, described herein, constitute unlawful, unfair or fraudulent business practices in violation of the Unfair Competition Law, Business & Professions Code sections 17200 et seq ("UCL").

55.  The utility of Defendants' manufacturing, distribution, marketing and/or sale of contaminated dog and cat food is significantly outweighed by the gravity of the harm they impose on Plaintiff and the Class.  Defendants' acts and practices are oppressive, unscrupulous or substantially injurious to consumers.

56.  The above-described unfair, unlawful and fraudulent business practices conducted by Defendants present a threat and likelihood of harm and deception to members of the Class in that Defendants have systematically perpetrated and continue to perpetrate the unfair, unlawful and fraudulent conduct upon members of the public by engaging in the conduct described herein.

57.  Plaintiff and the Class have suffered harm as a proximate result of the wrongful conduct of the Defendants alleged herein, and therefore bring this claim for relief for restitution and disgorgement.  Plaintiff is a person who has suffered

1   injury in fact and has lost money and property as a result of such unfair

2   competition.

3        58.  Pursuant to Business and Professions Code sections 17200 and 17203,

4   Plaintiff, on behalf of herself and the Class, seeks an order of this Court: enjoining

5   Defendants from continued manufacture, distribution, marketing and sale of "cuts

6   and gravy" style dog and cat food in an unfair, unlawful and fraudulent manner, and

7   an order enjoining Defendants from collecting money from the Class from the sale

8   of pet food.  Plaintiff further requests an order awarding Plaintiff and the Class

9   restitution and disgorgement of profits acquired by Defendants by means of such

10  unlawful acts and practices, so as to deter Defendants and to rectify Defendants'

11  unfair and unlawful practices and to restore any and all monies to Plaintiff and the

12  Class, which are still retained by Defendants, plus interest and attorneys' fees and

13  costs pursuant to, *inter alia*, Code of Civil Procedure section 1021.5.

### FOURTH CLAIM FOR RELIEF
#### [For Unjust Enrichment]

15       59.  Plaintiff hereby realleges and incorporates by reference all paragraphs

16  previously alleged herein.  Plaintiff asserts this claim against each and every

17  Defendant on behalf of herself and the Class.

18       60.  Defendants have received, and continue to receive, a benefit at the

19  expense of Plaintiff and members of the Class.  Defendants have knowledge of this

20  benefit.

22       61.  Defendants have charged and collected from consumers, including

23  Plaintiff and members of the Class, money for dog and cat food that endangers the

24  lives of their pets.  Defendants thus have received benefits that they have unjustly

25  retained at the expense of Plaintiff and members of the Class.

26       62.  As a direct and proximate result of Defendants' unlawful acts and

27  conduct, Plaintiff and members of the Class were deprived of the use of their

28  monies that was unlawfully charged and collected by Defendants, and are therefore

1  entitled to restoration of their monies.

2

3  ### FIFTH CLAIM FOR RELIEF
### [Breach Of Express Warranty]

4  63. Plaintiff hereby realleges and incorporates by reference all paragraphs

5  previously alleged herein. Plaintiff asserts this claim against each and every

6  Defendant on behalf of herself and the Class.

7  64. Defendants expressly warranted that their "cuts and gravy" style pet food

8  was suitable and safe for pet consumption.

9  65. Defendants also expressly warranted that "it manufacturer[s] the private-

10  label wet pet-food industry's most comprehensive product program with the highest

11  standards of quality."

12  66. Plaintiff and the Class were induced by Defendants' marketing,

13  advertising, promotion and labeling of the pet food as suitable "food" to rely upon

14  such express warranty, and, in fact, relied upon the untrue warranty in purchasing

15  the recalled pet food and feeding it to their pets.

16  67. Plaintiff and the Class were damaged as a proximate result of

17  Defendants' breach of their express warranty.

18  ### SIXTH CLAIM FOR RELIEF
### [Breach Of Implied Warranty]

19

20  68. Plaintiff hereby realleges and incorporates by reference all paragraphs

21  previously alleged herein. Plaintiff asserts this claim against each and every

22  Defendant on behalf of herself and the Class.

23  69. Defendants are merchants under section 2-104 and 2-314 of the Uniform

24  Commercial Code.

25  70. Through their marketing, advertising, promotion and labeling of their

26  "cuts and gravy" style pet food, Defendants impliedly warranted that such pet food

27  was fit for the ordinary purpose for which it was intended, including to safely

28  nourish pets with risk of illness or death, pursuant to section 2-314 of the Uniform

-14-
### CLASS ACTION COMPLAINT

1    Commercial Code.

2           71.  Through their marketing, advertising, promotion and labeling,

3    Defendants knew that Plaintiff and the Class would purchase their pet food for the

4    ordinary purpose of providing nourishment to their pets.

5           72.  Defendants manufactured, distributed, marketed, advertised, promoted

6    and sole their pet food for the ordinary purpose for which it was purchased by

7    Plaintiff and the Class.

8           73.  Plaintiff and the Class relied upon Defendants' representations and

9    warranties, and purchased and used Defendants' pet food for the ordinary purpose

10   for which it was sold.

11          74.  Defendants' pet food purchased by Plaintiff and the Class were unfit for

12   their ordinary purpose when sold.  Such food was sold while presenting a risk of

13   risk of illness or death to pets.  Defendants have accordingly breached the implied

14   warranty of merchantability by selling such unfit pet food.

15          75.  Plaintiff and the Class were damaged as a proximate result of

16   Defendants' breach of warranty.

17                          **PRAYER FOR RELIEF**

18          **WHEREFORE,** Plaintiff, on behalf of herself and all others similarly

19   situated, prays for judgment against Defendants as follows:

20          1.    For an order certifying the Class under Rule 23 of the Federal Rules of

21                Civil Procedure and appointing Plaintiff and her counsel of record to

22                represent the Class;

23          2.    For restitution, disgorgement and/or other equitable relief as the Court

24                deems proper;

25          3.    That pursuant to sections 17203 and 17204 of the Business and

26                Professions Code, Defendants be permanently enjoined from

27                performing or proposing to perform any of the aforementioned acts of

28                unfair, unlawful and fraudulent business practices;

-15-
CLASS ACTION COMPLAINT

03/26/2007  13:46    916    7890
03/26/2007 13:46 FAX  916 568  90       WEXLER TORISEVA WALLACE                    ☑017/017

4.    For compensatory damages sustained by Plaintiff and all others similarly situated as a result of Defendants' unlawful acts and conduct;

5.    For punitive damages pursuant to Civil Code § 1780(a)(4);

7.    For a permanent injunction prohibiting Defendants from engaging in the conduct and practices complained of herein;

8.    For pre-judgment and post-judgment interest;

9.    For reasonable attorneys' fees and costs of suit, including expert witness fees; and

10.   For such other and further relief as this Court may deem just and proper.

## JURY DEMAND

To the full extent available, Plaintiff demands a trial by jury.

Dated: March 26, 2007              **WEXLER TORISEVA WALLACE LLP**


By _____
     Mark J. Tamblyn

1610 Arden Way, Suite 290
Sacramento, California 95815
Telephone: (916) 568-1100
Facsimile: (916) 568-7890

Kenneth A. Wexler
**WEXLER TORISEVA WALLACE LLP**
One North LaSalle St., Suite 2000
Chicago, Illinois 60602
Telephone:  (312) 346-2222
Facsimile: (312) 346-0022

Stuart C. Talley
**KERSHAW, CUTTER, & RATINOFF, LLP**
980 9th Street, 19th Floor
Sacramento, California  95814
Telephone: (916) 448-9800
Facsimile: (916) 669-4499

*Attorneys for Plaintiff and the Class*

-16-
CLASS ACTION COMPLAINT

# Exhibit B

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
KNOXVILLE DIVISION**

| | |
|---|---|
| LIZAJEAN HOLT, )<br><br>Individually, and on behalf of similarly )<br>situated persons, )<br> )<br> **Plaintiff,** )<br> )<br>**v.** )<br> )<br>MENU FOODS, INC., )<br> )<br> **Defendant.** ) | No. _____<br><br>**Class action**<br><br>**JURY DEMAND**<br>**CLASS ACTION** |

**CLASS ACTION COMPLAINT**

**I. Class Action**

1. Plaintiff, individually and as representative of a Class of similarly situated persons more defined below, brings suit against the named Defendant for offering for sale and **selling** to Plaintiff and Class members pet food and food products – "cut and gravy" pet products – formally **recalled** on March 16, 2007. Defendant is a corporation doing business and operating in the United States. Defendant recalled cat and dog food products that are sold under numerous brands by several national chain stores in Tennessee and other States in the United States. The pet food products were produced by Defendant(s), a private label manufacturer, labeled by the Defendant, and then distributed and ultimately sold to Plaintiff, Class Members, and others. Defendant issued or caused to be issued a press release announcing the recall, and the United States Food and Drug Administration issued a press release the same day. These pet food products were intended to be placed in the stream of commerce and distributed and offered for sale

and sold to Plaintiff and purchasers in Tennessee and the United States and fed to their

pets, cats and dogs.

## II. Jurisdiction and Venue

2. This Court has jurisdiction over this action pursuant to 28 U.S.C. §1332 and

subsection (d), and the Class Action Fairness Act of 2005, Pub. L.109-2 (Feb. 18, 2005);

and over supplemental state law claims pursuant to 28 U.S.C. §1367.

3. Venue is proper in this Court and judicial district pursuant to 28 U.S.C. §1391

and/or Pub. L.109-2 because a part or substantial part of the events or omissions giving

rise to the claim occurred in this judicial district, or a substantial part of property that is

the subject of the action is situated in this judicial district.

4. In this judicial district, Plaintiff purchased the recalled pet food product made

by or for Defendant, and her pet ate or consumed it.   Thousands of other

consumers/customers – including Plaintiff and other Class Members – purchased the

recalled or contaminated products in this judicial district from retailers that Defendant, its

agents, affiliates, or others it or they controlled sold or made available to them.  In turn,

retailers or others sold these recalled products to the general public, including Plaintiff,

Class members and other purchasers. These products were purchased for consumption by

the pets of Plaintiff and the Class members.  Defendant made or caused these products to

be offered for sale and sold to the public, including Plaintiff.

5. Rule 23 of the Federal Rules of Civil Procedure applies to class actions as

well.

## III. Plaintiff

2

6. At all times material hereto, Plaintiff Lizajean Holt was and is a citizen of the State of Tennessee and the United States and resides in Knox County, Tennessee.

## IV. Plaintiff's Purchase(s)/Defendant's Recall

7. Plaintiff purchased recalled brands of Pet Pride and Iams pet food from a national chain grocery store, Kroger, operating in Knox County, Tennessee. Kroger, like other retailers, did not alter the product produced by the Defendant in any way prior to selling it to Tennessee consumers and other consumers throughout the United States.

8. Without knowing that Defendants would recall the product after it was offered for sale and sold to her, Plaintiff purchased and fed the product(s) to her cat, her pet. Her pet became lethargic and began drinking large amounts of water and Plaintiff discontinued feeding the Defendant's products to her cat prior to the recall notice. Plaintiff and thousands of other consumers will now face veterinary bills to have their pets evaluated for kidney damage.

9. Before her purchase, Defendant never warned Plaintiff that the pet food product that she purchased for feeding her pet may or would cause it have health problems or concerns or that she would have to take her pet to a veterinarian due to a health concern relating to or resulting from the tainted pet food.

10. On or on about March 16, 2007, Defendant issued a recall for certain pet food for cats and dogs that it manufactured in plants that it controlled, owned, operated, or managed in the United States.

11. Defendant's business consists substantially of providing private label pet foods at its plants or pet foods under other brands, not its own. In turn, Defendant's

3

products are sold under a variety of labels or brands listed on its website as of March 17, 2007 and set forth below.

12. The product that Plaintiff purchased at a Kroger in Knoxville was a product recalled by Defendant.

13. After Plaintiff purchased the pet food and fed it to her cat, she learned about the recall and the actual or potential problems and concerns from purchasing and feeding the product to her pet.

14. Plaintiff bought the product(s) for their intended purposes: to feed her pet.

15. Defendant placed these pet products in the stream of commerce in Tennessee and elsewhere expecting that consumers such as Plaintiffs, the Class members, and the general public would feed these products to their pets.

## V. Defendant, Its Business, and the Recall

16. At all times material hereto, Defendant Menu Foods, Inc. was and is a New Jersey corporation with its principal place of business in the State of New Jersey, specifically located at 9130 Griffith Morgan Lane, Pennsauken NJ 08110. Defendant is ultimately owned or controlled by Menu Foods Income Group, an Ontario based legal entity. Some of Defendant's high managerial or officers or agents with substantial authority are also high managerial officers or agents of Menu Foods Income Group. Defendant may be served through the Secretary of State for Tennessee or as provided by law.

17. Defendant Menu Foods, Inc. owns, controls, is related to or an affiliate of a firm with plants where the pet food is manufactured or processed that are located in the United States. These plants are located in Emporia, Kansas and, Pennsauken, New

4

Jersey, the place of manufacture where the pet products were recalled, and/or at other locations in the United States.

18. Defendant is the leading North American private label/contract manufacturer of wet pet food products sold by supermarket retailers, mass merchandisers, pet specialty retailers, and other wholesale and retail outlets, including Wal-Mart, Safeway, Kroger, PetSmart, Inc., Giant Food, and other large retail chains, and has provided pet food products to or for Proctor & Gamble, Inc. It produces hundreds of millions of containers of pet food annually.

19. Defendant has manufactured or produced pet food for private labels for about 17 of the 20 leading retailers in the United States.

20. Defendant's business includes manufacturing, producing, distributing, or selling cat food under various brands or labels, and/or for third party firms, including: America's Choice, Preferred Pets, Authority, Best Choice, Companion, Compliments, Demoulis Market Basket, Eukanuba, Fine Feline Cat, Food Lion, Food Town, Giant Companion, Hannaford, Hill Country Fare, Hy-Vee, Iams, Laura Lynn, Li'l Red, Loving Meals, Meijer's Main Choice, Nutriplan, Nutro Max Gourmet Classics, Nutro Natural Choice, Paws, Pet Pride, President's Choice, Priority, Sav-a-Lot, Schnucks, Science Diet Feline Savory Cuts Cans, Sophsitacat, Special Kitty US, Springfield Prize, Sprout, Total Pet, Wegmans, Western Family, White Rose, and Wynn Dixie.

21. Defendant's business includes manufacturing, producing, distributing, or selling dog food under various brands or labels, and/or for third party firms, including: America's Choice, Preferred Pets, Authority, Award, Best Choice, Big Bet, Big Red, Bloom, Bruiser, Cadillac, Companion, Demoulis Market Basket, Eukanuba, Food Lion,

Giant Companion, Great Choice, Hannaford, Hill Country Fare, Hy-vee, Iams, Laura Lynn, Li'l Red, Loving Meals, Meijer's Main Choice, Mixables, Nutriplan, Nutro Max, Nutro Ultra, Nutro, Ol'Roy US, Paws, Pet Essentials, Pet Pride – Good & Meaty, President's Choice, Price Chopper, Priority, Publix, Roche Brothers, Sav-a-Lot, Schnucks, Shep Dog, Sprout, Statler Bros, Total Pet, Western Family, White Rose, Wynn Dixie, and Your Pet.

22.  On Defendant's website as of March 17, 2007, it listed by brands, the size of the container or pouch, the dates of manufacture, and the products subject to recall. Thus, each container or pouch and size of each brand or label listed – subject to the recall above – was noted specifically on its web site.  Thus, a 3 ounce can or pouch of Pet Pride Pouch Mixed Grill 24 X 3 with sale by date of March 8, 2009, with a specified "UPC" number was one of about 150 separate Pet Pride labeled cat food that Defendant recalled. The other brands also generally listed numerous separate pouches or containers bearing the major private label or brand with a further sub-description similar to the manner described above, by brand or label.

23.  After reports or complaints from pet owners about symptoms – such as vomiting or lethargy – suggesting kidney failure in their dogs and cats and/or after reports of deaths of certain pets, from or through its Canadian office or affiliation, Defendant caused or issued a recall of certain specified pet products, reportedly totaling between 40 and 60 million cans.

24.  Defendant also advised a governmental agency of the United States about the recall and certain events leading to the recall, namely the Food and Drug Administration (FDA).

6

25. Defendant produces over 1,000,000,000 pouches or containers of pet food products each year, a substantial portion of which is sold or offered for sale in Tennessee or for Tennesseans who purchase the products for their pets. Many consumers who fear for the health of their pets will no longer have the product because it has been fed to the pets.

26. Defendant knows or should know that national, regional, and/or local distributors will distribute these finished pet food products that it manufactures or processes to retailers to offer them for sale in Tennessee to Tennesseans who purchase and buy them for their pets for consumption by their pets in the State of Tennessee and in this judicial district.

27. Defendant knows or understands that millions or tens of millions of cans or pouches of the pet food products that it manufactures or produces will be advertised, promoted, and sold in Tennessee and this judicial district, including a significant or substantial part of the recalled pet food.

28. Defendant knows or understands that the promotion and advertising of pet food produced at its plants in part targets consumers and customers in Knox County, in this judicial district, in the State of Tennessee, regionally, or nationally.

29. Defendant makes or produces the pet food products in its plants with a purpose or design that consumers and customers will purchase them, regardless of brand or label name, place of purchase, or place where pets actually consume them.

30. Defendant makes or produces for third parties well-known, lesser known, and/or premium or discount brands or labels of pet foods and knows that customers and consumers will ultimately purchase them to feed to their pets.

31.  Defendant desires that consumers and others who purchase or consider purchasing a pet food product made or produced in one of its plants, by whatever label or brand, believe that the pet food product is safe for their pets to eat.

32.  In the last few days, Defendant has recalled specified pet food products that consumers and customers purchased from a time beginning about December 3, 2006 and concluding about March 6, 2007.

33.  Class members and others have purchased the pet products that were recalled across the United States, in Tennessee, and in this judicial district.

34.  Class members and others who purchased or fed Defendant's products to their pets did so in this judicial district, in Tennessee, and in the United States.

35.  Some class members or others have already taken their pets to a veterinarian for treatment or diagnosis related to their pets eating the recalled pet food and more will do so as word of the recall spreads. For instance, the Knoxville NewsSentinel carried a prominent story about the recall and the potential dangers to the pets of East Tennessee citizens in its Sunday, March 18, 2007 edition.

36.  Class members have suffered and will suffer injuries, losses, or damage as a result of the recall and/or feeding their animals the food that was recalled.

37.  There have been other reported incidents of pet food being recalled as a result of possible or actual concerns or problems with the pet food and its or their effects on pets.  Defendant knew or should have known about the risks and possible injury.

**VI. Plaintiff, Class Members, and Others' Losses, Damages, and Injuries**

38.  As a result of their purchases of the pet food recalled or subject to recall, set forth above, Plaintiff, Class members, and others have suffered and will suffer a loss,

8

damage, injury, and sustained damages, including consequential and incidental damages, such as costs of purchasing the contaminated food product and replacing it with a safe food product, including sale tax or a similar tax, costs of making an additional trip to a retail store to purchase safe, non-contaminated pet food, the price of postage to secure a refund offered by Defendant, the cost of veterinarians, treatment, medicines and the trip(s) to make such visits for diagnosis and treatment, and otherwise.

## VII. Breach of Warranties & Remedies

39. Defendant breached express warranties to Plaintiff, the Class, and others, and violated the Uniform Commercial Code.

38. Defendant breached implied warranties to Plaintiff, the Class, and others, and violated the Uniform Commercial Code.

40. Defendant breached the implied warranty of fitness for a particular purpose by claiming certain of the pet food that it manufactured or produced and was recalled were fit and safe for consumption by pets and thereby violated the Uniform Commercial Code.

41. Defendant breached the implied warranty of merchantability. In fact, the pet food subject to recall and purchased or used by Plaintiff, the Class, and others was not merchantable. This breach violated the Uniform Commercial Code.

42. Plaintiffs are entitled to the remedies for breach authorized by the Uniform Commercial Code and other law.

## VIII. Negligence

43. Defendants owed Plaintiff and the Class a duty to only offer safe, non-contaminated products for consumption by pets and offered for sale and sold in the stream of commerce.

44. Though its failure to exercise due care Defendant owed Plaintiff, the class, and others, Defendant was negligent in producing, processing, manufacturing, and offering for sale the recalled pet food and pet food products it offered for sale and sold to Plaintiff, the class, and others.

45. Defendant failed to use sufficient quality control, to do adequate testing, to perform proper manufacturing, production, or processing, or failed to take sufficient measures to prevent the pet food products that were recalled from being offered for sale, sold, or fed to pets.

46. Defendant knew or should have known that the pet food that was recalled presented an unacceptable risk to the pets of the Plaintiff, the Class, and others and would result in damage that was foreseeable and reasonably avoidable.

47. The loss, damage, and injuries were foreseeable.

48. Defendant's negligence proximately caused the loss, damage, injury, and damages to Plaintiff, the Class, and others.

## IX. Statutory Unfair or Deceptive Trade Practices Act

49. Plaintiff, the Class, purchasers, others, and Defendant are each a "person" within the meaning of Tenn. Code Ann. §47-18-103.

50. Defendant's offer for sale or sale of their recalled pet food products is in or affects trade or commerce in Tennessee.

10

51. Defendant impliedly represented to the public, Plaintiff, the Class and others that its pet food products were safe for consumption by their pets and could be safely purchased.

52. In fact, Defendant recalled or caused to be recalled millions of containers or pouches of pet food because it risked the health and well-being of consumers, customers, Plaintiff, purchasers, the Class, and others.

53. Defendant violated Tenn. Code Ann. §47-18-104 (a) and sub-parts of (b) by placing these unsafe pet food products in the stream of commerce in Tennessee.

54. Each Plaintiff, Class member, and other person adversely affected in Tennessee has suffered an ascertainable loss of money or property due to a violation of the Consumer Protection Act.

55. Plaintiffs brings a claim for a violation of the Tennessee Consumer Protection Act under Tenn. Code Ann. §47-18-109, including the ascertainable loss of money or property by each such person.

## X. Rule 23

56. Plaintiffs ask this Court to certify the following Class:

All persons in the United States who purchased or fed his, her, or their cat(s) or dog(s) pet food produced or manufactured by Defendant that was or will be recalled by the Defendant, including that produced from December 3, 2006 up to and including March 6, 2007.

57. Plaintiff is a member of the Class, sues as a representative party on behalf of all, and avers that the class is so numerous that joinder of all members is impracticable.

58. There are questions of law or fact common to the Class. These common questions include but are not limited to the following:

a. Whether Defendant sold pet food products that were recalled or subject to a recall?

b. Whether Defendant advertised, represented, or held itself out as producing or manufacturing a pet food product that was safe for pets of the class members?

c. Whether Defendant expressly warranted these products?

d. Whether Defendant impliedly warranted these products for fitness for a particular purpose?

e. Whether Defendant impliedly warranted these products for merchantability?

f. Whether Defendant purported to disclaim any express warranty?

g. Whether Defendant purported to disclaim any implied warranty?

h. Whether any limitation on warranty fails to meet its essential purpose?

i. Whether Defendant intended that the pet food products be purchased by Plaintiff, Class members, or others?

j. Whether Defendant intended or foresaw that Plaintiff, class members, or others would feed their pet food products to their pets?

k. Whether Defendant recalled the pet food products?

l. Whether Defendant was negligent in manufacturing or processing the pet food products?

m Whether using the products as intended – to feed their pets – resulted in loss, injury, damage, or damages to the Class?

n. Whether Defendant's negligence proximately caused loss or injury to damages?

o. Whether Class members suffered direct losses or damages?

p. Whether Class members suffered indirect losses or damages?

12

q. Whether Defendants' acts or practices violated state Deceptive Trade Practices Acts?

59.  The claims or defenses of the representative parties are typical of the claims or defenses of the Class.

60.  The representative parties will fairly and adequately protect the interests of the Class.

61.  Prosecuting separate actions by individual members of the Class would create a risk of either –

a. Inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for defendants, the parties who oppose the class, or

b. Questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

c. Few, if any, Class members have an interest in individually controlling the prosecution of separate actions;

d. Plaintiff is unaware of any litigation concerning the controversy already commenced by members of the class;

e. It is desirable to concentrate the litigation of the claims in this forum;

f. No unusual difficulties are likely to be encountered in the management of a class action.