62. The undersigned Attorneys for Plaintiff and the Class request that the Court appoint them to serve as class counsel first on an interim basis and then on a permanent basis.

63. They will fairly and adequately represent the interests of the class, have identified or investigated the Class's potential claims, are experienced in handling class actions, other complex litigation, and consumer claims of the type asserted in the action, know the applicable law, will commit sufficient resources to represent the class, and are best able to represent the Class.

64. Plaintiff requests this Court to certify this Class in accordance with Rule 23 and the Class Action Fairness Act of 2005.

**XII. Jury Demand**

65. The Class demands a jury trial on all issues triable by a jury.

**XIII. Prayer for Relief**

Wherefore, premises considered, Plaintiff prays that the Court grant the following relief:

1. That process issue and Defendant be served. (Plaintiff's counsel will first provide Defendant's agent, Corporation Trust Company, 820 Bear Tavern Road, West Trenton, NJ 08628 with a Notice of Lawsuit by mail pursuant to the Federal Rules)

2. That as soon as practical, the Court certify a Class, defined herein, or modified as appropriate under the facts and law.

3. That the Court find that Plaintiff has satisfied Rule 23's and federal law's requirements for certifying a Class.

14

Dockets.Justia.com

4. That the Court find that Defendant manufactured or processed the pet food products that were sold or offered to sale to Plaintiff and the Class.

5. That the Court find that Defendant intended Plaintiff and Class members to believe that the pet foods sold were fit and safe for consumption by their pets.

6. That a trial be held and Defendants be held liable to the Class for – breach of warranty, negligence, and under state statutes prohibiting deceptive trade practices.

7. That the Class be awarded an amount sufficient for direct damages occasioned by Defendants' acts and practices.

8. That the Class be awarded an amount sufficient for indirect, consequential, and incidental damages occasioned by Defendant's acts and practices.

9. That the Class be awarded treble damages or special damages authorized by state statutes prohibiting deceptive trade practices, depending upon the State where the Class Member lives.

10. That the Court award reasonable attorney's fees and costs and expenses recoverable under law.

11. That the Court order such other, further relief as the case requires and justice demands.

Dated: March 19, 2007.

Respectfully submitted,

/s/ A. James Andrews
A. James Andrews, BPR # 15772
905 Locust Street
Knoxville, Tennessee 37902
(865) 660-3993
Fax: (865) 523-4623

/s/Perry A. Craft
Perry A. Craft, BPR # 6057
Craft & Sheppard, PLC
The Shiloh Building
214 Centerview Drive
Suite 233
Brentwood, Tennessee 37027
(615) 309-1707
(615) 309-1717 (fax)


/s/Nichole Bass
Nicole Bass, BPR # 021383
905 Locust Street
Knoxville, Tennessee 37902
(865) 310-6804


Cost Bond

We are sureties for costs not to exceed $1,000.


/s/ A. James Andrews

# Exhibit C

U. S. DISTRICT COURT
WESTERN DISTRICT ARKANSAS
FILED

MAR 2 1 2007

CHRIS R. JOHNSON, CLERK

BY

DEPUTY CLERK

## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF ARKANSAS
## FAYETTEVILLE DIVISION

| | | |
|---|---|---|
| **CHARLES RAY SIMS and PAMELA SIMS,** Individually and on behalf of all others similarly situated, | § § § | **CIVIL ACTION NO.** 07-5053 |
| **Plaintiffs,** | § § | |
| **VERSUS** | § § | |
| **MENU FOODS INCOME FUND, MENU FOODS MIDWEST CORPORATION, MENU FOODS SOUTH DAKOTA INC., MENU FOODS, INC., MENU FOODS HOLDINGS, INC.,** | § § § § § | |
| **Defendants.** | § § | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

### CLASS ACTION COMPLAINT

NOW INTO COURT, through undersigned counsel, come Plaintiffs, CHARLES RAY SIMS and PAMELA SIMS (hereinafter collectively "Plaintiff," "Plaintiffs", or "SIMS"), major residents in the State of Arkansas, individually and on behalf of all others similarly situated, who file this Class Action Complaint pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3), seeking monetary relief for themselves and the class they seek to represent. This suit is brought against MENU FOODS INCOME FUND, MENU FOODS MIDWEST CORPORATION, MENU FOODS SOUTH DAKOTA INC., MENU FOODS, INC., and MENU FOODS HOLDINGS, INC., representing as follows:

## GENERAL ALLEGATIONS

1.      This is an action for damages relating to Defendants' design, manufacture, sale, testing, marketing, advertising, promotion and/or distribution of unsafe canned and foil pouched dog and cat food.

2.      This Court has jurisdiction over the subject matter and Defendants in this case pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship between Plaintiffs and Defendants and the matter in controversy involves a request that the Court certify a class action.

3.      Venue is proper in this district under 28 U.S.C. § 1391(b)(2) because a substantial part of the acts, conduct and damages complained of occurred in this district as Plaintiffs' residency is in Benton County, Arkansas, within the geographical boundaries of this Court.

## PARTIES, JURISDICTION AND VENUE

4.      Defendant MENU FOODS INCOME FUND is an unincorporated company with its principal place of business in Ontario, Canada. It is doing business in the State of Arkansas. Jurisdiction is appropriate pursuant to the Arkansas Long Arm Statute, Sec. 16-4-101, and service may be effected through the Hague Convention on service abroad of judicial and extrajudicial documents and civil or commercial matters (The Hague Convention) at 8 Falconer Drive, Streetsville, Ontario, Canada L5N 1B1.

5.      MENU FOODS MIDWEST CORPORATION is a Delaware corporation and may be served through its registered agent for service, The Corporation Trust Company, Corporation Trust Center, 1209 Orange Street, Wilmington, Delaware.

6.    Defendant MENU FOODS SOUTH DAKOTA INC. is a Delaware corporation and may be served through its registered agent for service, The Corporation Trust Company, Corporation Trust Center, 1209 Orange Street, Wilmington, Delaware.

7.    Defendant MENU FOODS HOLDINGS, INC. is a Delaware corporation and may be served through its registered agent for service, The Corporation Trust Company, Corporation Trust Center, 1209 Orange Street, Wilmington, Delaware.

8.    Defendant MENU FOODS, INC. is a New Jersey corporation and may be served through its registered agent for service, Corporation Trust Company, 820 Bear Tavern Road, West Trenton, New Jersey.

9.    Defendants MENU FOODS INCOME FUND, MENU FOODS MIDWEST CORPORATION, MENU FOODS SOUTH DAKOTA INC., MENU FOODS, INC., and MENU FOODS HOLDINGS, INC. are hereinafter referred to collectively as "Defendants" or "MENU."

10.    Upon information and belief, Defendants MENU FOODS MIDWEST CORPORATION, MENU FOODS SOUTH DAKOTA INC., MENU FOODS, INC., and MENU FOODS HOLDINGS, INC. are wholly owned subsidiaries of MENU FOODS INCOME FUND, a business entity registered in and headquartered in Ontario, Canada. MENU provides principal development, exporting, financing, holding company, marketing, production, research and servicing for MENU animal food products in the United States, including canned and foil pouched dog and cat food. MENU FOODS INCOME FUND is one of the largest animal food producing companies in the world, and MENU operates as one of the largest animal food companies in the United States,

whether measured by number of products produced and sold, revenues, or market capitalization.

11.    At all times herein mentioned, Defendants were engaged in the business of the manufacturing, packaging, marketing, distribution, promotion, and sale of dog and cat canned and foil pouched food products (hereinafter the "Product"), and at all times herein relevant, were engaged in the promotion and marketing of animal food products, including canned and foil pouched dog and cat food.

12.    Plaintiff CHARLES RAY SIMS resides at 2705 W. Dogwood, Rogers, Arkansas. At all times material to this complaint, he was a resident of Rogers, in the State of Arkansas.

13.    Plaintiff PAMELA SIMS resides at 2705 W. Dogwood, Rogers, Arkansas. At all times material to this complaint, she was a resident of Rogers, in the State of Arkansas.

14.    Plaintiffs CHARLES RAY SIMS and PAMELA SIMS were the owners of a family dog ("ABBY") at all times material to this complaint.

15.    This Court has diversity jurisdiction and jurisdiction pursuant to the Class Action Fairness Act of 2005.

## CLASS ACTION ALLEGATIONS

16.    Defendant MENU manufactured, distributed, marketed and sold canned and foil pouched dog and cat food to consumers in the United States. These consumers compose the putative class in this action and have rights that are substantially the same.

4

17.    Defendant MENU has issued a recall for over 90 brands of dog and cat canned and foil pouched food in the United States since March 16, 2007, translating to in excess of sixty million cans and pouches of dog and cat food recalled throughout the United States.

18.    The consumers composing the putative class in this action consist of:  (1) all persons or entities who purchased Menu Food brands at any time and disposed of or will not use the products based on publicity surrounding the safety and recall of the products; (2) all persons or entities who purchased Menu Foods products and fed products to their pets on or since December 6, 2006; and (3) all persons or entities who purchased Menu Food products from wholesale distributors on or since December 6, 2006 to the present.

19.    The consumers composing the putative class are so numerous that joinder of all members is impracticable; the questions of law or fact are common to all members of the class; the claims and defenses of Plaintiff SIMS are typical of the claims or defenses of the class; and Plaintiff SIMS will fairly and adequately protect the interests of the class.

20.    While the exact number and identities of the members of the class are unknown at this time, it is asserted that the class consists of thousands of persons. Upon further identification of the recipient class, class members may be notified of the pendency of this action by published class notice and/or by other means deemed appropriate by the Court.

21.    The sheer number of consumers composing the putative class are so numerous as to make separate actions by each consumer impractical and unfair and a

class action certification represents the superior method for the fair and efficient adjudication of the controversy in question.

22.    There is no plain, speedy or adequate remedy other than by maintenance of this class action because Plaintiffs SIMS are informed and believe that the economic damage to each member of the class makes it economically unfeasible to pursue remedies other than through a class action. There would be a failure of justice but for the maintenance of this class action.

## FACTUAL BACKGROUND

23.    Plaintiff's dog, ABBY, died as a direct result of the ingestion of canned and/or foil pouched dog food manufactured and distributed in the United States by Defendants.

24.    Defendants distributed their "Cuts and Gravy" canned and foil pouched dog and cat food product by misleading users about the product and by failing to adequately warn the users of the potential serious dangers, which Defendants knew or should have known, might result from animals consuming its product. Defendants widely and successfully marketed Defendants' canned and foil pouched dog and cat food products throughout the United States by, among other things, conducting promotional campaigns that misrepresented the safety of Defendants' products in order to induce widespread use and consumption.

25.    As a result of claims made by Defendants regarding the safety and effectiveness of Defendants' canned and foil pouched dog and cat food products, Plaintiff SIMS fed their dog, ABBY, canned dog food distributed under the format "Cuts and Gravy", said product being manufactured and distributed by Defendants.

6

26.    As a result of Plaintiffs SIMS feeding their dog, ABBY, the Product manufactured and distributed by Defendants, their dog developed severe health problems, including but not limited to anorexia, lethargy, diarrhea and vomiting.

27.    Plaintiffs SIMS took their dog, ABBY, to Dr. Eric P. Steinlage, at All Dogs Clinic, Rogers, Arkansas, who performed tests and surgery on the dog.

28.    Dr. Eric P. Steinlage determined that Defendants' Product was the cause of the dog's kidney failure and the dog died on March 16, 2007.

29.    Had Plaintiff SIMS known the risks and dangers associated with Defendants' canned and foil pouched dog food product sold under the format "Cuts and Gravy", or had Defendants disclosed such information to Plaintiff, he would not have fed Defendants' product to their dog, ABBY, and the dog would not have suffered subsequent health complications and ultimately died before the age of two.

30.    Upon information and belief, as a result of the manufacturing and marketing of Defendants' canned and foil pouched dog and cat food products, Defendants have reaped huge profits; while concealing from the public, knowledge of the potential hazard associated with the ingestion of Defendants' canned and foil pouched dog and cat food products.

31.    Defendants failed to perform adequate testing in that the adequate testing would have shown that Defendants' canned and foil pouched dog and cat food products produced serious side effects with respect to which Defendants should have taken appropriate measures to ensure that its defectively designed product would not be placed into the stream of commerce and/or should have provided full and proper

7

warnings accurately and fully reflecting the scope and severity of symptoms of those side effects should have been made.

32.   Defendants' had notice and knowledge as early as February 20, 2007, that their Product presented substantial and unreasonable risks, and possible death, to animals consuming the Product. As such, said consumers' dogs and cats, including Plaintiff's dog, ABBY, were unreasonably subjected to the risk of illness or death from the consumption of Defendants' Product.

33.   Despite such knowledge, Defendants, through their officers, directors, partners and managing agents for the purpose of increasing sales and enhancing its profits, knowingly and deliberately failed to remedy the known defects of Defendants' Product in a timely manner, failed to conduct testing in a timely manner, and failed to warn the public in a timely manner, including Plaintiff, of the serious risk of illness and death occasioned by the defects inherent in Defendants' Product.

34.   Defendants and their officers, agents, partners and managers intentionally proceeded with the manufacturing, distribution, sale and marketing of Defendants' Product, knowing that the dogs and cats ingesting the Defendants' Product would be exposed to serious potential danger, in order to advance their own pecuniary interests.

35.   Defendants' conduct was wanton and willful, and displayed a conscious disregard for the safety of the Product and particularly of the damage it would cause pet owners like the SIMS, entitling these Plaintiffs to exemplary damages.

36.   Defendants acted with conscious and wanton disregard of the health and safety of Plaintiff's dog, ABBY, and Plaintiff requests an award of additional damages for the sake of example and for the purpose of punishing such entities for their conduct,

in an amount sufficiently large to be an example to others, and to deter Defendants and others from engaging in similar conduct in the future. The above-described wrongful conduct was done with knowledge, authorization, and ratification of officers, directors, partners and managing agents of Defendants.

37.    As a direct and proximate result of Defendants' negligence as described herein, Plaintiff SIMS sustained damages in the loss of their family pet.

## AS AND FOR A FIRST CAUSE OF ACTION SOUNDING IN STRICT PRODUCT LIABILITY - FAILURE TO WARN

38.    Plaintiff repeats and incorporates by reference each and every paragraph of this complaint as though set forth in full in this cause of action.

39.    Defendants manufactured, marketed, distributed, and supplied Defendants' Product to distribution centers throughout the United States. As such, Defendants had a duty to warn the public, including Plaintiff, of the health risks and possible death associated with using Defendants' Product.

40.    Defendants' Product was under the exclusive control of Defendants, and was sold without adequate warnings regarding the risk of serious injury and other risks associated with its use.

41.    As a direct and proximate result of the defective condition of Defendants' Product as manufactured and/or supplied by Defendants, and as a direct and proximate result of negligence, gross negligence, willful and wanton misconduct, or other wrongdoing and actions of Defendants described herein, Plaintiff suffered damages.

42.    Upon information and belief, Defendants knew of the defective nature of Defendants' Product but continued to design, manufacture, market, and sell it so as to maximize sales and profits at the expense of animal health and safety, in knowing,

conscious, and deliberate disregard of the foreseeable harm caused by Defendants' Product and in violation of their duty to provide an accurate, adequate, and complete warning concerning the use of Defendants' Product.

43.   Defendants failed to warn the public or Plaintiff in a timely manner of the dangerous propensities of Defendants' Product, which dangers were known or should have been known to Defendants, as they were scientifically readily available.

44.   Defendants knew and intended that Defendants' Product would be distributed through the United States without any inspection for defects.

45.   Defendants also knew that veterinary clinics, pet food stores, food chains and users such as Plaintiff would rely upon the representations and warranties made by Defendants on the product labels and in other promotional and sales materials upon which the Plaintiff did so rely.

46.   As a direct and proximate result of the Defendants' distribution of the product without adequate warnings regarding the health risks to animals, the Plaintiffs suffered damage as previously alleged herein, including ascertainable economic loss, including the purchase price of Defendants' Product, out-of-pocket costs of veterinary medical tests and treatment for their dog, ABBY, out-of-pocket costs of disposal/burial fees after the death of their dog, ABBY, as well as the pecuniary value.

47.   Defendants' conduct in the packaging, warning, marketing, advertising, promotion, distribution, and sale of Defendants' pet foods, was committed with knowing, conscious, and deliberate disregard for the rights and safety of consumers such as Plaintiffs' pets, thereby entitling Plaintiffs to punitive damages in an amount to be

determined at trial that is appropriate to punish Defendants and deter them from similar conduct in the future.

48. The damages resulting from the allegations asserted under this cause of action, exceed the district court's original jurisdictional limits as described in Section 4 of the Class Action Fairness Act of 2005.

## AS AND FOR A SECOND CAUSE OF ACTION SOUNDING IN STRICT PRODUCT LIABILITY – DEFECTIVE IN DESIGN OR MANUFACTURE

49.    Plaintiff repeats and incorporates by reference each and every paragraph of this complaint as though set forth in full in this cause of action.

50.    Defendants were the manufacturers, sellers, distributors, marketers, and/or suppliers of Defendants' Product, which was defective and unreasonably dangerous to the Plaintiffs' pets.

51.    Defendants' Product was sold, distributed, supplied, manufactured, marketed, and/or promoted by Defendants, and was expected to reach and did reach consumers without substantial change in the condition in which it was manufactured and sold by Defendants.

52.    The Product was manufactured, supplied, and/or sold by Defendants and was defective in design or formulation in that when it left the hands of the manufacturers and/or sellers it was unreasonably dangerous in that its foreseeable risks exceeded the benefits associated with the designs and/or formulations of the Product.

53.    Upon information and belief, Defendants actually knew of the defective nature of Defendants' Product but continued to design, manufacture, market, and sell it so as to maximize sales and profits at the expense of the public health and safety, in conscious disregard of the foreseeable harm caused by Defendants' Product.

11

54.   At all times material to this action, the Product was designed, tested, inspected, manufactured, assembled, developed, labeled, sterilized, licensed, marketed, advertised, promoted, sold, packaged, supplied and/or distributed by Defendants in a defective and unreasonably dangerous condition in ways which include, but are not limited to, one or more of the following:

   a.   When placed in the stream of commerce, the Product contained unreasonably dangerous design defects and was not reasonably safe and fit for its intended or reasonably foreseeable purpose or as intended to be used, thereby subjecting the dogs and cats of the consumers, including Plaintiff, to risks which exceeded the benefits of the Product;

   b.   The Product was insufficiently tested;

   c.   The Product caused serious illness, harmful side effects, and possible death that outweighed any potential utility;

   d.   In light of the potential and actual risk of harm associated with ingestion of the Product by dogs and cats, a reasonable person who had actual knowledge of this potential and actual risk of harm would have concluded that the Product should not have been marketed, distributed or sold in that condition.

55.   At all times material to this action, the Product was designed, tested, inspected, manufactured, assembled, developed, labeled, sterilized, licensed, marketed, advertised, promoted, sold, packaged, supplied and/or distributed, it was

expected to reach, and did reach, purchasers of the Product across the United States, including Plaintiff, without substantial change in the defective and unreasonably dangerous condition in which it was sold.

56.    At all times, Plaintiff purchased the Product for its intended or reasonably foreseeable purpose.

57.    As a direct, legal proximate and producing result of the defective and unreasonably dangerous condition of the Product, Plaintiff sustained damage, for which Plaintiff is entitled to recovery.

58.    As a direct, legal, proximate and producing result of the defective and unreasonably dangerous condition of the Product, Plaintiff's dog, ABBY, was injured in health, strength and activity and subsequently died after having suffered physical injuries.

59.    As a direct, legal, proximate and producing result of the defective and unreasonably dangerous condition of the Product, Plaintiff's dog, ABBY, required reasonable and necessary veterinary treatment and services and incurred expenses for which Plaintiff is entitled to damages, along with the expenses of disposal/burial of the family pet.

60.    As a direct and proximate result of the design and manufacturing defects of Defendants' Product, Plaintiff suffered damages as previously alleged herein.

61.    Defendants' aforementioned conduct was committed with knowing, conscious, and deliberate disregard for the rights and safety of consumers such as Plaintiff, including Defendants' knowingly withholding and/or misrepresenting information to the public, including Plaintiff, which information was material and relevant

to the harm in question, punitive damages in an amount to be determined at trial that are appropriate to punish Defendants and deter them from similar conduct in the future.

62.    The damages resulting from the allegations asserted under this cause of action, exceed the district court's original jurisdictional limits as described in Section 4 of the Class Action Fairness Act of 2005.

## AS AND FOR A THIRD CAUSE OF ACTION, SOUNDING IN FRAUD

63.    Plaintiff repeats and incorporates by reference each and every paragraph of this complaint as though set forth in full in this cause of action.

64.    At all material times, Defendants were engaged in the business of manufacturing, marketing, distributing, promoting, and selling Defendants' Product.

65.    Defendants made misrepresentations of material facts to, and omitted and/or concealed material facts from, Plaintiff in the advertising, marketing, distribution and sale of Defendants' Product regarding its safety and use.

66.    Defendants deliberately and intentionally misrepresented to, and omitted and/or concealed material facts from, consumers, including Plaintiff SIMS, that Defendants' Product was safe when ingested by dogs and cats.    Such misrepresentations, omissions, and concealments of facts include, but are not limited to:

a.    Failing to disclose, and/or intentionally concealing, the results of tests showing the potential health risks to dogs and cats associated with the use of Defendants' Product;

b.    Failing to include adequate warnings with Defendants' Product about the potential and actual risks and the nature, scope, severity, and duration of serious adverse effects of Defendants' Product;

14

c.   Concealing information regarding the known health risks to dogs and cats associated with Defendants' Product; and;

d.   Concealing the known incidents of illnesses and death of dogs and cats, as previously alleged herein.

67.   Defendants intentionally concealed facts known to them, as alleged herein, in order to ensure increased sales of Defendants' Product.

68.   Defendants had a duty to disclose the foregoing risks and failed to do so, despite possession of information concerning those risks. Defendants' representations that Defendants' Product was safe for its intended purpose were false, as Defendants' Product was, in fact, dangerous to the health of and ultimately fatal to Plaintiff SIMS' dog, ABBY.

69.   Defendants knew that their statements were false, knew of incidents of serious illnesses and deaths in dogs and cats, and knew that their omissions rendered their statements false or misleading.

70.   Further, Defendants failed to exercise reasonable care in ascertaining the accuracy of the information regarding the safe use of Defendants' Product, and failed to disclose that Defendants' Product caused possible death in dogs and cats, among other serious adverse effects.   Defendants also failed to exercise reasonable care in communicating the information concerning Defendants' Product to Plaintiff SIMS, and/or concealed facts that were known to Defendants.

71.   Plaintiff SIMS was not aware of the falsity of the foregoing representations, nor was Plaintiff SIMS aware that one or more material facts concerning the safety of Defendants' Product had been concealed or omitted.

15

72.     In reliance upon Defendants' misrepresentations (and the absence of disclosure of the serious health risks), Plaintiff SIMS fed Defendants' Product to their dog, ABBY. Had Plaintiff SIMS known the true facts concerning the risks associated with Defendants' Product, he would not have purchased the Product nor fed the Product to the family pet.

73.     The reliance by Plaintiff SIMS upon Defendants' misrepresentations was justified because said misrepresentations and omissions were made by individuals and entities that were in a position to know the facts concerning Defendants' Product.

74.     Plaintiff SIMS was not in a position to know the facts because Defendants aggressively promoted the use of Defendants' Product and concealed the risks associated with its use, thereby inducing Plaintiff SIMS to purchase Defendants' Product.

75.     As a direct and proximate result of Defendants' misrepresentations, and/or concealment, Plaintiffs suffered damages as previously alleged herein.

76.     Defendants' conduct in concealing material facts and making the foregoing misrepresentations, as alleged herein, was committed with conscious or reckless disregard of the rights and safety of consumers such as Plaintiff, thereby entitling Plaintiff to punitive damages in an amount to be determined at trial that is appropriate to punish Defendants and deter them from similar conduct in the future.

77.     The damages resulting from the allegations asserted under this cause of action, exceed the district court's original jurisdictional limits as described in Section 4 of the Class Action Fairness Act of 2005.

16

## AS AND FOR A FOURTH CAUSE OF ACTION,
## SOUNDING IN IMPLIED WARRANTY OF FITNESS FOR
## A PARTICULAR PURPOSE AND IMPLIED WARRANTY
## OF MERCHANTABILITY

78.   Plaintiff repeats and incorporates by reference each and every paragraph of this complaint as though set forth in full in this cause of action.

79.   Defendants manufactured, marketed, sold, and distributed Defendants' Product.

80.   At the time Defendants marketed, sold, and distributed Defendants' Product for use by Plaintiff SIMS, Defendants knew of the purpose for which Defendants' Product was intended and impliedly warranted Defendants' Product to be of merchantable quality and safe and fit for such use.

81.   Plaintiff SIMS reasonably relied on the skill, superior knowledge, and judgment of Defendants as to whether Defendants' Product was of merchantable quality and safe and fit for its intended use.

82.   Due to Defendants' wrongful conduct as alleged herein, Plaintiff SIMS could not have known about the risks and side effects associated with Defendants' Product until after ingestion by Plaintiff SIMS' dog, ABBY.

83.   Contrary to such implied warranty, Defendants' Product was not of merchantable quality and was not safe or fit for its intended use.

84.   As a direct and proximate result of Defendants' breach of implied warranty, Plaintiff SIMS. suffered damages as previously alleged herein.

85.   Defendants' aforementioned conduct was committed with knowing, conscious, and deliberate disregard for the rights and safety of consumers such as Plaintiff, thereby entitling Plaintiff to punitive damages in an amount to be determined at

trial that is appropriate to punish Defendants and deter them from similar conduct in the future.

86.    The damages resulting from the allegations asserted under this cause of action, exceed the district court's original jurisdictional limits as described in Section 4 of the Class Action Fairness Act of 2005.

## AS AND FOR A FIFTH CAUSE OF ACTION
## SOUNDING IN BREACH OF EXPRESS WARRANTY

87.    Plaintiff repeats and incorporates herein by reference the allegations made in the above Paragraphs.

88.    Defendants expressly warranted that the Product was safe and well accepted by dogs and cats and was safe for long-term use.

89.    The Product does not conform to these express representations because the Product is not safe and has high levels of serious, life-threatening side effects.

90.    As a direct and proximate result of the breach of said warranties, Plaintiff was damaged, and he is therefore entitled to damages as described herein.

91.    The damages resulting from the allegations asserted under this cause of action, exceed the district court's original jurisdictional limits as described in Section 4 of the Class Action Fairness Act of 2005.

## AS AND FOR A SIXTH CAUSE OF ACTION
## SOUNDING IN NEGLIGENCE

92.    Plaintiff repeats and incorporates by reference each and every paragraph of this complaint as though set forth in full in this cause of action.

93.    Defendants owed a duty to consumers of Defendants' Product, including the Plaintiff, to use reasonable care in designing, testing, labeling, manufacturing,

marketing, supplying, distribution and selling Defendants' Product, including a duty to ensure that Defendants' Product did not cause the dogs and cats ingesting the Product to suffer from unreasonable, unknown, and/or dangerous side effects.

94.   Defendants failed to exercise reasonable care in warning about, designing, testing, labeling, manufacture, marketing, selling and/or distributing of Defendants' Product and breached their duties to Plaintiff in that, and not by way of limitation, they did not warn of the known risks associated with the ingestion of Defendants' Product and did not exercise an acceptable standard of care, i.e., what a reasonably prudent manufacturer or seller would have known and warned about.

95.   Moreover, the product lacked sufficient warnings of the hazards and dangers to users of said Product, and failed to provide safeguards to prevent the injuries sustained by Plaintiff's dog, ABBY.   Defendants failed to properly test Defendants' Product prior to its sale, and as a result subjected users to an unreasonable risk of injury when this Product was used as directed and recommended.

96.   Defendants additionally breached their duty and were negligent in their actions, misrepresentations, and omissions toward Plaintiff, in part, in the following ways:

a.   Failed to exercise due care in designing, developing, and manufacturing Defendants' Product so as to avoid the aforementioned risks to individuals using these products;

b.   Failed to include adequate warnings with Defendants' Product that would alert Plaintiff SIMS and other purchasers to its potential risks and serious side effects;

19

c.    Failed to adequately and properly test Defendants' Product before placing it on the market;

d.    Failed to conduct sufficient testing on Defendants' Product, which if properly performed, would have shown that Defendants' Product had serious side effects, including, but not limited to, death of the dog or cat;

e.    Failed to adequately warn Plaintiff that use of Defendants' Product carried a risk of other serious side effects;

f.    Failed to provide adequate post-marketing warnings or instructions after Defendants knew, or should have known, of the significant risks of ingestion by dogs and cats of Defendants' Product;

g.    Placed an unsafe product into the stream of commerce; and

h.    Was otherwise careless or negligent.

97.    Defendants knew, or should have known, that Defendants' Product caused unreasonably dangerous risks and serious side effects of which Plaintiff would not be aware. Defendants nevertheless advertised, marketed, sold and/or distributed Defendants' Product knowing of its unreasonable risks of injury.

98.    Defendants knew or should have known that consumers' dogs or cats, such as Plaintiff SIMS' dog, ABBY, would suffer injury and possible death as a result of Defendants' failure to exercise reasonable care as described above.

99.    Upon information and belief, Defendants knew or should have known of the defective nature of Defendants' Product, as set forth herein, but continued to design, manufacture, market, and sell Defendants' Product so as to maximize sales and profits

at the expense of the health and safety of the public, including Plaintiff, in conscious and/or negligent disregard of the foreseeable harm caused by Defendants' Product.

100.    Defendants failed to disclose to the Plaintiff and the general public facts known or available to them, as alleged herein, in order to ensure continued and increased sales of Defendants' Product. This failure to disclose deprived Plaintiff SIMS of the information necessary for them to weigh the true risks of purchasing Defendants' Product against the benefits.

101.    As a direct and proximate result of Plaintiff SIMS' feeding Defendants' Product to their dog, ABBY, Plaintiff SIMS' dog, ABBY, suffered serious health problems and ultimate death.

102.    By virtue of Defendants' negligence, Defendants directly, foreseeably and proximately caused Plaintiff SIMS' dog, ABBY, to suffer serious health problems and ultimate death.  As a result, the imposition of punitive damages against Defendants is warranted.

103.    The damages resulting from the allegations asserted under this cause of action, exceed the district court's original jurisdictional limits as described in Section 4 of the Class Action Fairness Act of 2005.

**WHEREFORE**, Plaintiff demands judgment against Defendants in an amount to be determined upon the trial of this action, together with the costs and disbursements of this action.

21

### PRAYER FOR RELIEF

**WHEREFORE**, the class of putative plaintiffs pray for relief, in an amount which exceeds the district court's original jurisdictional limits as described in Section 4 of the Class Action Fairness Act of 2005, as follows:

a.    Awarding damages including but not limited to the money expended on Defendants' defective Product, veterinary bills associated with the treatment, testing, and diagnosis resulted from ingestion of the defective Product, disposal fees after death of the pet and the pecuniary value of the pet;

b.    Awarding punitive damages to Plaintiffs;

c.    Awarding pre-judgment and post-judgment interest to Plaintiffs,

d.    Awarding the costs and expenses of this litigation to Plaintiffs,

e.    Awarding reasonable attorneys' fees and costs to Plaintiffs as provided by law; and

f.    For such further relief as this Court deems necessary, just, and proper.

**WHEREFORE**, Plaintiffs demand judgment against Defendants in an amount to be determined upon the trial of this action, together with the costs and disbursements of this action.

## DEMAND FOR JURY TRIAL

The Plaintiffs demand a trial by jury on all issues so triable in this civil action.

Dated:  March 21, 2007.

> CHARLES RAY SIMS and PAMELA SIMS,
> Plaintiffs
>
> LUNDY & DAVIS, L.L.P.
> 300 N. College Ave., Suite 309
> Fayetteville, AR 72701
> (479) 527-3921
> (479) 587-9196 (fax)
> jhatfield@lundydavis.com
>
>
> By: _____
> Jason M. Hatfield
> Ark. Bar No. 97143
>
> Attorneys for Plaintiffs

23

# Exhibit D

KC **FILED**

MAR 3 0 2007

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

DAWN MAJERCZYK individually and on )
behalf of a class of similarly situated individuals, )
)
          Plaintiff, )
)
        v. )
)
MENU FOODS, Inc., a New Jersey Corporation, )
)
         Defendant. )
-----------------------------------------------------------x

**07CV1543**
**JUDGE ANDERSEN**
**MAGISTRATE JUDGE NOLAN**

**Jury Trial Demanded**

## CLASS ACTION COMPLAINT

    Plaintiff Dawn Majerczyk brings this class action complaint against defendant Menu

Foods, Inc. ("Menu Foods") to seek redress for herself and all other individuals injured by its sale

of contaminated pet food throughout the United States.

### NATURE OF THE CASE

    1.    Menu Foods, one of the largest pet food manufacturers in the world, recently

issued a mass recall of 42 brands of cat food and 51 brands of dog food.

    2.    That recall was issued – belatedly – as a result of evidence that the pet food in

question was contaminated with a potentially lethal agent.

    3.    When ingested by an animal, the contaminated pet food can cause immediate

renal failure, resulting in the complete shutdown of the animal's kidneys and, ultimately, its

death.

    4.    Menu Foods' actions in selling the contaminated food and failing to issue the

recall sooner were reckless and in breach its duties and warranties to its customers.

5.    Those actions were a proximate cause of injury to and the deaths of currently untold numbers of pets, including plaintiff Dawn Majerczyk's cat, as described more fully below.

6.    On behalf of a nationwide class, Majerczyk seeks redress for that misconduct.

### PARTIES

7.    Plaintiff Dawn Majerczyk is a citizen of Illinois, residing in Cook County, Illinois.

8.    Defendant Menu Foods is the self-proclaimed "leading manufacturer of private-label wet pet food in North America." It is a New Jersey Corporation with its principle place of business in New Jersey. It does business throughout the United States, including Cook County, Illinois.

### JURISDICTION

9.    The Court has original jurisdiction over this complaint pursuant to 28 U.S.C. § 1332(d) because (a) plaintiff and numerous members of her putative class are citizens of states different from those of which Menu Foods is a citizen, (b) the amount in controversy exceeds $5,000,000, exclusive of interests and costs, and (c) none of the jurisdictional exceptions contained in 28 U.S.C. § 1332(d)(4)-(5) applies to the instant action.

### VENUE

10.    Venue is proper in this district under, *inter alia*, 28 U.S.C. §§ 1391(a)(1).

### FACTS

11.    Menu Foods holds itself out to the public as a manufacturer of safe, nutritious, and high-quality dog and cat food.

12.    It makes numerous express warranties about the quality of its food and its manufacturing facilities.

2

13.    For example, Menu Foods touts the claim that it "manufacture[s] the private-label, wet pet-food industry's most comprehensive product program with the highest standards of quality" and it operates "state-of-the-art" manufacturing facilities in the United States and Canada.

14.    Menu Foods intended for pet owners to believe its statements and trust that its pet food is of first-rate quality.

15.    On or about March 16, 2007, Menu Foods announced a recall of approximately 42 brands "cuts and gravy" style dog food and 51 brands of "cuts and gravy" style cat food, all produced at Menu Foods' facility in Emporia, Kansas, between Dec. 3, 2006, and March 6, 2007.

16.    Weeks before the recall, Menu Foods had received numerous complaints indicating that the pet food originating from the Emporia plant was killing pets.

17.    As a result of these complaint, Menu Foods tested its food on approximately 40 to 50 pets. Seven of those pets died after ingesting the food.

18.    Despite having actual knowledge of both the complaints it received and its own study, Menu Foods delayed for weeks before issuing the notice of recall.

19.    Even then, its recall was conducted in a negligent manner. For example, both its website and the toll-free telephone number it provided to the public were frequently non-operational.

## FACTS RELATING TO THE NAMED PLAINTIFF

20.    On or about March 10, 2007, Majerczyk purchased several pouches of Special Kitty Select Cuts from a Walmart store for her nine-year-old cat, Phoenix.

21.    Menu Foods is the manufacturer of Special Kitty Select Cuts.

3

22.     On March 16, 2006, shortly after ingesting Menu Food's cat food, Phoenix went into renal failure.  Phoenix's kidneys shut down, and on March 17, 2007, he had to be put down.

23.     Majerczyk incurred over $300 in veterinary expenses relating to the attempts to save Phoenix's life.

24.     Phoenix had been with Majerczyk's family from birth.

25.     The loss was devasting not only to Majerczyk, but also to her seventeen-year-old son and fourteen-year-old daughter as well.


## CLASS ALLEGATIONS.

26.     Majerczyk brings this action, pursuant to FRCP 23(b)(3), on behalf of herself and a class (the "Class") consisting of herself and all others who purchased pet food in the United States that was ultimately subject to the March 16, 2007 Menu Foods recall.

27.     Upon information and belief, there are over 100,000 members of the Class such that joinder of all members is impracticable.

28.     Common questions of law and fact exist as to all members of the Class and predominate over questions affecting individual members.  Common questions for the Class include:

(a)     Did Menu Foods act negligently in failing to prevent the contamination of its pet food?

(b)     Did Menu Foods act negligently in failing to warn its customers in a timely and effective manner of the danger of its pet food?

4

(c)     Did Menu Foods' breach express and/or implied warranties relating to the sale of its pet food?

29.     Majerczyk will fairly and adequately protect the interests of the Class, her claims are typical of the claims of the members of the class, and she has retained counsel competent and experienced in class action litigation.

30.     A class action is superior to other available methods for fairly and efficiently adjudicating this controversy because, among other things, (a) joinder of all members of the class is impracticable, and (b) many members of the class cannot vindicate their rights by individual suits because their damages are small relative to the burden and expense of litigating individual actions.

## COUNT I

### (Breach of Warranties)

31.     Plaintiff incorporates by reference the foregoing allegations.

32.     Menu Foods breached express warranties to Plaintiff and violated the Uniform Commercial Code.

33.     Menu Foods breached implied warranties to Plaintiff and violated the Uniform Commercial Code.

34.     Menu Foods breached the implied warranty of merchantability.

35.     As a proximate cause of this misconduct, plaintiff and her class suffered actual damages, including without limitation the cost of the contaminated pet food and any resulting veterinary bills.

WHEREFORE, Plaintiff, on behalf of herself and the Class, prays for the following relief:

1.  An order certifying the Class as defined above;

2.  An award of actual damages;

3.  Appropriate injunctive relief;

4.  Medical monitoring damages;

5.  Reasonable attorney's fees and costs; and

6.  Such further and other relief the Court deems appropriate.

### COUNT II
### (Negligence)

36.  Plaintiff incorporates by reference the foregoing allegations.

37.  Menu Foods owed its customers a duty to offer safe, non-contaminated products in the stream of commerce.

38.  Menu Foods breached this duty by failing to exercise due care in the producing, processing, manufacturing and offering for sale of the contaminated pet food described herein.

39.  Menu Foods further breached this duty by failing timely and effectively to warn plaintiff and the class of the contamination even after it had actual knowledge of that fact and of the resulting risks.

40.  As a proximate cause thereof, plaintiff and her class suffered actual damages, including without limitation the cost of the contaminated pet food and any resulting veterinary bills.

WHEREFORE, Plaintiff, on behalf of herself and the Class, prays for the following relief:

1.  An order certifying the Class as defined above;

2.  An award of actual damages;

3.  Appropriate injunctive relief;

4.  Medical monitoring damages;

5.  Reasonable attorney's fees and costs; and

6.  Such further and other relief the Court deems appropriate.

## JURY DEMAND

Plaintiff requests trial by jury of all claims that can be so tried.

March 20, 2007

Dawn Majerczyk, individually and on behalf of a class of similarly situated individuals

_____
one of her attorneys

John Blim
Jay Edelson
Myles McGuire (Of Counsel)
Blim & Edelson, LLC
53 West Jackson Boulevard
Suite 1642
Chicago, Illinois 60604
(312) 913-9400
(312) 913-9401 (Fax)

7

# Exhibit E

```
_____ FILED _____ ENTERED
_____ LODGED _____ RECEIVED

      MAR 19 2007    DJ

            AT SEATTLE
       CLERK U.S. DISTRICT COURT
   WESTERN DISTRICT OF WASHINGTON
BY _____ DEPUTY
```

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

TOM WHALEY individually and on behalf of
all others similarly situated,

              Plaintiff,

       vs.

MENU FOODS, a foreign corporation, THE
IAMS COMPANY, a foreign corporation, DOG
FOOD PRODUCERS NUMBERS 1- 50 and
CAT FOOD PRODUCERS 1- 40,

              Defendants.

No. **CV7  0411** M

CLASS ACTION COMPLAINT

07-CV-00411-CMP

Plaintiff Tom Whaley, by and through his undersigned attorneys, Myers & Company,

P.L.L.C., brings this civil action for damages on behalf of himself and all others similarly

situated against the above-named Defendants and complains and alleges as follows:

## I.    NATURE OF ACTION

    1.1    Mr. Whaley brings this action as a Class Action pursuant to Rule 23 of the

Federal Rules of Civil Procedure on behalf of all persons who purchased any dog or cat food

CLASS ACTION COMPLAINT - 1

MYERS & COMPANY, P.L.L.C.
1809 SEVENTH AVENUE, SUITE 700
SEATTLE, WASHINGTON 98101
TELEPHONE (206) 398-1188

1  which was produced by any of the above-named defendants and/or has had a dog or cat become

2  ill as a result of eating the food.

3      1.2    The defendants are producers and distributors of, *inter alia*, dog and cat food.

4  Menu Foods produces dog and cat food under familiar brand names such as Iams, Eukanuba and

5  Science Diet. Menu Foods distributes its dog and cat food throughout the United States to

6  retailers such as Wal-Mart, Kroger and Safeway.

7      1.3    Dog and cat food which the defendants produced has caused an unknown number

8  of dogs and cats to become ill and die.

9      1.4    To date, Menu Foods has recalled 50 brands of dog food and 40 brands of cat

10 food which are causing dogs and cats to become ill. All recalled food to date is of the "cuts and

11 gravy wet" style.

12     1.5    As a result of the Defendants' actions Mr. Whaley and other Class members have

13 suffered emotional and economic damage.

14                          II.    PARTIES

15     2.1    Plaintiff Tom Whaley has at all material times been a resident of Ontario, Oregon.

16     2.2    Defendant Menu Foods is, upon information and belief, a corporation organized

17 under the laws of Canada which transacts business in Washington State and Oregon State.

18     2.3    Defendant The Iams Company, is upon information and belief, a foreign

19 corporation which transacts business in Washington State and Oregon State.

20                    III.   JURISDICTION AND VENUE

21     3.1    Subject matter jurisdiction is proper under 28 U.S.C. § 1332(a)(1) because the

22 Plaintiff and Defendants are citizens of different states and the amount in controversy exceeds

23

24

25

CLASS ACTION COMPLAINT - 2

MYERS & COMPANY, P.L.L.C.
1809 SEVENTH AVENUE, SUITE 700
SEATTLE, WASHINGTON 98101
TELEPHONE (206) 398-1188

$75,000.00. This court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

3.2    Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(a) because the Defendants systematically and continuously sold their product within this district and Defendants transact business within this district.

### IV.    CLASS ACTION ALLEGATION

4.1    Mr. Whaley brings this suit as a class action pursuant to Rules 23(a), (b)(1), (b)(2) and (b)(3) of the Federal Rules of Civil Procedure, on behalf of himself and a Plaintiff Class (the "Class") composed of all persons who purchased any dog or cat food which was produced by the defendants and/or has had a dog or cat become ill as a result of eating the food. Mr. Whaley reserves the right to modify this class definition prior to moving for class certification.

4.2    This action has been brought and may be properly maintained as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure for the following reasons:

a.    The Class is ascertainable and there is a well-defined community of interest among the members of the Class;

b.    Membership in the Class is so numerous as to make it impractical to bring all Class members before the Court. The identity and exact number of Class members is unknown but is estimated to be at least in the hundreds, if not thousands considering the fact that Menu Foods has identified 50 dog foods and 40 cat foods which may be causing harm to pets.

c.    Mr. Whaley's claims are typical of those of other Class members, all of whom have suffered harm due to Defendants' uniform course of conduct.

d.    Mr. Whaley is a member of the Class.

CLASS ACTION COMPLAINT - 3

MYERS & COMPANY, P.L.L.C.
1809 SEVENTH AVENUE, SUITE 700
SEATTLE, WASHINGTON 98101
TELEPHONE (206) 398-1188

e.    There are numerous and substantial questions of law and fact common to all of the members of the Class which control this litigation and predominate over any individual issues pursuant to Rule 23(b)(3). The common issues include, but are not limited to, the following:

   i.    Did the defendants make representations regarding the safety of the dog and cat food they produced and sold?

   ii.   Were the defendants' representations regarding the safety of the dog and cat food false?

   iii.  Did the defendants' dog and cat food cause Mr. Whaley and other Class members' pets to become ill?

   iv.   Were Mr. Whaley and other Class members damaged?

f.    These and other questions of law or fact which are common to the members of the Class predominate over any questions affecting only individual members of the Class;

g.    Mr. Whaley will fairly and adequately protect the interests of the Class in that Mr. Whaley has no interests that are antagonistic to other members of the Class and has retained counsel competent in the prosecution of class actions to represent himself and the Class;

h.    Without a class action, the Class will continue to suffer damage, Defendants' violations of the law or laws will continue without remedy, and Defendants will continue to enjoy the fruits and proceeds of their unlawful misconduct;

i.    Given (i) the substantive complexity of this litigation; (ii) the size of individual Class members' claims; and (iii) the limited resources of the Class members, few, if

CLASS ACTION COMPLAINT - 4

MYERS & COMPANY, P.L.L.C.
1809 SEVENTH AVENUE, SUITE 700
SEATTLE, WASHINGTON 98101
TELEPHONE (206) 398-1188

1  any, Class members could afford to seek legal redress individually for the wrongs Defendants

2  have committed against them;

3          j.    This action will foster an orderly and expeditious administration of Class

4  claims, economies of time, effort and expense, and uniformity of decision;

5          k.    Inferences and presumptions of materiality and reliance are available to

6  obtain class-wide determinations of those elements within the Class claims, as are accepted

7  methodologies for class-wide proof of damages; alternatively, upon adjudication of Defendants'

8  common liability, the Court can efficiently determine the claims of the individual Class

9  members;

10          l.    This action presents no difficulty that would impede the Court's

11  management of it as a class action, and a class action is the best (if not he only) available means

12  by which members of the Class can seek legal redress for the harm caused them by Defendants.

13          m.    In the absence of a class action, Defendants would be unjustly enriched

14  because they would be able to retain the benefits and fruits of their wrongful conduct.

15      4.3    The Claims in this case are also properly certifiable under applicable law.

16              **V.    STATEMENT OF FACTS**

17      5.1    Plaintiff Tom Whaley was the owner of a female cat named Samoya.

18      5.2    Mr. Whaley purchased Iams brand cuts and gravy wet-style cat food from Wal-

19  Mart for Samoya to consume.

20      5.3    Samoya ate the Iams brand cuts and gravy wet-style cat food between December

21  2006 and February 2007.

22

23

24

25

CLASS ACTION COMPLAINT - 5

MYERS & COMPANY, P.L.L.C.
1809 SEVENTH AVENUE, SUITE 700
SEATTLE, WASHINGTON 98101
TELEPHONE (206) 398-1188

5.4    Samoya became extremely ill and Mr. Whaley took her to a veterinarian who informed him that Samoya had suffered kidney failure, also known as acute renal failure. Samoya had to be euthanized.

5.5    In March 2007 Menu Foods recalled 50 brands of cuts and gravy wet-style dog food and 40 brands of cuts and gravy wet-style cat food which had caused dogs and pets to become ill. One common symptom in the sick animals was kidney failure, also known as acute renal failure.

5.6    The Iams brand cuts and gravy wet-style cat food that Samoya consumed between December 2006 and February 2007 is one of the brands that Menu Foods recalled.

5.7    As a result of Defendants' acts and omissions Mr. Whaley and other Class members have suffered emotional and economic damage.

## VI.    CAUSES OF ACTION

### A.    Breach of Contract

6.1    Plaintiff realleges all prior allegations as though fully stated herein.

6.2    Plaintiff and Class members purchased pet food produced by the defendants based on the understanding that the food was safe for their pets to consume.

6.3    The pet food produced by the defendants was not safe for pets to consume and caused dogs and cats to become ill. The unsafe nature of the pet food constituted a breach of contract.

6.4    As a result of the breach Plaintiffs and Class members suffered damages which may fairly and reasonably be considered as arising naturally from the breach or may reasonably be supposed to have been in the contemplation of the parties, at the time they made the contract, as the probable result of the breach of it.

CLASS ACTION COMPLAINT - 6

MYERS & COMPANY, P.L.L.C.
1809 SEVENTH AVENUE, SUITE 700
SEATTLE, WASHINGTON 98101
TELEPHONE (206) 398-1188

**B.**     <u>Unjust Enrichment</u>

6.5     Mr. Whaley realleges all prior allegations as though fully stated herein.

6.6     Defendants were and continue to be unjustly enriched at the expense of Mr. Whaley and other Class members.

6.7     Defendants should be required to disgorge this unjust enrichment.

**C.**     <u>Unlawful, Deceptive and Unfair Business Practices</u>

6.8     Mr. Whaley realleges all prior allegations as though fully stated herein.

6.9     Defendants' sale of tainted pet food constitutes an unlawful, deceptive and unfair business act within the meaning of the Washington Consumer Protection Act, RCW 19.86 *et seq.*, and similar statutory enactments of other states (including consumer protection and consumer sales practice acts).

6.10    Defendants' sale of hazardous pet food has the capacity to deceive a substantial portion of the public and to affect the public interest.

6.11    As a result of Defendants' unfair or deceptive acts or practices Mr. Whaley and other class members suffered injuries in an amount to be proven at trial.

**D.**     <u>Breach of Warranties</u>

6.12    Mr. Whaley realleges all prior allegations as though fully stated herein.

6.13    Cat food and dog food produced by Menu Foods are "goods" within the meaning of Uniform Commercial Code Article 2.

6.14    Defendants' conduct as described herein constitutes breach of an implied or express warranty of affirmation.

6.15    Defendants' conduct as described herein constitutes breach of an implied warranty of merchantability.

CLASS ACTION COMPLAINT - 7

MYERS & COMPANY, P.L.L.C.
1809 SEVENTH AVENUE, SUITE 700
SEATTLE, WASHINGTON 98101
TELEPHONE (206) 398-1188

6.16    Defendants' conduct as described herein constitutes breach of an implied warranty of fitness for a particular purpose.

6.17    As a proximate result of the aforementioned wrongful conduct and breach, Mr. Whaley and other class members have suffered damages in an amount to be proven at trial. Defendants had actual or constructive notice of such damages.

E.    Negligent Misrepresentation

6.18    Mr. Whaley realleges all prior allegations as though fully stated herein.

6.19    Defendants owed Mr. Whaley and class members a duty to exercise reasonable care in representing the safety of its dog and cat foods.

6.20    Defendants falsely represented that its dog and cat food was safe for consumption by dogs and cats.

6.21    In reality, defendants' dog and cat food caused dogs and cats to become ill and, in some cases, to die.

6.22    Mr. Whaley and class members reasonably relied on the information provided by Defendants regarding the safety of its dog and cat food.

6.23    As a proximate cause of Defendants' false representations Mr. Whaley and other Class members suffered damages in an amount to be proven at trial.

## VII.    PRAYER FOR RELIEF

WHEREFORE, Mr. Whaley and Class members request that the Court enter an order of judgment against Defendants including the following:

A.    Certification of the action as a class action pursuant to Rule 23(b)(3) of the Federal Rules of Civil Procedure with respect to the claims for damages, and appointment of Plaintiffs as Class Representatives and their counsel of record as Class Counsel;

CLASS ACTION COMPLAINT - 8

1   B.      Actual damages (including all general, special, incidental, and consequential

2   damages), statutory damages (including treble damages), punitive damages (as allowed by the

3   law(s) of the states having a legally sufficient connection with defendants and their acts or

4   omissions) and such other relief as provided by the statutes cited herein;

5   C.      Prejudgment and post-judgment interest on such monetary relief;

6   D.      Equitable relief in the form of restitution and/or disgorgement of all unlawful or

7   illegal profits received by Defendants as a result of the unfair, unlawful and/or deceptive conduct

8   alleged herein;

9

10  E.      Other appropriate injunctive relief;

11  F.      The costs of bringing this suit, including reasonable attorneys' fees; and

12  G.      Such other relief as this Court may deem just, equitable and proper.

13  DATED this 19th day of March, 2007.

14                          MYERS & COMPANY, P.L.L.C.

15                          Attorneys for Plaintiffs and Class members

16

17

18                          By:___/s/ Michael David Myers_____
                                Michael David Myers
19                              WSBA No. 22486
                                Myers & Company, P.L.L.C.
20                              1809 Seventh Avenue, Suite 700
                                Seattle, Washington 98101
21                              Telephone: (206) 398-1188
                                Facsimile: (206) 400-1112
22                              E-mail: mmyers@myers-company.com

23

24

25

CLASS ACTION COMPLAINT - 9                     MYERS & COMPANY, P.L.L.C.
                                               1809 SEVENTH AVENUE, SUITE 700
                                               SEATTLE, WASHINGTON 98101
                                               TELEPHONE (206) 398-1188

# Exhibit F

TRUJILLO RODRIGUEZ & RICHARDS, LLC
Donna Siegel Moffa, Esquire
Lisa J. Rodriguez, Esquire
8 Kings Highway West
Haddonfield, NJ 08033
TEL: (856)795-9002
FAX: (856)795-9887

BERGER & MONTAGUE, P.C.
Sherrie R. Savett, Esquire
Michael T. Fantini, Esquire
Russell D. Paul, Esquire
1622 Locust Street
Philadelphia, PA 19103
(215) 875-3000

Attorneys for Plaintiffs and the Class

---

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| Jared Workman, and Mark and Mona Cohen, on behalf of themselves and all others similarly situated, | : |
| Plaintiffs, | : Civil Action No. _____ |
| vs. | : |
| Menu Foods Limited, Menu Foods Inc., and Menu Foods Midwest Corporation | : COMPLAINT - CLASS ACTION JURY TRIAL DEMANDED |
| Defendants, | : |

---

### PLAINTIFFS' CLASS ACTION COMPLAINT

Plaintiffs Jared Workman, and Mark and Mona Cohen, by their attorneys, allege upon information and belief, the following:

1.    This class action is brought, and these proceedings instituted, to redress the harms resulting from the manufacture, production, and sale by Menu Foods Limited, Menu Foods Inc. and Menu Foods Midwest Corporation of dog and cat food marketed under over 90 brand names.

Plaintiffs make the following allegations, except as to the allegations specifically pertaining to Plaintiffs and Plaintiffs' counsel, based upon the investigation undertaken by Plaintiffs' counsel, which included, inter alia, review and analysis of Defendant's website, press releases, news articles, and pleadings filed in other suits.

## PRELIMINARY STATEMENT

2.    Defendants manufacture and sell over 90 brands of pet food for cats and dogs, including popular labels like Iams and Eukanuba and private label brands sold at large retail chains. On March 16, 2007, the parent company of Menu Foods Limited issued a press release announcing the recall of 60 million cans of contaminated dog and cat food manufactured between December 3, 2006 and March 6, 2007. The recall covers the "cuts and gravy" style pet foods in cans and pouches manufactured at two of Menu Foods Limited's U.S. manufacturing facilities - Menu Foods, Inc. and Menu Foods Midwest Corporation, located in New Jersey and Kansas, respectively.

3.    The recalled pet food that Plaintiffs and Class members purchased and fed to their pets caused their pets to become ill through kidney disease, requiring veterinarians visits, medications, hospitalizations and, in some cases, burials of those pets that died due to renal failure caused by the contaminated pet food. Many pets that consumed the recalled tainted food now require ongoing monitoring of their health to ascertain the extent of the damage to their kidneys.

4.    Plaintiffs here seek damages, injunctive relief, attorneys' fees, and costs against Defendants.

## PARTIES

5.    Plaintiff Jared Workman resides at 1150 Unit D, Monroe Drive, Boulder, CO, 80303. Plaintiff Workman purchased and fed his cat Iams pet food that was manufactured by Defendants during the Class Period. This cat, named Seth, became ill with kidney disease, was hospitalized, and subsequently died of acute renal failure. In addition to the cost of purchasing the contaminated food, Plaintiff Workman incurred economic costs in connection with the medical treatment and burial of his cat, as well as continuous medical monitoring of his other two cats.

6.    Plaintiffs Mark and Mona Cohen reside at 1415 Brighton Street, Philadelphia, PA 19111. Plaintiffs purchased and fed their dog Iams pet food that was manufactured by Defendants during the Class Period. This dog, named Cookie, subsequently developed symptoms of acute renal failure. In addition to the cost of purchasing the contaminated food, the Cohens incurred economic costs in connection with the medical treatment and damage to personal property caused by their dog's illness.

7.    Defendant Menu Foods Limited is a Canadian corporation located at 8 Falconer Dr., Mississauga, ON , L5N 1B1. Menu Foods Limited has done business throughout the United States and in the State of New Jersey at all times relevant to this lawsuit.

8.    Defendant Menu Foods Inc. is a New Jersey corporation, with its headquarters at 9130 Griffith Mogan Lane, Pennsauken, NJ 08110. Menu Foods Inc. has done business throughout the United States and in the State of New Jersey at all times relevant to this lawsuit. Menu Foods Inc. is a wholly-owned subsidiary of Menu Foods Limited and manufactures pet food for distribution in the United States.

9.    Defendant Menu Foods Midwest Corporation is a Delaware corporation, with its headquarters at PO Box 1046, 1400 East Logan Ave., Emporia, KS 66801. Menu Foods Midwest Corporation has done business throughout the United States and in the State of New Jersey at all times relevant to this lawsuit. Menu Foods Midwest Corporation is a wholly-owned subsidiary of Menu Foods Limited and manufactures pet food for distribution in the United States.

10.    The events complained of occurred throughout the United States and in the State of New Jersey.

## JURISDICTION AND VENUE

11.    This Court has original jurisdiction over this class action under 28 U.S.C. §1332(d)(2), (d) (5)(B), (d) (6) because (i) there are 100 or more class members, (ii) there is an aggregate amount in controversy of at least $5,000,000, exclusive of interest and costs, and (iii) there is minimal diversity because at least one plaintiff and one defendant are citizens of different states.

12.    Venue in this Court is proper in that Defendants transacted business in this county and the conduct complained of occurred in this district, as well as elsewhere in New Jersey.

## STATEMENT OF FACTS

13.    Defendant Menu Foods Limited purports to be the leading North American private label/contract manufacturer of wet pet food products sold by supermarket retailers, mass merchandisers, pet specialty retailers, and other retail and wholesale outlets. In 2006, Menu Foods Limited produced more than one billion containers of pet food.

14.    Defendant Menu Foods Limited is the parent company of, and wholly-owns, both

4

Defendant Menu Foods, Inc. ("MFI"), located in Pennsauken, New Jersey, and Defendant Menu Foods Midwest Corporation ("MFMC"), located in Emporia, Kansas. MFI and MFMC are two of Menu Food Limited's manufacturing facilities in the United States.

15.    At least from December 3, 2006 through March 6, 2007, Defendants failed to adhere to proper safety standards and failed to ensure that the pet food they manufactured and sold was free from contamination. More specifically, on March 16, 2007, the parent company of Menu Foods Limited issued a press release whereby it announced the recall of a portion of the dog and cat food manufactured between December 3, 2006 and March 6, 2007. The recall covers the "cuts and gravy" style pet foods in cans and pouches manufactured at two of Menu Food Limited's facilities - MFI located in Pennsauken, New Jersey and MFMC in Emporia, Kansas.

16.    Reportedly, 60 million cans and pouches of the pet food were recalled.

17.    The recalled pet food was sold under more than 90 brand names, including popular labels like Iams and Eukanuba and private label brands sold at large retail chains. A list of all brand names that were recalled is contained on the Company's website and is attached hereto as Addendum A. Retailers who sold the contaminated products include Ahold USA, Kroger Co., Safeway, Wal-Mart, Pet Smart, and Pet Value, among others.

18.    Menu Foods Limited acknowledges receiving complaints in the United States which raised concern about pet food manufactured since early December 2006, and its impact on the renal health of the pets consuming the products. The Company has discovered that timing of the production associated with these complaints coincides with the introduction of an ingredient from a new supplier.

19.    Stephen Sundlof, the Food and Drug Administration's (FDA) chief veterinarian,

said that Menu Foods began its own taste tests of its pet food beginning February 27, 2007 in approximately 40 to 50 pets. Within a few days, animals began showing signs of sickness. In early March 2007, 7 animals died. Menu Foods announced its recall weeks later, on March 16, 2007.

20.     The FDA has reported that it received numerous calls and complaints from owners of sick and deceased pets, who flooded phone lines at State FDA offices, as well as calls from veterinarians and pet food companies. See Los Angeles Times, March 20, 2007.

21.     To date, there are 15 confirmed death. The FDA expects the death toll to rise.

22.     The FDA said that the investigation is focused on problems with wheat gluten, which Menu Foods Limited said had been coming from a new supplier. Wheat gluten is a source of protein and was used to thicken the gravy in the pet food.

23.     Plaintiff Jared Workman owned a cat named Seth. During December 2006, Plaintiff Workman fed his cat Iams pet food, as well as other brand name cat foods which are now listed on the Company's recall list as contaminated products.

24.     In December 2006, Plaintiff Workman noticed that his cat, Seth, was acting strangely. He was lethargic and eating less than usual. Plaintiff called his cat veterinarian, who came to the house to perform blood work. The vet reported that Seth was dying of kidney failure. Plaintiff Workman then took Seth to an animal hospital in Greeley, Colorado. After several days in the hospital, it became clear that Seth was most likely suffering from acute renal failure. After about one week in the hospital, and despite constant medical treatment, Seth died.

25.     In addition to Plaintiff Workman suffering emotional distress from the loss of his cat, he spent approximately $2,500 in veterinarian bills and burial costs, which was not covered

6

by insurance. In addition, Plaintiff Workman spend almost $300 to have his other two cats

tested, and will incur additional costs to have them continually monitored. In addition to these

costs, Plaintiff Workman has not received any refunds for the cost of the contaminated pet food

that he initially purchased. Finally, he estimates that it will cost him approximately $1,000 to

purchase a new cat.

26.    Plaintiffs Mark and Mona Cohen own an 11 month old dog named Cookie that is

a Yorkie-Bijain mix. Beginning January 2007, the Cohens' dog Cookie became violently ill

with severe vomiting. The Cohens had been feeding Cookie Iams dog food.

27.    In January and February 2007, Cookie's condition worsened and Cookie

developed symptoms of kidney disease, including vomiting, lethargy, excessive thirst, loss of

appetite and dehydration. The Cohens took Cookie to the veterinarian on four separate

occasions, including a midnight visit on February 9, 2007 to a veterinarian emergency room

which required an x-ray at an additional cost of $300.

28.    Although the Cohens' suspected that the Iams food might be involved in Cookie's

condition, they were assured by their salesperson at PetSmart that this was unequivocally not the

case and that Cookie should not be switched to a different dog food. The Cohens, however,

insisted a switch be made, and purchased, at the recommendation of their PetSmart salesperson,

a dog food under the brand name Nutro. Both Iams and Nutro were manufactured and recalled

by Defendants.

29.    Cookie is currently on an anti-nausea medication called Reglin and requires

additional veterinarian visits and monitoring of her kidney functions.

30.    In addition to suffering emotional distress, the Cohens have incurred the costs of

7

medical bills not covered by their pet insurance, prescription medication bills, damage to their personal property including rugs and carpets caused by their's pet's illness, and the costs of future medical monitoring of their dog.

31.    As a result of Defendants' wrongful actions, Plaintiffs and Class members have sick or deceased pets, and have suffered economic damages, including, but not limited to, the costs of the recalled pet food, the costs of medical treatment for their pets, burial costs, the costs to replace their pets, and the costs to replace or clean personal property damaged as a result of their pets' illnesses.

32.    In addition, their pets will require continuous medical monitoring to gauge the long-term effects of the contaminated pet food on their kidney functions and overall health. Therefore, because the precise impact on the health of class members' pets is not currently known, Plaintiffs and the Class seek the cost of medical monitoring for their pets.

## CLASS ACTION ALLEGATIONS

33.    Plaintiffs bring this action on their own behalf and on behalf of all other persons similarly situated.

34.    The class which Plaintiffs seek to represent are composed of all persons in the United States who purchased any of the pet food brands manufactured by Defendants during the period commencing December 3, 2006, and ending March 6, 2007 (the "Class Period") that were recalled by Defendants.

35.    The class is composed of thousands, and possibly millions, of persons, the joinder of whom is not practicable. The disposition of their claims in a class action will benefit both the parties and the Court. Defendants have recalled 60 million cans of pet food that it sold

8

throughout the United States during the Class Period, and thus the Class is sufficiently numerous to make joinder impracticable, if not impossible.

36.    There are questions of fact and law which are common to all members of the class, including, inter alia, the following:

1.    Whether Defendants breached any express or implied warranties when they manufactured and sold the recalled pet food;

2.    Whether Defendants' negligently manufactured and sold the recalled pet food; and

3.    Whether the Class has been damaged, and if so, the appropriate measure of damages including the nature of the equitable relief to which the class is entitled.

37.    The above common issues of fact and law predominate over any arguable individualized issues.

38.    Plaintiffs' claims are typical of the claims of the other members of the class because Plaintiffs' and all of the Class members' damages arise from and were caused by having purchased and fed the recalled pet food to their pets. As a result, the evidence and the legal theories regarding Defendants' alleged wrongful conduct are identical for Plaintiffs and all of the Class members.

39.    Plaintiffs will fairly and adequately protect the interests of the members of the Class, and Plaintiffs have no interests which are contrary to or in conflict with those of the Class they seek to represent. Plaintiffs have retained competent counsel experienced in class action litigation to further ensure such protection and to prosecute this action vigorously.

40.    The prosecution of separate actions by individual members of the class would create a risk of inconsistent or varying adjudications with respect to individual members of the

9

class, which would establish incompatible standards of conduct for the party opposing the class and would lead to repetitious trials of the numerous common questions of facts and law. Plaintiffs do not believe that any difficulty will be encountered in the management of this litigation that would preclude its maintenance as a class action. Plaintiffs believe and therefore aver that claims are small in relation to the costs of an individual suit, and a class action is the only proceeding pursuant to which Class members can, as a practical matter, recover. As a result a class action is superior to other available methods for the fair and efficient adjudication of this controversy.

41.    Proper and sufficient notice of this action may be provided to the Class members through notice published in appropriate publications.

42.    Plaintiffs and the members of the Class have suffered irreparable harm and damages as a result of the Defendants' wrongful conduct as alleged herein. Absent representative action, Plaintiffs and the members of the Class will continue to suffer losses, thereby allowing these violations of law to proceed without remedy.

## COUNT I - BREACH OF EXPRESS WARRANTY

43.    Plaintiffs incorporate by reference the preceding paragraphs as if they were fully set forth herein.

44.    Defendants expressly warranted that the recalled brands of pet food were, in fact, ingestible food that was safe for consumption by dogs and cats.

45.    In addition, Defendants made numerous express warranties about the quality of its food and its manufacturing facilities. For example, Menu Foods touts the claim that it "manufacture[s] the private-label wet pet-food industry's most comprehensive product program

10

with the highest standards of quality" and it operates "state-of-the-art" manufacturing facilities in the United States and Canada.

46.     Members of the Class were induced by Defendants' labeling, advertising and marketing the recalled brands of pet food as "food" to rely upon said express warranty, and did so rely in purchasing the recalled brands of pet food and feeding them to their pets.

47.     In reliance on Defendants' untrue warranties, Plaintiffs and the Class purchased the recalled pet food and fed that food to their pets.

48.     Plaintiffs and members of the Class sustained damages as a proximate result of said breach of warranty.

### COUNT II - BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY

49.     Plaintiffs incorporate by reference the preceding paragraphs as if they were fully set forth herein.

50.     Defendants are merchants pursuant to sections 2-104 and 2-314 of the Uniform Commercial Code with respect to pet foods.

51.     Through Defendants' marketing, labeling, and sales, Defendants impliedly warranted that the recalled pet food, which was sold to Plaintiffs and Class members and fed to their pets, was fit for the ordinary purpose for which it was intended, namely, to safely feed and nourish pets without any resulting negative health effects, pursuant to section 2-314 of the Uniform Commercial Code.

11

52.     Through Defendants' marketing, labeling, and sales, Defendants knew that Plaintiffs and Class members would purchase the recalled pet food at issue for the ordinary purpose of feeding their pets.

53.     Defendants manufactured, labeled, advertised, sold, and distributed the recalled pet foods at issue for the ordinary purpose for which it was purchased by Plaintiffs.

54.     Plaintiffs and Class members purchased and used the recalled pet foods for the ordinary purposes for which such goods are sold, namely feeding them to their pets.

55.     Plaintiffs and Class members relied upon Defendants' representations and claims in purchasing the recalled pet foods.

56.     The recalled pet foods purchased by Plaintiffs and Class members were unfit for their ordinary purpose when sold. In fact, such pet foods were contaminated and caused severe illness and/or death of the pets that consumed them. Therefore, Defendants breached the implied warranty of merchantability in the sale of the recalled pet foods at issue.

57.     Plaintiffs and members of the Class sustained damages as a proximate result of said breach of warranty.

### COUNT III - NEGLIGENCE

58.     Plaintiffs incorporate by reference the preceding paragraphs as if they were fully set forth herein.

59.     Defendants owed a duty to pet owners who purchased its products to ensure that their pet food was safe for pets to consume and free from contamination, such that no pets consuming these products would be injured or die as a result of such consumption.

60.     Defendants breached said duty as described herein above when they failed to

12