# EXHIBIT H

BEFORE THE JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

|  |  |
|---|---|
| IN RE PET FOOD<br>PRODUCTS LIABILITY LITIGATION | )<br>)<br>)<br>) MDL Docket No. __1850__<br>)<br>)<br>) |

MEMORANDUM IN SUPPORT OF MOTION FOR
COORDINATED PRETRIAL PROCEEDINGS
PURSUANT TO 28 U.S.C. § 1407

_____Defendant submits this Memorandum in Support of their Motion for Coordinated Pretrial Proceedings Pursuant to 28 U.S.C. § 1407, respectfully showing this Court as follows:

I. SUMMARY OF ARGUMENT

These class action products liability lawsuits should be consolidated pursuant to 28 U.S.C. § 1407 (the "MDL Statute") because consolidation would (1) avoid potential inconsistent rulings regarding class certification; (2) prevent unduly burdensome duplicative discovery that

1

would necessarily result from proceeding with each of these actions separately; (3) make it more convenient and efficient for the parties to produce documents and witnesses in connection with pretrial discovery proceedings; and (4) otherwise promote the just and efficient conduct of the actions by ensuring centralized oversight of pretrial proceedings by an experienced district court.

Defendants seek transfer to the United States District Court for the Northern District of Illinois before the Honorable Wayne R. Andersen. This litigation has been national in scope from its inception as at least sixty (60) class action lawsuits have been filed in jurisdictions from California to Maine in less than one (1) month. The Northern District of Illinois is the most appropriate forum because it is geographically centrally located and easily accessible by the parties by two (2) airports with direct public transportation to downtown Chicago.

Defendant respectfully requests that the pending class action lawsuits as well as all future tag-along actions be transferred to the Honorable Wayne R. Andersen. Judge Andersen is an appropriate transferee Judge with prior MDL experience as he recently completed the handling of *In re America Online, Inc.*, MDL number 1411. In addition, one of the first class action lawsuits, which was filed on March 20, 2007, *Majerczyk v. Menu Foods, Inc.*, case number 1:07-cv-01543, was assigned to Judge Andersen.

## II. FACTUAL AND PROCEDURAL BACKGROUND

On March 16, 2007, Menu Foods issued a voluntary recall of cans and pouches of its "cuts and gravy" style pet food manufactured at two of Menu Foods' facilities. On the same day, the Food and Drug Administration ("FDA"), in cooperation with Menu Foods, initiated an investigation into the cause of consumer complaints following their pets' use of Menu Foods' cuts and gravy products. The initial recall included pet food that was manufactured at two of

Menu Foods' facilities between December 3, 2006 and March 6, 2007.

On March 30, 2007, the FDA held a news conference informing consumers that melamine, a chemical used in fertilizers in Asia, was found in wheat gluten imported from China. On April 5, 2007, Menu Foods voluntarily expanded the recall to include pet food products manufactured at the two plants from November 8, 2006 through December 2, 2006. Menu Foods expanded the recall to include products manufactured with wheat gluten supplied by ChemNutra, Inc., after that former supplier of wheat gluten to Menu Foods announced a recall of all wheat gluten imported from a Chinese company, Xuzhou Anying Biologic Technology Development Co. Ltd. ("Xuzhou Anying"). Four other pet food manufacturers (Hill's Pet Nutrition, Del Monte Pet Products, Nestle Purina PetCare Company, and Sunshine Mills Company) initiated recalls of their products because they received contaminated wheat gluten from ChemNutra. On April 10, 2007, Menu Foods again expanded the recall to include certain products manufactured at its plant in Streetsville, Ontario, Canada after learning that this plant received a shipment of contaminated wheat gluten from Menu Foods' Emporia, Kansas plant.

Initial product testing by the New York State Department of Agriculture reported the presence of aminopterin, a form of rat poison, in the Menu Foods' cuts and gravy products. Currently, no other laboratory has been able to validate these findings. In addition, on March 30, 2007, the FDA announced that researchers at Cornell University located melamine in the finished product that was the subject of the recall. Researchers also found melamine in samples of wheat gluten that Menu Foods purchased from ChemNutra. Menu understands ChemNutra imported the wheat gluten from Xuzhou Anying in China. Researchers did not find melamine in wheat gluten that Menu Foods had purchased from other suppliers. According to the FDA, it is "very

3

unusual" to find melamine in wheat gluten. Menu Foods has fully cooperated with the FDA throughout its investigation.

Immediately after Menu Foods announced the recall of its product, dozens of class action lawsuits were filed across the country. The first three (3) class action complaints were filed on March 19, 2007. Currently, there are at least sixty (60) class action complaints on file from coast to coast and the number increases daily. Plaintiffs' allegations, which vary from state to state, generally include: strict products liability; breaches of express and implied warranties; negligence; violation of unfair or deceptive trade practices acts; breach of contract; negligent misrepresentation; fraud; and unjust enrichment. Plaintiffs' alleged damages, which also vary from state to state, include: the cost of veterinarian bills; the cost of the product; medical monitoring damages; punitive damages; disposal or burial fees; emotional and/or psychological trauma; and the pecuniary value of deceased pets.

All class action lawsuits are in the earliest stages of litigation, and there has yet to be service on Defendants in a majority of cases. The Defendants have filed motions to stay in many jurisdictions, and anticipate filing motions to stay in the remaining jurisdictions in the coming days and weeks. Accordingly, transfer and consolidation at this stage would allow a single court to manage and coordinate the timing and scope of discovery, as well as make one uniform ruling regarding class certification.

### III. ARGUMENT AND CITATION OF AUTHORITIES

**A.   Coordination Under the MDL Statute Would Promote the Just, Efficient and Prompt Resolution of the Pet Food Products Liability Lawsuits.**

The MDL Statute was designed to insure the just, efficient, and consistent conduct and

4

adjudication of actions pending in multiple districts by providing for the centralized management of pretrial proceedings under a single court's supervision. *In re Tri-State Crematory Litig.*, 206 F. Supp. 2d 1376 (J.P.M.L. 2002) (granting motion to transfer because "centralization of the actions pending in federal court will facilitate coordination with the numerous related actions pending in various state courts").

Transferring multiple actions to a single court pursuant to Section 1407 is encouraged where, as here, it will eliminate the possibility of inconsistent rulings by courts on matter such as class certification. *In re Certain Teed Corp. Roofing Shingle Prods. Liab. Litig.*, 2007 WL 549356 (J.P.M.L. 2007). *See In re LLRICE 601 Contamination Litig.*, 466 F. Supp. 2d 1351 (J.P.M.L. 2006) (("Certification under Section 1407 is necessary in order to eliminate duplicative discovery, prevent inconsistent pretrial rulings (especially with respect to questions of class certification), and conserve the resources of the parties, their counsel and the judiciary")). Transfer and consolidation or coordination will also prevent the duplication of written discovery and depositions; and conserve the resources of the parties, their counsel and the judiciary. *In re Temporomandibular Joint (TMJ) Implants Prods. Liab. Litig.*, 844 F. Supp. 1553, 1554 (J.P.M.L. 1994). Indeed, the Judicial Panel on Multidistrict Litigation ("Panel") repeatedly has found that product liability cases such as these should be transferred and consolidated for coordination in a single court. *In re Ortho Evra Prods. Liab. Litig.*, 422 F. Supp. 2d 1379, 1381 (J.P.M.L. 2006).

> **B.** **Transfer to the Northern District of Illinois, Eastern Division, to the Honorable Wayne Andersen will insure the just, efficient and consistent conduct and adjudication of actions pending in multiple districts.**

In determining the most appropriate transferee forum, this Panel considers the following

5

factors: (1) the convenience of the parties and witnesses; (2) the relative degree of progress achieved in actions pending in various districts; (3) the caseloads of the proposed transferee courts; (4) the location of the parties, witnesses and documents; and, when no clear choice emerges from the foregoing, (5) the preference of the majority of the parties. *In re New Mexico Natural Gas Antitrust Litig.*, 482 F.Supp. 333, 337 (J.P.M.L. 1979). Based upon these considerations, the Northern District of Illinois is the most suitable forum for consolidation.

### 1. The Convenience of the Parties and Witnesses Favors Consolidation in the Northern District of Illinois.

In determining the appropriate transferee court, the Panel finds that "the geographical location of the transferee court is especially relevant when counsel must travel from distant parts of the country." *In re Air Fare Litig.*, 322 F. Supp. 1013 (J.P.M.L. 1971). The Panel favors transfer to venues that are relatively accessible by parties and witnesses. *In re Farmers Ins. Exch. Representatives' Overtime Pay Litig.*, 196 F. Supp. 2d 1373, 1374 (J.P.M.L. 2002).

As more fully explained below, the Panel frequently transfers cases of a national scope to a district court that is centrally located. *In re Government Auto Fleet Sales*, 328 F. Supp. 218 (J.P.M.L. 1971). On March 30, 2007, Plaintiff, Shirley Sexton, filed the first motion for transfer and consolidation pursuant to 28 U.S.C. § 1407 arguing that the Central District of California is the appropriate transferee forum.[1] Plaintiff, Christina Troiano, seeks transfer to the Southern District of Florida. In the "Whaley" response to Plaintiff's MDL Motion, Plaintiffs argue for

---

[1] While the "Conclusion" paragraph to Ms. Sexton's MDL motion requests transfer to the District of Massachusetts, Ms. Sexton's Motion argues for transfer to the Central District of California. Defendant believes that this was a typographical error and that Plaintiff seeks transfer to the Central District of California.

6

transfer and consolidation to Western District of Washington.[2] Plaintiffs, Jayme Pittsonberger, David Carter, and Jim Bullock, seek transfer to the District of New Jersey. Finally, Plaintiffs, Jared Workman, Mark and Monah Cohen, and Peggy Schneider also seek transfer to the District of New Jersey. The Northern District of Illinois is the only centrally located district court that has been suggested to date by any of the parties.

"The Panel has often acknowledged that Chicago's central location commends transfer to the Northern District of Illinois when a litigation is nationwide in scope." *In re Corrugated Container Antitrust Litig.*, 441 F. Supp. 921 (J.P.M.L.). *See In re Gov. Auto Fleet Sales*, 328 F. Supp. 218, 220 (J.P.M.L. 1971) (transferring case to the Northern District of Illinois because it is centrally located and easily accessible from all parts of the country). *See also In re America Online, Inc., Version 6.0 Software Litig.*, 162 F. Supp. 2d 690 (J.P.M.L. 2001) (transferring case to the Northern District of Illinois before the Honorable Wayne R. Andersen because the Northern District of Illinois is geographically central and would be a convenient location for a litigation already nationwide in scope). In *re Gov. Auto Fleet Sales* involved twelve (12) class action lawsuits filed in four (4) districts from Washington to New York. *Id.* Plaintiffs sought transfer to the Southern District of New York and Defendants sought transfer to the Eastern District of Michigan. *Id.* at 219. The Panel held that the cases should be transferred to a more central location because "it is quite likely that other similar actions will be filed by other states in other districts as this litigation becomes more national in scope." *Id.* at 220. The Panel transferred the cases to the Northern District of Illinois because "it is centrally located and is

---

[2] The Whaley Motion if filed on behalf Plaintiffs' Tom Whaley, Stacey Heller, Toinette Robinson, David Rapp, Cecily and Terrence Mitchell, Suzanne E. Johnson, Craig R. Klemann, Audrey Kornelius, Barbara Smith, Michele Suggett and Don James.

7

easily accessible from all parts of the country." *Id.*

The geographical central location of the Northern District of Illinois sets this court apart from other jurisdictions. The Northern District of Illinois has one of the world's largest and most accessible airports in the world with direct flights to all major U.S. cities which, when coupled with Chicago's rail transport system ("the L"), which runs directly to and from both Chicago airports and directly to the Northern District of Illinois courthouse, makes the Northern District of Illinois an ideal choice for MDL proceeding from a convenience standpoint. Chicago's O'Hare international airport is a mere seventeen (17) miles from Chicago's Loop and is the second busiest airport in the world. O'Hare airport has flights to and from more than sixty (60) foreign destinations. This is a key factor as this litigation could involve international parties and witnesses including Xuzhou Anying, which is located in China. Chicago is also home to Midway airport which services flights from many U.S. cities. Midway is only ten (10) miles from downtown Chicago and is a thirty (30) minute trip on Chicago's "Orange Line" train.

### 2. The Northern District of Illinois is Well Suited to Manage this Litigation.

Through the use of electronic filing, as well as other use of other technological aids, the docket in the Northern District of Illinois is sufficiently current to allow the court to secure an expeditious conclusion to this litigation. The Northern District of Illinois has been fully online for some time with electronic docket and filing, which will greatly aid in the efficiency with which this matter is managed. Judge Andersen's courtroom is the state of the art electronically and audio-visually, and is equipped with Real Time Court Reporting, teleconferencing and video conferencing capabilities. These features will further assist the court in managing this litigation

to an expeditious conclusion.

The Northern District of Illinois has the experience necessary to coordinate the prompt resolution of this litigation. To date, at least sixty (50) multidistrict litigation matters have been consolidated in this jurisdiction. Currently, there are fifteen (15) multidistrict litigation matters pending before ten (10) judges in the Northern District of Illinois. As stated above, Judge Wayne R. Andersen recently handled *In re America Online, Inc.* (MDL number 1412). The Northern District of Illinois and Judge Andersen clearly have the capability and experience to handle the pending class action lawsuits.

C.   **The District of New Jersey is Not An Appropriate Forum.**

As stated above, Plaintiff, Jayme Pittsonberger, argued that these class action lawsuits should be transferred to the District of New Jersey. Plaintiff's Memorandum of Law in support of her Motion for Transfer and Coordination states that, "Transfer to the District of New Jersey also is appropriate because fifteen (15) of the twenty-eight (28) actions were filed there." Similarly, the Memorandum of Law filed by Plaintiffs, Jared Workman, Mark and Mona Cohen, and Peggy Schneider, who also argue that the District of New Jersey is the appropriate transferee forum, states "Of the 39 lawsuits filed across the Country to date, more complaints (16) were filed in the District of New Jersey than in any other district."

In reality, Plaintiffs have attempted to influence the Judicial Panel's decision regarding the appropriate transferee forum by flooding the District Court of New Jersey with class action complaints arguing for the certification of a nationwide class in New Jersey. It is important to note that of the twenty-seven (27) class action complaints currently filed in New Jersey, only two (2) named class action plaintiffs are residents of New Jersey. The other named class action

9

plaintiffs are residents of: Massachusetts, Pennsylvania, Colorado, Florida, North Carolina, New York, Michigan, California, Oregon, Virginia, Washington and Connecticut. In addition, thirteen (13) of the twenty-seven (27) class action complaints were filed by the firm of Lite, Depalma, Greenberg & Rivas, L.L.C. As the Plaintiffs named in these class actions complaints are not residents of New Jersey, transfer to the District of New Jersey, which is not centrally located, would not serve the convenience of the parties and witnesses.

Plaintiffs also argue that Menu Foods has a significant nexus to New Jersey stating that "the manufacturing facilities where much of the contaminated pet food was processed and manufactured is located in the District of New Jersey." While some of the pet food was manufactured in New Jersey, most of the product was manufactured in Olympia, Kansas and Streetsville, Ontario. In actuality, the location of the manufacturing facilities militate towards a mid-west location. The Food and Drug Administration's ("FDA") comprehensive testing of the pet food and wheat gluten suspected of causing the contamination has been based in Kansas. In addition, the suspected supplier of the contaminated wheat gluten, Xuzhou Anying, shipped wheat gluten from China directly to ChemNutra Inc.'s Kansas City warehouse. Two (2) other companies who may have received adulterated wheat gluten from ChemNutra, Hill's Pet Nutrition and Del Monte, both have manufacturing plants in Kansas. The state with the most connection to the facts is not New Jersey, but Kansas.

Menu Foods is the leading North American private-label/contract manufacturer of wet pet food products. Menu Foods' pet food is sold by supermarket retailers, mass merchandisers, pet specialty retailers and other retail and wholesale outlets nationally and internationally. Because the facts are both national and international no single state has a commanding role in the case.

10

Therefore, the central location of the Northern District of Illinois will serve the convenience of the parties and witnesses.

    **D.**   **Co-Defendants and Potential Defendants in Future Tag Along Actions Agree that the Pet Food Products Liability Actions Should Be Transferred to the Northern District of Illinois.**

Counsel for Menu Foods have spoken to several parties who are currently joined as co-defendants and who may be joined in future tag along actions as defined in Rule 1.1 of the Rules of Procedure of the Judicial Panel on Multidistrict Litigation. Co-defendant, Wal-Mart Stores, Inc., joins Menu Foods in arguing that the Pet Food Products Liability lawsuits should be transferred to the Northern District of Illinois for consolidation or coordination. In addition, Procter & Gamble Pet Care and its related entities informed Menu Foods' attorneys that they have no objection to Menu Foods' request for transfer and consolidation or coordination to the Northern District of Illinois.

## IV. CONCLUSION

For the foregoing reasons, the coordination or consolidation of these cases would further the convenience of the parties and witnesses and would promote the just and efficient conduct of the actions. 28 U.S.C. § 1407(a). Therefore, movant respectfully request that this Panel enter an order transferring the actions listed in Exhibit A to the United States District Court for the Northern District of Illinois, Eastern Division before the Honorable Wayne R. Andersen for consolidated and coordinated pretrial proceedings pursuant to the MDL statute.

Respectfully submitted,

By:_____
        Edward B. Ruff, III

<u>Counsel for Menu Foods</u>

Edward B. Ruff, III
Pretzel & Stouffer, Chartered
1 South Wacker Drive, Suite 2500
Chicago, Illinois 60606
(312) 346-1973

David L. Lillehaug
Fredrickson & Byron, P.A.
200 South Sixth Street
Suite 4000
Minneapolis, Minnesota 55402-1425