# EXHIBIT L

Dockets.Justia.com

## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | |
|---|---|
| DAWN MAJERCZYK individually and on behalf of a class of similarly situated individuals, ) ) ) | |
| Plaintiff, ) ) | No.  1:07-CV-01543 |
| v. ) ) ) | Judge Wayne R. Andersen |
| MENU FOODS, INC., a New Jersey Corporation, ) MENU FOODS INCOME FUND, MENU FOODS ) OPERATING TRUST, unincorporated open-ended ) trusts established under Ontario law, MENU ) FOODS LIMITED PARTNERSHIP, a limited ) partnership organized under Ontario law, MENU ) FOODS ACQUISTION INC., MENU FOODS ) LIMITED, business corporations organized under ) Ontario law, MENU FOODS HOLDINGS, INC., ) and MENU FOODS MIDWEST CORPORATION ) Delaware corporations. ) ) | **Jury Trial Demanded** |
| Defendants. ) | |

----------------------------------------------------------------x

### FIRST AMENDED CLASS ACTION COMPLAINT

Plaintiff Dawn Majerczyk brings this amended class action complaint against defendants Menu Foods, Inc., Menu Foods Income Fund, Menu Foods  Operating Trust, Menu Foods Limited Partnership, Menu Foods Acquistion Inc., Menu Foods Limited,, Menu Foods Holdings, Inc., and Menu Foods Midwest Corporation, (referred to collectively in the singular as "Menu Foods") to seek redress for herself and all other individuals injured by its sale of contaminated pet food throughout the United States.

### NATURE OF THE ORIGINAL CASE

1.    Menu Foods, one of the largest pet food manufacturers in the world, recently issued a series of mass recalls of approximately 100 brands of cat and dog food.

2.      That recall was issued – belatedly – as a result of evidence that the pet food in question was contaminated with a potentially lethal agent.

3.      Although it is still unclear what agents was (and may still be in) Menu Foods' pet food, results have revealed that there are at least two such agents – aminopterin, a folic acid inhibitor found in some rodenticides, and melamine proper.

4.      When ingested by an animal, the contaminated pet food can cause immediate renal failure, resulting in the complete shutdown of the animal's kidneys and, ultimately, its death.

## NATURE OF THE AMENDED ALLEGATIONS

5.      Since the filing of this action, there have been a number of significant developments meriting the amendment of the original complaint.

6.      First, over 200 people have specifically joined the instant lawsuit.

7.      Second, based on the information set out below, Plaintiff now believes and alleges that

        a.      Menu Foods knew or should have known that its pet food was contaminated with lethal agents as early as December 2006, and -- at the very latest -- by February 20, 2007.

        b.      Menu Foods understood well before it issued the recall that the contaminated food would likely cause serious illness and/or the death of thousands of pets throughout the country.

        c.      Menu Foods delayed in issuing the recall because it was more interested in putting short term profits above the interests of its customers and the

2

safety of their pets.

d.     Even after issuing the recall, and continuing after the instant lawsuit was filed, Menu Foods has not been up front with the public, both as to the number of pets inured as a result of its misconduct and information that the pet owners would need to know to determine whether their pets had, or continue to be, exposed to unsafe food.

8.     Menu Foods has further indicated – again after the instant lawsuit was filed – that it will systematically destroy the pet food it receives from the public, thus significantly hindering Plaintiff's ability to prove her case.

9.     Plaintiff brings this class action suit in order to redress the negligent, reckless, and intentional acts of the defendants and to obtain injunctive relief aimed at preventing the further destruction of critical evidence.

## PARTIES

10.     Plaintiff Dawn Majerczyk is a citizen of Illinois, residing in Cook County, Illinois.

11.     Defendant Menu Foods Income Fund (the "Fund") is an unincorporated open-ended trust established under Ontario law pursuant to a declaration of trust dated March 25, 2002. The Fund maintains its headquarters at 8 Falconer Drive, Streetsville, Ontario L5N 1B1. The Fund owns all the other Defendants through the Menu Foods Operating Trust.

12.     Defendant Menu Foods Operating Trust is an unincorporated open-ended trust established under Ontario law pursuant to a declaration of trust dated May 22, 2002. Menu Foods Operating Trust maintains its headquarters at 8 Falconer Drive, Streetsville, Ontario L5N

3

1B1. Menu Foods Operating Trust owns the remaining Defendants through the Menu Foods Limited Partnership.

13.    Defendant Menu Foods Limited Partnership is a limited partnership organized under Ontario law. Menu Foods Limited Partnership maintains its offices at 8 Falconer Drive, Streetsville, Ontario L5N 1B1. Menu Foods Limited Partnership owns the remaining Defendants through Menu Foods Acquistion Inc.

14.    Defendant Menu Foods Acquistion Inc. is, on information and belief, an Ontario business corporation which maintains its headquarters at 8 Falconer Drive, Streetsville, Ontario L5N 1B1. Menu Foods Acquisition Inc. owns the remaining Defendants through Menu Foods Limited.

15.    Defendant Menu Foods Limited is, on information and belief, an Ontario business corporation which maintains its headquarters at 8 Falconer Drive, Streetsville, Ontario L5N 1B1. Menu Foods Limited owns the remaining Defendants through Menu Foods Holdings, Inc.

16.    Defendant Menu Foods Holdings, Inc. is a Delaware corporation which owns Menu Foods, Inc. and Menu Foods Midwest Corporation. Menu Foods Holdings, Inc. maintains the Corporation Trust Company as its registered agent for service of process at Corporation Trust Center, 1209 Orange Street, Wilmington, DE 19801.

17.    Defendant Menu Foods, Inc. is a New Jersey corporation which, on information and belief, maintains its headquarters at 9130 Griffith Morgan Lane, Pennsauken, New Jersey 08110. On information and belief, Menu Foods, Inc. owns and operates a pet food manufacturing plant with 210,000 square feet of office/manufacturing/warehouse space, and 206,000 square feet of office/warehouse space in Pennsauken, New Jersey.

4

18.    Defendant Menu Foods Midwest Corporation is a Delaware corporation which,
on information and belief, maintains its headquarters at 1400 East Logan Avenue, Emporia,
Kansas 66801. On information and belief, Menu Foods Midwest Corporation operates a pet food
manufacturing plant with 430,000 square feet of office/manufacturing/warehouse space, and
155,000 square feet of office/warehouse space in Emporia, Kansas.

19.    Because at this time Plaintiff is ignorant of the respective roles of the Defendants
in the acts alleged herein, and because of the convoluted nature of the Defendants
interrelationships, Plaintiffs allege that all are responsible for the acts alleged herein, and
collectively refers to the Defendants in the singular as "Menu Foods."

20.    Menu Foods is the self-proclaimed "leading manufacturer of private-label wet pet
food in North America." It does business throughout the United States, including within the
Northern District of Illinois.

## JURISDICTION

21.    The Court has original jurisdiction over this complaint pursuant to 28 U.S.C.
§ 1332(d) because (a) plaintiff and numerious members of her putative class are citizens of states
different from those of which the defendants are citizens, (b) the amount in controversy exceeds
$5,000,000, exclusive of interests and costs, and (c) none of the jurisdictional exceptions
contained in 28 U.S.C. § 1332(d)(4)-(5) applies to the instant action.

## VENUE

22.    Venue is proper in this district under, *inter alia*, 28 U.S.C. §§ 1391(a)(1).

5

## FACTS

### *Menu Foods' Claims About The Quality of Its Pet Food*

23.     Menu Foods holds itself out to the public as a manufacturer of safe, nutritious, and high-quality dog and cat food.

24.     It makes numerous express warranties about the quality of its food and its manufacturing facilities.

25.     For example, Menu Foods touts the claim that it "manufacture[s] the private-label, wet pet-food industry's most comprehensive product program with the highest standards of quality" and it operates "state-of-the-art" manufacturing facilities in the United States and Canada.

26.     Menu Foods intended for pet owners to believe its statements and trust that its pet food is of first-rate quality.

### *Menu Foods' Initial Misconduct*

27.     In December 2006, Menu Foods begins to use a new supplier of wheat gluten from China named Xuzhou Anying Biologic Technology Development Company Ltd. ("Xuzhou"). Wheat gluten is used as a filler and binder in wet pet food, by providing a gelatinous consistency and thickening pet food "gravy." Melamine is used as a fertilizer in Asia and has several commercial and industrial uses.

28.     Menu Foods knew or should have known that there have been problems with wheat gluten coming out of China becoming contaminated with lethal agents.

6

29.     According to reports, Menu Foods may have first learned that its pet food was causing health problems to the pets who ate it in December of 2006. In any event, it had actual knowledge of same no later than February 20, 2007.

30.     On or about February 27, 2007, Menu Foods began testing its products on between 40 to 50 animals. Between 7 and 10 of those animals died shortly thereafter.

31.     On March 6, 2007, Menu Foods switched to a different supplier of wheat gluten.

32.     On March 16, 2007, Menu Foods announced a recall of approximately 42 brands "cuts and gravy" style dog food and 51 brands of "cuts and gravy" style cat food, all produced at Menu Foods' facilities between Dec. 3, 2006, and March 6, 2007.

33.     Although Menu Foods narrowed the scope of the recall to pet food manufactured in its Emporia, Kansas and Pennsauken, New Jersey facilities between December 3, 2006 and March 6, 2007, the recall nonetheless involved 60 million cans and pouches of cat and dog food.

34.     On March 30, 2007, Menu Foods asserted that the pet food manufactured in its Emporia, Kansas and Pennsauken, New Jersey facilities after March 6 is "safe and healthy" because it contains no melamine, no wheat gluten from Xuzhou, and that "those products not associated with the suspect wheat gluten performed very well and in a manner consistent with historic norms."

## MENU FOODS' MALFEASANCE AFTER THE RECALL

35.     Even then, its recall was conducted in a negligent manner. For example, both its website and the toll-free telephone number it provided to the public were frequently non-operational due to its failure to take adequate steps to ensure that the public would have access to the information it needed.

7

36.     Further, Menu Foods intentionally held back information necessary for the public to understand the full scope of the problem.

37.     As just one example, Menu Foods was hearing from thousands and thousands of people reporting that their pets had died as a result of the contaminated food. Nevertheless, it still sought to soft-peddle the crisis by participating in the creation of the impression that the food had resulted in only a handful of animal deaths.

38.     Menu Foods similarly has created mass confusion as to which of its products are safe and which are not. As a result, long after the recall, stores in America were and perhaps still are selling its contaminated pet food.

## MENU FOODS' DESTRUCTION OF EVIDENCE

39.     After this lawsuit was filed, Menu Foods quietly announced that it was collecting and then destroying the recalled pet food.

40.     It is unclear if Menu Foods is planning to destroy, or has already destroyed, unused food collected from members of Plaintiff's putative class.

41.     It is also unclear whether and how Menu Foods plans on testing that food prior to destroying.

42.     Regardless, by destroying any of the recalled pet food before it has been tested by an independent lab approved of by the Plaintiff and the Court, it is hindering Plaintiff's ability to prove her case.

## FACTS RELATING TO THE NAMED PLAINTIFF

43.     On or about March 10, 2007, Majerczyk purchased several pouches of Special Kitty Select Cuts from a Walmart store for her nine-year-old cat, Phoenix.

8

44.     Menu Foods is the manufacturer of Special Kitty Select Cuts.

45.     On March 16, 2006, shortly after ingesting Menu Food's cat food, Phoenix went into renal failure. Phoenix's kidneys shut down, and on March 17, 2007, he had to be put down.

46.     Majerczyk incurred over $300 in veterinary expenses relating to the attempts to save Phoenix's life.

47.     Phoenix had been with Majerczyk's family from birth.

48.     The loss was devasting not only to Majerczyk, but also to her seventeen-year-old son and fourteen-year-old daughter as well.

## CLASS ALLEGATIONS.

49.     Majerczyk brings this action, pursuant to FRCP 23(b)(3), on behalf of herself and a class (the "Class") consisting of herself and all others who purchased pet food in the United States that was ultimately subject to the March 16, 2007 Menu Foods recall or any subsequently announced recall.

50.     Upon information and belief, there are over 100,000 members of the Class such that joinder of all members is impracticable.

51.     Common questions of law and fact exist as to all members of the Class and predominate over questions affecting individual members. Common questions for the Class include:

(a)     Did Menu Foods act negligently in failing to prevent the contamination of its pet food?

(b)     Did Menu Foods act negligently or intentionally in failing to warn its customers in a timely and effective manner of the danger of its pet food?

9

(c)    Did Menu Foods' breach express and/or implied warranties relating to the sale of its pet food?

52.    Majerczyk will fairly and adequately protect the interests of the Class, her claims are typical of the claims of the members of the class, and she has retained counsel competent and experienced in class action litigation.

53.    A class action is superior to other available methods for fairly and efficiently adjudicating this controversy because, among other things, (a) joinder of all members of the class is impracticable, and (b) many members of the class cannot vindicate their rights by individual suits because their damages are small relative to the burden and expense of litigating individual actions.

## COUNT I

### (Breach of Warranties)

54.    Plaintiff incorporates by reference the foregoing allegations.

55.    Menu Foods breached express warranties to Plaintiff and violated the Uniform Commercial Code.

56.    Menu Foods breached implied warranties to Plaintiff and violated the Uniform Commercial Code.

57.    Menu Foods breached the implied warranty of merchantability.

58.    As a proximate cause of this misconduct, plaintiff and her class suffered actual damages, including without limitation the cost of the contaminated pet food and any resulting veterinary bills.

10

WHEREFORE, Plaintiff, on behalf of herself and the Class, prays for the following relief:

1.    An order certifying the Class as defined above;

2.    An award of actual damages;

3.    Appropriate injunctive relief;

4.    Medical monitoring damages;

5.    Reasonable attorney's fees and costs; and

6.    Such further and other relief the Court deems appropriate.

## COUNT II

### (Negligence)

59.    Plaintiff incorporates by reference the foregoing allegations.

60.    Menu Foods owed its customers a duty to offer safe, non-contaminated products in the stream of commerce.

61.    Menu Foods breached this duty by failing to exercise due care in the producing, processing, manufacturing and offering for sale of the contaminated pet food described herein.

62.    Menu Foods further breached this duty by failing timely and effectively to warn plaintiff and the class of the contamination even after it had actual knowledge of that fact and of the resulting risks.

63.    As a proximate cause thereof, plaintiff and her class suffered actual damages, including without limitation the cost of the contaminated pet food and any resulting veterinary bills.

11

WHEREFORE, Plaintiff, on behalf of herself and the Class, prays for the following relief:

1.    An order certifying the Class as defined above;

2.    An award of actual damages;

3.    Appropriate injunctive relief;

4.    Medical monitoring damages;

5.    Reasonable attorney's fees and costs; and

6.    Such further and other relief the Court deems appropriate.

## COUNT III

### (Fraud/Consumer Fraud)

64.    Plaintiff incorporates by reference the foregoing allegations.

65.    As detailed above, Menu Foods intentionally concealed information relating to the safety of its pet food long before the recall. It knew that its customers would rely on its silence as evidence that Menu Foods' pet food was safe.

66.    Plaintiff and her class did in fact so rely and have suffered damages as a proximate result thereof.


WHEREFORE, Plaintiff, on behalf of herself and the Class, prays for the following relief:

1.    An order certifying the Class as defined above;

2.    An award of actual damages;

3.    Appropriate injunctive relief;

12

4.    Medical monitoring damages;

5.    Punitive damages;

6.    Reasonable attorney's fees and costs; and

7.    Such further and other relief the Court deems appropriate.

## COUNT IV

### (Spoliation of Evidence)

67.    Plaintiff incorporates by reference the foregoing allegations.

68.    Menu Foods owed its customers a duty to preserve evidence, arising, in part, out of the fact that it already had actual knowledge of this and other class action lawsuits against it..

69.    Menu Foods breached this duty by negligently and/or intentionally destroying evidence helpful to prove Plaintiff's case.

70.    Menu Foods further breached this duty by, on information and belief, telling people to throw out unused pet food, which otherwise could have been used as evidence in this case.

71.    Plaintiff and her class have been damaged and continue to be damaged as a proximate result thereof.


WHEREFORE, Plaintiff, on behalf of herself and the Class, prays for the following relief:

1.    An order certifying the Class as defined above;

2.    An award of actual damages;

3.    Appropriate injunctive relief;

13

4.      Medical monitoring damages;

5.      Reasonable attorney's fees and costs; and

6.      Such further and other relief the Court deems appropriate.

**JURY DEMAND**

Plaintiff requests trial by jury of all claims that can be so tried.

April 4, 2007                          Dawn Majerczyk, individually and on behalf of a class of
                                       similarly situated individuals


                                       /s/ Jay Edelson
                                              one of her attorneys

John Blim
Jay Edelson
Myles McGuire (Of Counsel)
Blim & Edelson, LLC
53 West Jackson Boulevard
Suite 1642
Chicago, Illinois 60604
(312) 913-9400
(312) 913-9401 (Fax)

14